Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) ) | Civil Action No. |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **COMPLAINT FOR DECLARATORY JUDGMENT AND OTHER RELIEF** |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff MIDWEST FAMILY INSURANCE COMPANY, for its Complaint for

Declaratory Judgment pursuant to § 27-8-101 et. seq. and Rule 57 M.R.Civ.P. and for other

relief, states as follows:

## THE PARTIES

1.      Plaintiff Midwest Family Mutual Insurance Company ("Plaintiff" or "Midwest"),

a mutual insurance company, is a Minnesota corporation in good standing with its principal place

of business in the state of Minnesota. Midwest is authorized to transact the business of insurance

in Montana.

2.      Oakland Improvements, Inc., is a Montana corporation with its principal place of business in Miles City, Montana and is in the construction business.

3.      Paul Oakland, Jr., is the owner of or is associated with Oakland Improvements, Inc., and lives in Miles City, Montana.

4.      Timothy King is the Plaintiff in lawsuit brought in and currently pending in the Sixteenth Judicial District Court, Custer County, Montana, Cause No. DV-2020-24, captioned Timothy King, Plaintiff, vs. Paul Oakland, Jr., and Oakland Improvements, Inc. (the "Underlying Action").   Mr. King resides in Miles City, Montana.

## JURISDICTION

5.      The defendants are residents of Montana and therefore this Court has jurisdiction under Rule 4 M.R.Civ.P.

6.      This Court has authority to declare the rights and obligations of the parties under the terms and provisions of the insurance contract at issue in this lawsuit, as provided by § 27-8-101 et. seq. MCA and Rule 57 of the Montana Rules of Civil Procedure.

## VENUE

7.      Venue is proper in Custer County because the defendants reside in Custer County.

## GENERAL ALLEGATIONS

**A.      The Policy**

8.      Midwest issued Insurance Policy No. ACMT0560098291 ("Policy") to Oakland Improvements, Inc., and Susan Sanderson with a policy period of November 4, 2013 to November 4, 2014.   The Policy affords commercial general liability insurance to Oakland Improvements, Inc., and Susan Sanderson in accord with the Policy's terms.   A true copy of the Policy is attached hereto as Exhibit A and incorporated by reference herein as if set forth in full.

**B.**     **The Underlying Litigation**

9.      The present controversy arises in relation to the Underlying Action.

10.     Mr. King alleges in the Underlying Action that Paul Oakland, Jr. and/or Oakland Improvements, Inc. (collectively "Oakland)" built a house for him in beginning in 2014.  Mr. King alleges he purchased the house in April of 2015 and that Oakland promised a "turn-key" house, but instead delivered a home that needed extensive and expensive repairs.  He alleges that he noticed damage to the house in 2018 when the house began settling and cracking.  The foundation has allegedly settled causing the siding to buckle.  The house is allegedly unsafe to live in.  A copy of Mr. King's complaint from the Underlying Action is attached hereto as Exhibit B.

11.     Mr. King seeks all damages recoverable for breach of contract, construction defects under § 70-19-428 MCA, breach of the implied covenant of good faith and fair dealing, negligent construction, breach of the implied warranty of workmanlike construction, breach of the covenant of habitability, negligent misrepresentation and requests punitive damages.

12.     On April 13, 2020, Oakland tendered the defense of the Underlying Action to Midwest.  Midwest issued a reservation of rights letter and agreed to defend Oakland in the Underlying Action subject to that reservation of rights.  Midwest disputes the existence, nature and extent of actual and potential coverage available to Oakland for the claims made and damages asserted against Oakland in the Underlying Action.

13.     Midwest brings this action seeking a judicial declaration of the rights, duties and liabilities of the parties under the Policy in relation to the Underlying Action.

14.     Defendant King as Plaintiff in the Underlying Action, claims or may claim an interest in the proceeds of the Policy as potentially applicable to satisfy any final judgment that he might obtain in the Underlying Action.

## CLAIM FOR RELIEF (DECLARATORY JUDGMENT)

15.     Based upon the foregoing facts and allegations, there presently exists a live and justiciable controversy as to whether a duty to indemnify or continue to defend Oakland exists under the Policy in relation to the Underlying Action.

16.     This Court is asked to, and should, exercise its discretion to determine the rights and duties of the parties under the Policy, and to grant ancillary relief to Midwest as equity, law and justice may require.  Any preconditions to the bringing of this action by Midwest have been met.

**A.     Paul Oakland, Jr., is not a named insured under the Policy**

17.     Paul Oakland, Jr., is not a named insured under the Policy.  The Policy states in relevant part:

> **Insured --** If shown on the Declarations as an "individual," **Insured** mean **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.
>
> If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.
>
> If shown on the Declarations as an "organization" (other than a partnership or joint venture), **insured** means **you** and all **your** executive officers and directors, but only while acting within the scope of their duties.  It also insures your stockholders, but only for their liability as such.
>
> **Insured** also includes:
>
> a. with respect to the operation, with **your** permission, of mobile equipment:
>
>> 1) **your** employee in the course of employment.  This does not apply to a fellow employee injured in the course of employment; and

    2) any other person.  This includes anyone legally liable for the conduct of such person but only:

        a)  for liability arising out of the operation of the equipment; and

        b)  if there is no other insurance covering the liability available to them.

No one is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you**, or an employee of anyone who is an **insured** under paragraph a.

b.  **your** employees, for acts within the scope of their employment by **you** (this does not include your executive officers).  None of these employees are insured for:

    1)  injury to **you** or to a fellow employee;

    2)  **property damage** to property owned by, rented to, or loaned to employees, or any of **your** partners or members and their spouses (if **you** are joint venture or a partnership.)

c.  any organization (other than a joint venture or partnership) newly acquired or formed by **you,** and in which you have a majority interest.

Such an organization is not an **insured**:

    1)  if there is other similar insurance available to it; or

    2)  after 90 days immediately following that acquisition or formation; or

    3)  for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Delcarations as an **insured**.

Ex. A at AP-100 p. 3.

    18.    If Mr. Oakland was not an officer or director of Oakland Improvements, Inc., or an employee of Oakland Improvements, Inc., working in the course of his employment, then he is not covered by the Policy, and Midwest Family has no duty to defend or indemnify Mr. Oakland.

**B.**    **There was no property damage during the policy period**

    19.    Coverage under the Policy is limited to property damage or bodily injury that occurs during the policy period.

20.     Coverage L in the Policy states:

> We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**.

This insurance only applies to **bodily injury** or **property damage** which occurs:

> 1. within the **coverage territory**; and

> 2. during the policy period.

Ex. A. at AP-100 pp. 4-5.

21.     Coverage N in the Policy states:

**Coverage N - Products/Completed Work**

> We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Operations Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**. This insurance only applies to **bodily injury** or **property damage** which occurs:

> 1. within the **coverage territory**; and

> 2. during the policy period.

Ex. A. at AP-100 pp. 4-5.

22.     Property damage is defined by the Policy to include physical injury to or destruction of tangible property. Ex. A. at AP-100 p. 4. A physical injury is a physical and material alteration resulting in a detriment.

23.     The complaint in the Underlying Action alleges that King purchased the house from Oakland in April of 2015, after the term of the Policy ended. Therefore, Mr. King could not have suffered any damages during the Policy period.

24.     The complaint in the Underlying Action further alleges that the damage to the house occurred in 2018, after the term of the Policy ended. Therefore, Mr. King could not have suffered any damages during the Policy period.

**C.    There is no Coverage for Property Damage to the Insured's Property**

    25.    Additional Exclusion 1 states:

> 1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured**, except as provided by Coverage O.

Ex. A. at AP-100 p. 8.

Coverage O, Fire Legal Liability, does not apply.

    26.    The house was owned by either Oakland Improvements, Inc. or Paul Oakland, Jr. while the Policy was in effect.  Therefore, any damage that occurred to the house while the Policy was in effect would be damage to property owned by the insured and therefore excluded by Additional Exclusion 1.

**D.    Additional Exclusion 5 Applies to the Underlying Action**

    27.    Additional Exclusion 5 of the Policy states:

> **We** do not pay for **property damage** to that specific part of real property on which work is being performed by:
>
> a. **you**; or
>
> b. A contractor or subcontractor working on your behalf, if the **property damage** arises out of such work.  This exclusion does not apply to liability assumed under written sidetrack agreement.

Ex. A at AP-100 p. 8.

    28.    Under the Policy, "Your work" means:

> a. work or operations performed by **you** or on **your** behalf;
>
> b. materials, parts and equipment **you** supply for such work and operations; and
>
> c. written warranties or representations made at any time regarding quality, fitness, durability, or performance of any of the foregoing.

Ex. A at AP-100 p. 4.

    29.    This exclusion applies to damage that occurs while the insured's operations are ongoing.  Under this exclusion, there is no coverage for property damage to that specific part of real property on which work is being performed by the insured or any subcontractors.  The

complaint in the Underlying Action alleges that Oakland negligently built the entire house.

Therefore, there is no coverage for damage to the house.

**E.     Additional Exclusion 6 Applies to the Underlying Action**

30.     Additional Exclusion 6 states:

> 6. **We** do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship. This exclusion does not apply to:
>
>> a. **property damage** covered under the **Products/Completed Operations Hazard;** or
>>
>> b. liability assumed under written sidetrack agreement.

This exclusion also applies to damage that occurs while the insured's operations are ongoing.

This exclusion applies to any property, not just real property.

31.     Exclusion 6 applies to any damages sought by King for damage to property that must be restored, replaced or replaced as a result of Oakland's faulty workmanship.

32.     The exception for property damage covered under the Products/Completed Operations Hazard (PCOH) does not apply. As set forth in paragraphs 21-24, the Policy expired before Oakland's operations were complete, and therefore any damages caused by Oakland or any subcontractor that arose when construction operations were complete could not have occurred while the Policy was in effect.

**F.     Additional Exclusion 8 Applies to the Underlying Action**

33.     Additional Exclusion 8 limits coverage under the PCOH:

> **We** do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Products/Completed Operations Hazard**. This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

34.     If there was any damage caused after Oakland's operations were completed, there would be no coverage for **property damage** to work performed by Oakland if the damage was caused by the work or a part of Oakland's work.

**G.     The Breach of Contract is not Covered by the Policy**

35.     Under the terms of the Policy, **bodily injury** or **property damage** must be caused by an **occurrence** to be covered.  The claims for breach of contract in the Underlying Action are not covered because a breach of contract is not an occurrence.

**H.     The Statutory Construction Defect Claim is not Covered by the Policy**

36.     The statutory construction defect claim in the Underlying Action is an allegation of faulty workmanship.   Therefore, coverage for this claim is excluded under Additional Exclusions 5, 6 and 8.

**I.     Breach of the Implied Warranty of Workmanlike Construction is not Covered by the Policy**

37.     The allegations in the Underlying Action that Oakland failed to construct the house in a workmanlike manner and failed to construct in accordance with industry standards are allegations of faulty workmanships and therefore fall within the Additional Exclusions 5, 6 and 8.

**J.     Breach of the Implied Covenant of Good Faith and Fair Dealing is not Covered by the Policy**

38.     The allegations in the Underlying Action that Oakland breached the Implied Covenant of Good Faith and Fair Dealing are based on the allegation that the Defendants intentionally or negligently mispresented the quality of their work, which is not an occurrence under the Policy.

**K.      Negligent Construction is not Covered by the Policy**

39.      The allegations in the Underlying Action that Oakland negligently constructed the house fall within Additional Exclusions 5, 6 and 8.

**L.      Breach of the Implied Covenant of Habitability is not Covered by the Policy**

40.      The allegations in the Underlying Action that Oakland breached the Implied Covenant of Habitability falls within Additional Exclusions 5, 6 and 8.

**M.      Negligent Misrepresentation is not Covered by the Policy**

41.      The allegations in the Underlying Action that Oakland represented that it would construct and present a home in a "turnkey condition" was made to induce him to close on the home is not an occurrence.  An occurrence is an "accident."  AP-100 p. 4.  Making a representation is not an "accident."

**N.      Punitive Damages are not Covered by the Policy**

42.      The Underlying Action seeks punitive damages are not covered by the Policy. Under § 33-15-317 MCA, insurance coverage does not extend to punitive or exemplary damages unless expressly included by the contract of insurance.  The Policy does not expressly cover punitive damages so they are excluded from coverage.

WHEREFORE, for reasons stated, Plaintiff requests the following relief:

(1)      A judicial declaration that Plaintiff has no actual or potential coverage for, and no duty to defend, Oakland in the in the Underlying Action;

(2)      An award of Plaintiff's costs of suit; and

(3)      That the Court grant such other and further relief to Plaintiff as this Court deems just and proper.

DATE this 12th day of March, 2021.

CROWLEY FLECK PLLP

Jon T. Dyre
*Attorneys for Plaintiff*

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) ) | Civil Action No. DV 21-23 |
| Plaintiff, | ) ) ) | |
| v. | ) ) | **MOTION FOR SUMMARY JUDGMENT** |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) ) | |
| Defendants. | ) ) ) | |

Plaintiff Midwest Family Insurance Company ("Midwest") moves pursuant to Rule 56

M.R.Civ.P. for judgment as matter of law that it is not required to defend or indemnify Oakland

Improvements, Inc. and Paul Oakland, Jr. (collectively "Oakland") with respect to the lawsuit

entitled *Timothy King, vs. Paul Oakland, Jr., and Oakland Improvements, Inc.*, Sixteenth Judicial

District Court, Custer County, Montana, Cause No. DV-2020-24.

This motion is based on the policy sold by Midwest to Oakland Improvements, the

allegations in the complaint filed in the above described lawsuit and the legal authorities

provided in Midwest's supporting brief.

DATED this 18th day of March, 2021.

CROWLEY FLECK PLLP

Jon T. Dyre
*Attorneys for Plaintiff*

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

### MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | |
|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY,                             ) | Civil Action No. DV 21-23 |
| )                                                       ) | |
| Plaintiff,                              ) | |
| )                                                       ) | |
| v.                                                   ) | **BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| )                                                       ) | |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING        ) | |
| )                                                       ) | |
| Defendants.                      ) | |
| )                                                       ) | |

### INTRODUCTION

Plaintiff Midwest Family Insurance Company ("Midwest") files this brief in support of

its motion for summary judgment that it is not required to defend or indemnify Oakland

Improvements, Inc. and Paul Oakland, Jr. (collectively "Oakland") with respect to a lawsuit

brought by Paul King.   Coverage under a liability policy is generally determined by the

allegations in the complaint against the insured.   *Revelation Ind., Inc. v. St. Paul Fire & Marine*,

2009 MT 13, ¶ 39, 350 Mont. 184, 206 P.3d 919.   Therefore, this motion for summary judgment

can be decided on the factual allegations in Mr. King's complaint against the Oaklands.

## FACTS

Midwest Family Mutual sold policy no. ACMT0560098291 ("Policy") to Oakland

Improvements, Inc. and Susan Sanderson ("Policy").   A certified copy of the policy is attached to

as Ex. A to the affidavit of Jon T. Dyre.   The policy period of the Policy was 11/04/13 to

11/04/14.   *Id.* at 3.

On April 13, 2020, Bryan Kautz tendered to Midwest the defense of *Timothy King, vs.*

*Paul Oakland, Jr., and Oakland Improvements, Inc.*, in the Sixteenth Judicial District Court,

Custer County, Montana, Cause No. DV-2020-24 ("King Lawsuit").   Dyre Affidavit, Exhibit B

(email from Bryan Kautz to Jon Ness).

Mr. King alleges Oakland built a house for him in beginning in 2014. Dyre Affidavit Ex.

C, King Complaint, ¶ 10 ("King Complaint").   Mr. King alleges he purchased the house in April

of 2015.   *Id.*   Mr. King alleges that he noticed damage to the house in 2018 when the house

began settling and cracking.   *Id.*

Midwest agreed to provide a defense of the King Lawsuit under a reservation of rights.

Ex. D to Dyre Affidavit.

## ARGUMENT

**A.**     **There was no Property Damage during the Policy Period**

Coverage under the Policy is limited to property damage or bodily injury that occurs

during the policy period.   Coverage L in the Policy states:

> We pay all sums which an **insured** becomes legally obligated to pay as damages   due to **bodily injury** or **property damage** to which this insurance applies.
>
> The **bodily injury** or **property damage** must be caused by an **occurrence**.
>
> This insurance only applies to **bodily injury** or **property damage** which occurs:
>
>> 1. within the **coverage territory**; and

2. during the policy period.

Ex. A. at 17-18 (Form AP-100 at 4-5.)

Coverage N in the Policy states:

**Coverage N - Products/Completed Work**

> We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Operations Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence**. This insurance only applies to **bodily injury** or **property damage** which occurs:
>
> 1. within the **coverage territory**; and
>
> 2. during the policy period.

Ex. A. at 18 (Form AP-100 at 5).

Property damage is defined by the Policy as:

a. physical injury or destruction of tangible property; or

b. the loss of use of tangible property whether or not it is physically damaged.

Ex. A. at 17 (Form AP-100 p. 4).

A physical injury is a physical and material alteration resulting in a detriment. *Swank Enters. v. All Purposes Servs., Ltd.*, 2017 MT 57, ¶ 18,  vfe4336 Mont. 197, 154 P.3d 52, 56 (2007). A defect which creates a condition that increases the probability of later property damage is not property damage. *Truck Ins. Exch. v. O'Mailia*, 2015 MT 42, ¶ 22, 378 Mont. 231, 343 P.3d 1183. The policy is triggered on the date that damages occurred, not on the date of the alleged negligence. *Id.*

It is temporally impossible for the Policy to be triggered. The damages allegedly suffered by Mr. King could not have occurred until he owned the house. The Policy expired on November 4, 2014. Mr. King purchased house four months later in April of 2015. King Complaint, ¶ 10. Mr. King alleges the damages occurred three years after that. *Id.* Therefore, there cannot be coverage under the Policy for the damages sought in Mr. King's lawsuit.

**B.**     **There is no Coverage for Property Damage to the Insured's Property**

Mr. King's Complaint alleges that Oakland acted as the "builder-vendor" in Mr. King's purchase of a lot and home.  King Complaint, ¶ 14.  At the time the Policy expired, Oakland had not yet sold the home to Mr. King.  Therefore, if any property damage occurred to the house prior to the Policy expiring on November 4, 2014, the damage occurred while the house was owned or being built by Oakland.

The policy excludes coverage for damage to the insured's own property.  Additional Exclusion 1 states:

> 1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured**, except as provided by Coverage O.

Ex. A. at AP-100 p. 8.

Coverage O, Fire Legal Liability, does not apply.  Coverage O states that Midwest will pay for property damage to buildings the insured rents that is caused by a fire for which the insured is legally responsible.  *Id.* at 5.  There is no allegation in King's complaint that there was a fire.

The Policy also includes damage to property in the insured's control.  Additional Exclusion 4, which states:

> 4. **We** do not pay for **property damage** to property in the care, custody or control of an **insured**.  This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

*Id.*

Mr. King's complaint does not allege the existence of a sidetrack agreement.

As the "builder-vendor" of the policy, Oakland owned or was in control of the house that was sold to Mr. King.  Any damage to the building that occurred prior to the Policy terminating on November 4, 2014 would be damage to property owned or under the care, custody or control of Oakland and therefore coverage is excluded by Additional Exclusions 1 and/or 4.

**C.**     **Midwest has no Duty to Indemnify or Defend**

If there is no coverage under the terms of the policy based on the facts contained in the complaint, there is no duty to defend.  *Steadele v. Colony Ins. Co.*, 2011 MT 208, ¶ 25, 361 Mont. 459, 260 P.3d 145, *Grimsrud v. Hagel*, 2005 MT 194, ¶ 34, 328 Mont. 142, 119 P.3d 47, *Landa v. Assurance Co. of Am.*, 2013 MT 21,¶ 24, 371 Mont. 202, 307 P.3d 284, 307 P.3d 284. The allegations in Mr. King's Complaint cannot be reasonably interpreted as alleging that covered property damage occurred during the policy period.

**CONCLUSION**

Midwest asks the Court to enter as a judgment of a matter of law that it has no duty to indemnify or defend Oakland with respect to King Lawsuit.

DATE this 18th day of March, 2021.

CROWLEY FLECK PLLP

Jon T. Dyre
*Attorneys for Plaintiff*

Jon T. Dyre
Crowley Fleck PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

MONTANA SIXTEENTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUAL INSURANCE COMPANY, | ) ) | Civil Action No. DV 21-23 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **NOTICE OF ERRATA** |
| | ) | |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff Midwest Family Mutual Insurance Company, by and through its undersigned

counsel, files this Notice of Errata to add the attached exhibits to the Complaint for Declaratory

Judgement and Other Relief filed March 22, 2021. The exhibits were referenced in the complaint

but not attached.  The exhibits are attached hereto.

DATED this 21st day of April, 2021.

CROWLEY FLECK PLLP

_____
Jon T. Dyre
*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that the foregoing document was served upon the following counsel of record by the means designated below this ___ day of April, 2021.

| | |
|---|---|
| [ ] U.S. Mail | Bryan Kautz |
| [ ] Hand Delivery | Ritchie Manning Kautz PLLP |
| [ ] Facsimile | 175 N. 27th St., Suite 1206 |
| [ ] FedEx | Billings, MT 59101 |
| [X] E-mail | bkautz@mkfirm.com |
| | |
| [ ] U.S. Mail | Matt Dodd |
| [ ] Hand Delivery | Dodd Law Firm, P.C. |
| [ ] Facsimile | 3825 Valley Commons Dr., Suite 2 |
| [ ] FedEx | Bozeman, MT 59718 |
| [X] E-mail | matt@doddlawfirmpc.com |

# EXHIBIT A



**MIDWEST FAMILY MUTUAL**
**INSURANCE COMPANY**
Telephone • 763-951-7000
Fax • 763-951-7092
3033 Campus Drive Suite E195, Plymouth, MN 55441
Mailing Address:
P.O. Box 9425 • Minneapolis, MN 55440-9425
www.midwestfamily.com

**To Whom It May Concern:**

**RE:**   **Policy Number:**   **ACMT0560098291**
**Named Insured:**   **Oakland Improvements, Inc. Susan Sanderson**
**Claim Number:**   **00381349**
**Date of Loss:**   **08/01/2014**

**Attached is a certified and true copy of the noted policy for the term shown.**

**Sincerely Yours,**

**Kristie F. Van Pelt**
**Vice President -Finance**
**Midwest Family Mutual Insurance Company**
**763-951-7008**
**kristie.vanpelt@midwestfamily.com**

**Attachments**



**MIDWEST FAMILY MUTUAL**
**INSURANCE COMPANY**
P.O. BOX 9425
Minneapolis, MN 55440-9425

PART B DECLARATION PAGE

**Commercial Summary Page**

EFFECTIVE 11/10/13
Amended Declarations

DB

| POLICY NUMBER | POLICY PERIOD FROM | TO | | AGENT |
|---|---|---|---|---|
| ACMT0560098291 | 11/10/13 | 11/10/14 | 12:01 AM STANDARD TIME | 06408 |

**NAMED INSURED AND ADDRESS**

OAKLAND IMPROVEMENTS INC
SUSAN SANDERSON
414 MISSOURI
MILES CITY, MT  59301

**AGENT**

TAYLOR-LEAVITT INS AGENCY LLC
2345 KING AVE WEST SUITE A
BILLINGS, MT  59102

Phone: (406) 252-4104                    01

**Business Description:** GENERAL CONTRACTOR     **Form of Business:** Corporation

================= COVERAGE SUMMARY =================
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS/POLICIES FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT OR FINAL AUDIT.

**COVERAGE PART/POLICY ATTACHED**                    **PREMIUM**
Artisan Contractor                                    $12,188.00

                              **POLICY FEES/TAXES**        **$.00**
                              **ESTIMATED TOTAL PREMIUM**   **$12,188.00**
                                                          =============

================= END OF SUMMARY DECLARATIONS =================

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE COVERAGE
PARTS/POLICIES ATTACHED, WE AGREE WITH YOU TO PROVIDE THE INSURANCE DESCRIBED THEREIN.

DATE  12/11/2013
PAGE   1



# MIDWEST FAMILY MUTUAL INSURANCE COMPANY
P.O. BOX 9425 Minneapolis, MN 55440-9425

PART B DECLARATION PAGE

**Artisan Contractor**

Amended Declarations
EFFECTIVE 11/10/13

DB

| POLICY NUMBER | POLICY PERIOD FROM | TO | | AGENT |
|---|---|---|---|---|
| ACMT0560098291 | 11/10/13 | 11/10/14 | 12:01 AM STANDARD TIME | 06408 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| OAKLAND IMPROVEMENTS INC<br>SUSAN SANDERSON<br>414 MISSOURI<br>MILES CITY, MT  59301 | TAYLOR-LEAVITT INS AGENCY LLC<br>2345 KING AVE WEST SUITE A<br>BILLINGS, MT  59102<br><br>Phone: (406) 252-4104                01 |

CHANGE REASON: CHANGE INSURED'S MAILING ADDRESS

'X' IF SUPPLEMENTAL DECLARATION  [X]  SUPPLEMENTAL DECLARATION

| Business Description:<br><br>Carpentry - Framing | Form of Business:<br><br>Corporation |
|---|---|

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| **DESCRIBED PREMISES** | Forms Applicable:   **Special** |
|---|---|
| Premises No.     Bldg. No.     Location | Mortgage Holder Name and Address |

**SEE ATTACHED SUPPLEMENTAL DECLARATIONS**          **SEE ATTACHED SCHEDULE**

| **PROPERTY** | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. |
|---|---|---|---|---|---|---|
| **SEE ATTACHED SUPPLEMENTAL DECLARATIONS**<br>Loss of Income/Extra Expense | | | ACTUAL LOSS SUSTAINED | | | |

**Deductible $     SEE ATTACHED SUPPLEMENTAL DECLARATIONS**

**OPTIONAL COVERAGES**

**SEE ATTACHED SUPPLEMENTAL DECLARATIONS**

**LIABILITY AND MEDICAL PAYMENTS**

Except for Fire Legal Liability, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period.  Please refer to paragraph D.4. of the Businessowners Liability Coverage Form.

| | Limits of Insurance |
|---|---|
| Liability | $1,000,000/$2,000,000 Aggregate |
| Products/Completed Operations Liability | $1,000,000 Occurrence/ $2,000,000 Aggregate |
| Medical Expense | $5,000 per person |
| Fire Legal Liability | $50,000 any one fire or explosion |
| Deductible (Property Damage Liability) | $1,000 |

THIS POLICY IS SUBJECT TO AUDIT AND BASED UPON _____4_____ FULL TIME EMPLOYEES AND _____1_____ PART TIME EMPLOYEES.

**TOTAL PREMIUM**                    $12,188.00

**FORMS AND ENDORSEMENTS:    SEE ATTACHED SCHEDULE**

During the past three years no insurer has canceled any insurance issued to the name insured, similar to that afforded hereunder, unless otherwise stated herein.

THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S), COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyright material of Insurance Service Office Inc., with its permission.  Copyright Insurance Service Inc., 1984, 1985

DATE  12/11/2013
PAGE  1

Policy Number: ACMT0560098291                           Artisan Contractor

## BUSINESSOWNERS SUPPLEMENTAL DECLARATIONS

========================= **LOCATION ADDRESS(ES)** =========================

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 1 | 1 | 715 WASHINGTON ST, MILES CITY, MT, 59301 |
| 1 | 1 | 715 WASHINGTON ST(CONTENTS), MILES CITY, MT, 59301 |

========================= **DESCRIPTION OF PREMISES** =========================

| Prems. No. | Bldg. No. | Occupancy | Construction |
|---|---|---|---|
| 1 | 1 | Carpentry - Framing | Frame |
| 1 | 1 | Carpentry - Framing | Frame |

============================= **COVERAGES** =============================

### COVERAGES PROVIDED

| Prems. No. | Bldg. No. | Coverages | Limit of Insurance | Automatic Increase in Insurance | Ded |
|---|---|---|---|---|---|
| 1 | 1 | Building - ACV | $380,000 | 6% | $1,000 |
| 1 | 1 | Personal Property/Contents - RC | $20,800 | 6% | $1,000 |

### OPTIONAL COVERAGES

| Prems. No. | Bldg. No. | Coverages | Limit | Ded |
|---|---|---|---|---|
| 1 | 1 | Equipment Breakdown deductible ---- total sublimit on: $380,000 expediating expenses perishable good computer equipment hazardous substances | $380,000 | $1,000 |
| 1 | 1 | BOP/ Contractors Advantage | | |

### OPTIONAL LIABILITY COVERAGES

| Prems. No. | Bldg. No. | Coverages | Limit | Ded | Premium |
|---|---|---|---|---|---|
| 1 | 1 | General Contractors Liability This coverage is subject to annual audit and premium is based on ($1,500,000) of TOTAL annual sales/receipts. | INCLUDED | | $4,253 |

**Policy Number: ACMT0560098291**                    **Artisan Contractor**

=================================================================

## Tool Floater Coverage

| Description | Serial Number | Value | Deductible | Premium |
|---|---|---|---|---|
| MISC TOOLS @ A MAX OF $1500 PER ITEM | | $20,000 | $500 | $347.00 |

=================================================================

## Equipment Coverage

| Description | Serial Number | Value | Deductible | Premium |
|---|---|---|---|---|
| BOBCAT SKIDSTEER | S185 | $30,000 | $500 | $270.00 |
| GROVE MANLIFT WITH BASKET | MZ66B | $10,000 | $500 | $90.00 |
| 2000 GRANDALL FORKLIFT | | $15,000 | $500 | $135.00 |
| 2012 BOBCAT | | $42,800 | $500 | $385.00 |
| 1998 JD 410E BACKHOE | 835665 | $30,000 | $500 | $270.00 |
| 2011 WHITEMAN POWER TROWEL | | $12,000 | $500 | $108.00 |
| 2010 SPI LPG SYNERGY BLOWER | | $12,000 | $500 | $108.00 |

=================================================================

## FORM SCHEDULE

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description | Loc Item | Ded | Limit | Premium |
|---|---|---|---|---|---|---|
| MFM ML1 | 04-05 | Amendatory Endorsement #1 | | | | |
| AP 0689 | 06-02 | Wet Rot, Dry Rot, Bacteria, Fungi or Protists | | | | |
| AP 0690 | 06-02 | Exterior Installation and Finish Systems | | | | |
| AP 0700 | 01-08 | Certified Terrorism Loss | | | | |
| AP-100 | 01-01 | Contractors Special Policy | | | | |
| AP-0225 | 10-05 | Asbestos Exclusion | | | | |
| AP-336 | 01-00 | Premium Payments | | | | |
| AP-0643 | 12-99 | Known Injury or Damage Amendments | | | | |
| ART-0007 | 07-96 | Work Performed Exclusion | | | | |
| BP 02 01 | 01-10 | Montana Changes | | | | |
| BP 05 01 | 07-02 | Calculation of Premium | | | | |
| CL 0605 | 01-08 | Cert Terror Loss Disclosure - Prem, Fed Share | | | | |
| CL-144 | 01-12 | Montana Amendatory Endorsement | | | | |
| MFM 001 | 08-12 | Policy Holder Notice | | | | |
| MFMAC001 | 11-08 | Employment Related Practices Exclusion | | | | |
| MFMAP003 | 03-09 | Amendment-Liquor Liab Exclusion | | | | |
| MFMAP-01 | 01-09 | Nuclear, Bio, Chemical Terrorism Exclusion | | | | |
| PRIV NTC | 07-01 | Privacy Policy Notice | | | | |
| AP 101 | 01-00 | Equipment Breakdown Coverage | | | | |
| AP-222 | 01-00 | Property Damage Liability Deductible | | | | |
| ART 0020 | 07-03 | Contractors Advantage Endorsement | | | | |
| IM-100 | 06-84 | Inland Marine General Terms | | | | |
| IM-810 | 08-85 | Contractors Equipment Coverage | | | | |
| IM-827 | 05-86 | Installation Coverage | | | $50,000 | $975.00 |

DATE   12/11/2013
PAGE  3

**Policy Number: ACMT0560098291**                    **Artisan Contractor**

===============================================================================

**FORM SCHEDULE**

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description | Loc Item | Ded | Limit | Premium |
|------|---------|-------------|----------|-----|-------|---------|
| IM-901 | 08-84 | Scheduled Property Coverage | | | | |
| IR 08 84 | 04-05 | Commercial (BOP/Garage) Identity Recovery Cov | LOC 1 | $500 | 25,000 | $27.00 |

**Amendatory Endorsement #1**                         **MFM ML1 04-05**

MIDWEST FAMILY MUTUAL INSURANCE COMPANY
INSURED: OAKLAND IMPROVEMENTS INC
POLICY NUMBER: ACMT0560098291


INSTALLATION FLOATER        $50,000    DED      $1000

MAX LIMIT PER LOC                               $50,000
MAX LIMIT IN TRANSIT                            $50,000
MAX LIMIT ALL LOCS                              $50,000

AAIS
AP 0689 06 02
Page 1 of 2

This endorsement changes the Commercial
Liability Coverage provided by this policy
— PLEASE READ THIS CAREFULLY —

# EXCLUSION -- WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS
## CONTRACTING OPERATIONS

The Commercial Liability Coverage is amended
as follows:

The following exclusions are added:

1. "We" do not pay for actual or alleged "bodily
   injury" or "property damage" (or "personal
   injury" or "advertising injury", when provided
   by this policy) that arises out of "your work"
   and that results directly or indirectly from
   ingestion of, inhalation of, physical contact
   with, or exposure to:

   a. wet rot; dry rot; a bacterium; a fungus,
      including but not limited to mildew and
      mold; or a protist, including but not
      limited to algae and slime mold; or

   b. a chemical, matter, or a compound
      produced or released by wet rot, dry rot,
      a bacterium, a fungus, or a protist,
      including but not limited to toxins,
      spores, fragments, and metabolites such
      as microbial volatile organic compounds.

2. "We" do not pay for actual or alleged "bodily
   injury" or "property damage" included in the
   "products/completed work hazard" and that
   results directly or indirectly from ingestion of,
   inhalation of, physical contact with, or
   exposure to:

   a. wet rot; dry rot; a bacterium; a fungus,
      including but not limited to mildew and
      mold; or a protist, including but not
      limited to algae and slime mold; or

   b. a chemical, matter, or a compound
      produced or released by wet rot, dry rot,
      a bacterium, a fungus, or a protist,
      including but not limited to toxins,
      spores, fragments, and metabolites such
      as microbial volatile organic compounds.

3. "We" do not pay for "bodily injury" or
   "property damage" liability assumed by an
   "insured" under a contract or agreement and
   that results directly or indirectly from
   ingestion of, inhalation of, physical contact
   with, or exposure to:

   a. wet rot; dry rot; a bacterium; a fungus,
      including but not limited to mildew and
      mold; or a protist, including but not
      limited to algae and slime mold; or

   b. a chemical, matter, or a compound
      produced or released by wet rot, dry rot,
      a bacterium, a fungus, or a protist,
      including but not limited to toxins,
      spores, fragments, and metabolites such
      as microbial volatile organic compounds.

4. "We" do not pay for any loss, cost, or
   expense arising out of any request, demand,
   or order that any "insured" or others test for,
   monitor, clean up, remove, contain, treat,
   detoxify, neutralize, or in any way respond to
   or assess the effects of:

   a. wet rot; dry rot; a bacterium; a fungus,
      including but not limited to mildew and
      mold; or a protist, including but not
      limited to algae and slime mold; or

   b. a chemical, matter, or a compound
      produced or released by wet rot, dry rot,
      a bacterium, a fungus, or a protist,
      including but not limited to toxins,
      spores, fragments, and metabolites such
      as microbial volatile organic compounds.

5. "We" do not pay for any loss, cost, or
   expense arising out of any claim or suit by or
   on behalf of any governmental authority
   relating to testing for, monitoring, cleaning
   up, removing, containing, treating,
   detoxifying, neutralizing, or in any way
   responding to or assessing the effects of:

   a. wet rot; dry rot; a bacterium; a fungus,
      including but not limited to mildew and
      mold; or a protist, including but not
      limited to algae and slime mold; or

AAIS
AP 0689 06 02
Page 2 of 2

    b.  a chemical, matter, or a compound
       produced or released by wet rot, dry rot,
       a bacterium, a fungus, or a protist,
       including but not limited to toxins,
       spores, fragments, and metabolites such
       as microbial volatile organic compounds.

AP 0689 06 02
Copyright, American Association of Insurance Services, 2002

AAIS
AP 0690 06 02
Page 1 of 1

This endorsement changes the Commercial
Liability Coverage provided by this policy
— PLEASE READ THIS CAREFULLY —

# EXCLUSION -- EXTERIOR INSULATION AND FINISH SYSTEMS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "EIFS" means an exterior wall cladding or finish system used on any part of any structure consisting of:

   a. a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

   b. an adhesive or mechanical attachment of the insulation board to the substrate;

   c. a reinforced base coat on the face of the insulation board or base coat and mesh;

   d. a protective finish applied to the surface of the base coat providing surface texture to which color may be added; and

   e. any conditioners, primers, accessories, flashings, coatings, caulking, and sealants that interact to form an energy efficient wall.

2. The following exclusions are added:

   a. "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, or repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof, including any method or procedure to correct problems with installed or partially installed systems performed by or on behalf of an "insured".

   b. "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of "your work" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

   c. "We" do not pay for actual or alleged "bodily injury" or "property damage" included in the "products/completed work hazard" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

   d. "We" do not pay for "bodily injury" or "property damage" liability assumed by an "insured" under a contract or agreement for the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof.

AP 0690 06 02

Copyright, American Association of Insurance Services, 2002

**AAIS**
**AP 0700 01 08**
**Page 1 of 2**

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS

The Contractors Special Policy is amended as follows:

## COMMON POLICY DEFINITIONS

1.  The following definitions are added.

    a.  "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1)  to be an act of terrorism;
        2)  to be a violent act or an act that is dangerous to human life, property, or infrastructure;
        3)  to have resulted in damage:

            a)  within the United States; or
            b)  to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

        4)  to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
        5)  to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

    b.  "Certified terrorism loss" means loss that results from a "certified act of terrorism".

## COMMERCIAL LIABILITY COVERAGES

2.  The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

    This exclusion does not apply to "certified terrorism loss".

3.  The following provision is added.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

## PROPERTY COVERAGES

4.  The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

    This exclusion does not apply to "certified terrorism loss".

Copyright, American Association of Insurance Services, Inc., 2008

5.  The following provision is added.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

6.  The following provisions are added.

    a.  Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

    1)  exclusions that address war, military action, or nuclear hazard; or
    2)  any other exclusion; and

    b.  the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

    1)  exclusions that address war, military action, or nuclear hazard; or
    2)  any other exclusion.

---

**AP 0700 01 08**

Copyright, American Association of Insurance Services, Inc., 2008

**AAIS**

PLEASE READ THIS ENTIRE POLICY CAREFULLY
-- **THIS IS A LEGAL CONTRACT** --

**AP-100**
**Ed 1.0**

# CONTRACTORS SPECIAL POLICY

## TABLE OF CONTENTS

|  | Page |
|---|---|
| **Agreement** | i |
| **Common Policy Conditions** | 1 |
| **Common Policy Definitions** | 2 |
| **Commercial Liability Coverage Section** | |
| Additional Definitions | 2 |
| Principal Coverages | 4 |
| Coverage L -- Bodily Injury/Property Damage | 4 |
| Coverage M -- Medical Payments | 5 |
| Coverage N -- Products/Completed Work | 5 |
| Coverage O -- Fire Legal Liability | 5 |
| Coverage P -- Personal and Advertising Injury Liability | 5 |
| Incidental Liability Coverages | 5 |
| Defense Coverage | 6 |
| Exclusions That Apply To All Liability Coverages | 7 |
| Additional Exclusions That Apply To Property Damage Liability | 8 |
| Additional Exclusions That Apply To Medical Payments | 9 |
| Additional Exclusions That Apply To Personal and Advertising Injury Liability | 9 |
| What Must Be Done In Case Of Loss | 9 |
| How Much We Pay | 10 |
| Conditions | 11 |
| Nuclear Energy Liability Exclusion | 12 |
| Nuclear Energy Liability Exclusion Definitions | 12 |
| **Commercial Property Coverage Section** | |
| Additional Definitions | 13 |
| Principal Coverages | 13 |
| Coverage A -- Buildings | 13 |
| Coverage B -- Business Personal Property | 14 |
| Coverage C -- Loss Of Income | 14 |
| Earnings | 14 |
| Extra Expenses | 14 |
| Collapse Coverage | 14 |
| Incidental Property Coverages | 15 |
| Property Not Covered Or Subject To Limitations | 16 |
| Perils Insured Against -- Coverages A and B | 18 |
| What Must Be Done In Case Of Loss | 20 |
| How Much We Pay | 21 |
| Payment Of Loss Or Claim | 22 |
| Conditions | 23 |

Endorsements may also apply. They are identified on the Declarations Page.

Refer to the Common Policy Definitions and Additional Definitions for words that have special meanings. These words are shown in "**bold type.**"

## AGREEMENT

Subject to all the **terms** that apply, and in return for **your** payment of the required premium, **we** provide the coverages described in this policy during the policy period.

Copyright MCMXC, American Association of Insurance Services

# COMMON POLICY CONDITIONS

This Section contains **terms** that apply to all coverages provided by this policy.

1. **Assignment --** This policy is void if it is assigned without **our** written consent.

2. **Cancellation -- You** may cancel this policy by returning it to **us** or by giving **us** a written notice and stating at what future time coverage is to cease.

   **We** may cancel this policy, or one or more of its parts, by giving **you** a written notice at least 10 days before the cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to **your** mailing address last known to **us.**

   **Your** return premium, if any, will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms --** A change or waiver of terms of this policy must be issued by **us** in writing to be valid.

4. **Conformity With Statute --** Terms of this policy, in conflict with the statutes of the state where the premises described are located, are amended to conform to such statutes.

5. **Cooperation --** In case of loss, **you** must cooperate in performing all acts required by this policy.

6. **Examination of Books and Records -- We** may examine and audit **your** books and records that relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections -- We** have the right, but are not obligated, to inspect **your** property and operations. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for **our** benefit only.

8. **Liberalization --** If **we** adopt a revision of forms during a policy period which broadens this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if **we** adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment or Fraud --** This coverage is void if before or after a loss:

   a. any **insured** has concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) the **insured's** interest herein;

   b. there has been fraud or false swearing by any **insured** with regard to a matter that relates to this insurance or the subject thereof.

10. **Subrogation --** If **we** pay for a loss under this policy **we** may require that the **insured** assign to **us** any right of recovery against others up to the amount **we** paid. **We** are not liable for a loss if, after the loss or **occurrence,** any **insured** impairs **our** right to recover.

   An **insured** may waive its right to recover, in writing, before the loss or occurrence takes place without voiding coverage.

**AP-100  Ed 1.0**                    **-- 1 --**                                        **AAIS**

Copyright MCMXC, American Association of Insurance Services

## COMMON POLICY DEFINITIONS

**This section contains definitions that apply to all coverages under this policy.**

1. **Basic Territory --** This means the United States of America, its territories and possessions, Canada and Puerto Rico.

2. **Described Premises --** This means that part of the building and grounds which **you** occupy at the location shown.

3. **Insured --** Insured means:

   a. **you**; or
   b. in the event of the death of an individual **insured, your** legal representative and anyone having temporary custody of **your** property until **your** legal representative is appointed. Such persons are **insureds** only with respect to insurance on covered property and liability incurred while acting within the scope of their duties.

4. **Limit --** This means the **limit** of liability that applies.

5. **Pollutants --** This means:

   a. any solid, liquid, gaseous, thermal, electrical emission (visible or invisible) or sound emission pollutant, irritant or contaminant; or
   b. waste, including materials to be recycled, reclaimed or reconditioned as well as disposed of.

6. **Terms --** This means all provisions, limitations, exclusions, conditions and definitions that apply.

7. **We, Us, Our --** These words mean the company providing this coverage.

8. **You, Your --** These words mean the persons or organizations named on the Declarations.

## COMMERCIAL LIABILITY COVERAGES

This Section contains the additional definitions, coverage descriptions, exclusions, limitations and conditions that apply to the Contractor's Liability Coverages.

### ADDITIONAL DEFINITIONS

In addition to the Common Policy definitions the following also apply to the Commercial Liability Coverages.

1. **Advertising Injury --** This means injury (other than **bodily injury**) arising out of one or more of the following offenses:

   a. oral or written publication of material:

      1) that slanders or libels a person or organization;
      2) that disparages a person's or organization's goods, products or services; or
      3) that violates a person's right of privacy.

   b. misappropriation of advertising ideas or style of doing business;
   c. infringement of copyright, title, slogan, trademark or trade name.

2. **Auto --** This means a land motor vehicle, a trailer or a semi-trailer which is designed for use on public roads. **Auto** includes attached machinery and equipment.

3. **Bodily Injury --** This means bodily harm, sickness or disease sustained by a person and includes required care and loss of services. **Bodily injury** includes death that results from bodily harm, sickness or disease.

4. **Coverage Territory --** This means:

   a. the **basic territory**;
   b. international waters and airspace, only if the **bodily injury** or **property damage** occurs in the course of travel to or from the **basic territory**;
   c. the world, if the injury or damage arises out of:

      1) products **you** have made or sold in the **basic territory**; or
      2) the activities of a person who normally resides in the **basic territory**, but is away for a short time on **your** business; and

   provided that **your** liability to pay damages has been determined:

      1) in a suit on the merits in the **basic territory**; or
      2) in a settlement that **we** have agreed to.

Copyright MCMXC, American Association of Insurance Services

5. **Impaired Property --** This means tangible property (other than **your products** or **your work**):

   a. whose value has been decreased:

     1) because it includes **your product** or **your work** that is, or is believed to be, defective, deficient or dangerous; or

     2) because **you** failed to carry out the terms of a contract; and

   b. whose value can be restored:

     1) by the repair, replacement, adjustment or removal of **your product** or **your work**; or

     2) by **you** fulfilling the terms of the contract.

6. **Incidental Contract --** This means a written:

   a. lease of premises;
   b. easement agreement (this does not include an agreement in connection with any construction or demolition operation on or adjacent to a railroad);
   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);
   d. sidetrack agreement; or
   e. elevator maintenance agreement.

   This does not include any contract or agreement to obtain insurance of any kind in connection with a project upon which **you** may be employed as a sub-contractor, or to indemnify any person with respect to such project.

7. **Insured --** If shown on the Declarations as an "individual," **insured** means **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

   If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.

   If shown on the Declarations as an "organization" (other than a partnership or a joint venture), **insured** means **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties. It also includes **your** stockholders, but only for their liability as such.

   **Insured** also includes:

   a. with respect to the operation, with **your** permission, of mobile equipment:

     1) **your** employee in the course of employment. This does not apply to a fellow employee injured in the course of employment;

     2) any other person. This includes anyone legally liable for the conduct of such person but only:

       a) for liability arising out of the operation of the equipment; and

       b) if there is no other insurance covering the liability available to them.

   No one is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you**, or an employee of anyone who is an **insured** under paragraph a.

   b. **your** employees, for acts within the scope of their employment by **you** (this does not include **your** executive officers). None of these employees are **insureds** for:

     1) injury to **you** or to a fellow employee;

     2) **property damage** to property owned by, rented to or loaned to employees, or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

   c. any organization (other than a joint venture or a partnership) newly acquired or formed by **you,** and in which **you** have a majority interest.

   Such an organization is not an **insured:**

     1) if there is other similar insurance available to it; or

     2) after 90 days immediately following that acquisition or formation; or

     3) for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

   No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Declarations as an **insured.**

8. **Loading or Unloading --** This means the movement of property:

   a. starting with the time it is removed from the point where it has been accepted for transit by **auto,** aircraft or watercraft;
   b. continuing while it is in or on such vehicle; and
   c. ending when it has been removed from the vehicle to its point of destination.

   **Loading or unloading** includes movement by any mechanical device attached to the vehicle.

**AP-100  Ed 1.0**         **-- 3 --**         **AAIS**

Copyright MCMXC, American Association of Insurance Services

9. **Occurrence --** This means an accident and includes repeated exposure to similar conditions.

10. **Personal Injury -- Personal injury** means injury (other than **bodily injury**) arising out of one or more of the following offenses:

 a. oral or written publication of material:

  1) that slanders or libels a person or organization;
  2) that disparages a person's or organization's goods, products or services; or
  3) that violates a person's right of privacy;

 b. false arrest, detention, imprisonment, or malicious prosecution;
 c. wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies.

 It does not include advertising, publishing, broadcasting or telecasting done by or for **you.**

11. **Products/Completed Work Hazard --**

 a. **Products hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your product** after physical possession of it has been relinquished to others.
 b. **Completed work hazard** means **bodily injury** or **property damage** arising out of **your work.** It does not include work that has not been completed, or that has been abandoned.

 **Your work** is deemed completed at the earliest of the following times:

  1) when all work specified in **your** contract has been done;
  2) when all work to be done at a job site has been completed if **your** contract includes work at more than one site; or
  3) when **your work** at a job site has been put to its intended use by someone other than another contractor or subcontractor working on the same job site.

 Work which requires further service, maintenance, correction, repair or replacement because of a defect or deficiency, but which is otherwise complete, shall be deemed completed.

 c. Neither of these hazards include **bodily injury** or **property damage** arising out of:

  1) the transportation of property, unless the injury or damage arises out of a condition in or on a

vehicle, created by **loading or unloading;**
  2) the presence of tools, uninstalled equipment or abandoned or unused materials; or
  3) **products** or work for which the classification on the Declarations specifies "including **Products/Completed Work.**"

12. **Products --** This means goods or **products** manufactured, sold, handled, distributed or disposed of by **you,** others trading under **your** name, or a person or organization whose business or assets **you** have acquired.

 **Products** includes:

 a. warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **your products;** and
 b. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or **products.**

 **Products** does not include:

 a. vending machines;
 b. property that is rented to or placed for the use of others, but not sold; or
 c. real property.

13. **Property Damage --** This means:

 a. physical injury or destruction of tangible property; or
 b. the loss of use of tangible property whether or not it is physically damaged.

14. **Your Work --** This means:

 a. ork or operations performed by **you** or on **your** behalf;
 b. materials, parts and equipment **you** supply for such work or operations; and
 c. written warranties or representations made at any time regarding quality, fitness, durability or performance of any of the foregoing.

## PRINCIPAL COVERAGES

**We** provide insurance for the following coverages indicated by a specific **limit** or premium charge on the Declarations.

### COVERAGE L -- BODILY INJURY LIABILITY
### PROPERTY DAMAGE LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies.

Copyright MCMXC, American Association of Insurance Services

The **bodily injury** or **property damage** must be caused by an **occurrence.**

This insurance applies only to **bodily injury** or **property damage** which occurs:

1. within the **coverage territory;** and

2. during the policy period.

## COVERAGE M -- MEDICAL PAYMENTS

**We** pay the medical expenses defined below for **bodily injury** caused by accidents:

1. on premises **you** own or rent;

2. on ways adjacent or next to premises **you** own or rent; or

3. arising out of **your** operations.

**We** pay such expenses regardless of fault but only if:

1. they arise out of an accident that occurred in the **coverage territory** and during the policy period; and

2. they are incurred and reported within one year of the accident.

Medical expenses means the reasonable and necessary expenses for:

1. medical, surgical, x-ray and dental services, including prosthetic devices and eye glasses;

2. ambulance, hospital, professional nursing and funeral services; and

3. first aid at the time of an accident.

## COVERAGE N -- PRODUCTS/COMPLETED WORK

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Work Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence.** This insurance applies only to **bodily injury** or **property damage** which occurs:

1. within the **coverage territory;** and

2. during the policy period.

## COVERAGE O -- FIRE LEGAL LIABILITY

**We** pay for **property damage** to buildings, or parts thereof, which **you** rent if the **property damage** is caused by fire for which **you** are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to **property damage** do not apply to this coverage. However, **we** do not cover:

1. liability arising under any contract to indemnify any person or organization for damages by fire to the premises; or

2. liability arising out of **property damage** expected, directed or intended by an **insured.**

## COVERAGE P -- PERSONAL AND ADVERTISING INJURY LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **personal injury** or **advertising injury** to which this insurance applies.

The **personal injury** or **advertising injury** must arise out of the conduct of **your** business:

1. within the **coverage territory;** and

2. during the policy period.

## INCIDENTAL LIABILITY COVERAGES

These coverages are subject to all the **terms** of the Principal Coverages. They do not increase the **limits** stated for the Principal Coverages.

### INCIDENTAL MEDICAL MALPRACTICE INJURY

**We** cover **bodily injury** arising out of the rendering or failure to render the following services:

1. medical, surgical, dental, x-ray or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

2. the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

1. expenses incurred by an **insured** for first aid to others at the time of an accident;

2. an **insured** or an **employee** engaged in the business or occupation of providing any of the services described under 1. and 2. above; or

3. injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1. and 2. above.

**AP-100  Ed 1.0**                                 **-- 5 --**                                 **AAIS**

Copyright MCMXC, American Association of Insurance Services

## MOBILE EQUIPMENT

**We** pay all sums for which an **insured** is legally liable for **bodily injury** or **property damage** resulting from mobile equipment, including attached equipment and machinery.

This coverage applies only to land motor vehicles that meet one or more of the following criteria:

1. Those which are used only on premises owned by or rented to **you** (premises includes adjoining ways).

2. Those which are designed primarily for use off public roads.

3. Those which travel on crawler treads.

4. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

   a. power cranes, shovels, loaders, diggers or drills;
   b. concrete mixers (this does not include the mix-in-transit type); and
   c. graders, scrapers, rollers and other road construction or repair equipment.

5. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

   a. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);
   b. geophysical exploration, lighting and well servicing equipment; and
   c. cherry pickers and similar devices used to raise or lower workers.

This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

1. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction or resurfacing;

2. cherry pickers and similar devices used to raise or lower workers;

3. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment); or

4. geophysical exploration, lighting and well servicing equipment.

**We** cover **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraphs 2., 3. and 4. above.

**We** will provide any liability, uninsured motorists, no fault or other coverages required by any motor vehicle insurance law. **We** will provide the required **limits** for such required coverage.

## DEFENSE COVERAGE

Payments under this coverage are in addition to the **limits** for the Commercial Liability Coverage.

**We** have the right and duty to defend a suit seeking damages for **bodily injury, property damage, personal injury** and **advertising injury** which may be covered under the Commercial Liability Coverage. **We** may make investigations and settle claims or suits **we** decide are appropriate.

Suit includes any alternative dispute resolution proceeding involving **bodily injury, property damage, personal injury** and **advertising injury** to which:

1. **you** must submit; or

2. **you** submit with **our** consent.

**We** do not have to provide defense after **we** have paid an amount equal to the **limit** as the result of:

1. a judgment; or

2. a written settlement agreed to by **us.**

If **we** defend a suit, **we** will pay:

1. The costs taxed to the **insured.**

2. The expenses incurred by **us.**

3. The actual loss of earnings by an **insured** for the time spent away from work at **our** request. **We** pay up to $100 per day.

4. The necessary expenses incurred by an **insured** at **our** request.

5. Pre-judgment interest awarded against any **insured** on that part of the judgment **we** pay. If **we** offer to pay the **limit, we** will not pay any pre-judgment interest based on that period of time after the offer.

6. The interest which accrues, beginning with entry of a judgment, and ending when **we** tender, deposit in court, or pay up to **our limit.**

Copyright MCMXC, American Association of Insurance Services

7. The cost of appeal bonds or bonds for the release of attachments up to **our limit. We** are not required to apply for or furnish such bonds.

8. The cost, up to $500, for bail bonds required of an **insured** because of an accident or traffic violation arising out of the use of a vehicle to which Coverage L applies. **We** are not required to apply for or furnish such bonds.

## EXCLUSIONS THAT APPLY TO ALL LIABILITY COVERAGES

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

1. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** which is expected by, directed by, or intended by an **insured.** This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

2. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** arising out of the willful violation of an ordinance, statute or regulation by an **insured** or with the **insured's** consent.

3. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** which is assumed under a contract or an agreement. This exclusion does not apply to:

   a. an **incidental contract;** or
   b. liability for damages that an **insured** would have in the absence of the contract or agreement.

4. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the rendering or the failure to render a professional service, except as provided by the coverage under **Incidental Medical Malpractice Injury.**

5. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the use of mobile equipment in or in the practice or preparation for racing, speed, pulling or pushing, demolition or stunt activities or contests.

6. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of transporting mobile equipment by an **auto** owned by, operated by, rented to or loaned to an **insured.**

7. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the ownership, operation, maintenance, **use,** occupancy, renting, loaning, entrusting, supervision, **loading or unloading** of:

   a. an aircraft;
   b. an **auto,** except as provided under the Incidental Coverage -- Mobile Equipment. This exclusion does not apply to the parking of an **auto** on premises owned by, rented to or controlled by **you** or on the ways immediately adjoining if the **auto** is not owned by or rented to or loaned to an **insured;**
   c. a watercraft. This exclusion does not apply if the watercraft:

      1) is on shore on premises owned by, rented to or controlled by **you;** or
      2) is not owned by **you** and is less than 26 feet in length, and not being used to carry persons or property for a charge.

   d. mobile equipment, except as provided under Incidental Coverage -- Mobile Equipment.

8. **We** do not pay for:

   a. **bodily injury** to an employee of an **insured** if it occurs in the course of employment; or
   b. consequential injuries to a spouse, child, parent, brother or sister of such injured employee.

   Exclusion 8. applies where the **insured** is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third person for damages arising out of paragraph 8.a. or 8.b. above.

   Exclusion 8. does not apply to liability assumed by an **insured** under an **incidental contract.**

9. **We** do not pay for **bodily injury** or **property damage:**

   a. arising wholly or partially out of the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants:**

**AP-100  Ed 1.0**                    **-- 7 --**                              **AAIS**

Copyright MCMXC, American Association of Insurance Services

1) at or from premises **you** own, rent, use or occupy, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be;

2) at or from premises used by **you**, or for **you** or others, for the handling, storage, disposal, processing or treatment of waste;

3) occurring in the transporting, handling, treatment, storage, disposal or processing of any material, including waste, by or for **you** or by any person or organization for whom **you** may be legally liable; or

4) at or from any premises where **you** or any contractor or subcontractor, directly or indirectly under **your** control, are working or have completed work:

   a) if the **pollutant** is on the premises in connection with such work, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be; or

   b) if the work in any way involves testing, monitoring, clean-up, containing, treating or removal of **pollutants.**

   b. due to any loss, cost or expense arising out of governmental action or inaction involving in any way the testing, monitoring, clean-up, containing, treating or removal of **pollutants.**

10. **We** do not pay for **bodily injury** if benefits are provided or are required to be provided by an **insured** under a workers' compensation, non-occupational disability, occupational disease or like law.

11. **We** do not pay for **bodily injury** or **property damage** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or revolution, or an act or a condition of war.

## ADDITIONAL EXCLUSIONS THAT APPLY

1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured,** except as covered under Coverage O.

2. **We** do not pay for **property damage** to premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises. This exclusion does not apply if the premises are **your** work and were not occupied, rented or held for rental by **you.**

3. **We** do not pay for **property damage** to property used by or loaned to **you.** This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

4. **We** do not pay for **property damage** to property in the care, custody or control of an **insured.** This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

5. **We** do not pay for **property damage** to that specific part of real property on which work is being performed by:

   a. **you;** or
   b. a contractor or subcontractor working on **your** behalf, if the **property damage** arises out of such work. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

6. **We** do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship. This exclusion does not apply to:

   a. **property damage** covered under the **Products/Completed Work Hazard;** or
   b. liability assumed under a written sidetrack agreement.

7. **We** do not pay for **property damage** to **your products** if the damage is caused by the **product** or a part of it.

8. **We** do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Products/Completed Work Hazard.** This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

9. **We** do not pay for **property damage** to property that has not been physically injured or destroyed, or to **impaired property,** that results from:

   a. a delay or failure to perform a contract by **you** or one acting on **your** behalf; or
   b. a defect, deficiency, inadequacy or unsafe condition in **your product** or **work** performed by **you** or on **your** behalf.

   This exclusion does not apply to the loss of use of property resulting from sudden and accidental injury to or destruction of **your products** or **your work** after the **products** or **work** have been put to their intended **use.**

AP-100  Ed 1.0                    -- 8 --                          AAIS

Copyright MCMXC, American Association of Insurance Services

10. **We** do not pay for any loss or expense incurred by **you** or anyone else arising out of the loss of use, disposal, withdrawal or recall (including any expenses involved in the withdrawal or recall) of **your products, your work,** or **impaired property.** This applies when the loss of use, disposal, withdrawal or recall was because of a known or suspected defect, deficiency or unsafe condition.

## ADDITIONAL EXCLUSIONS THAT APPLY TO MEDICAL PAYMENTS

1. **We** do not pay for medical expenses for **bodily injury** to an **insured.**

2. **We** do not pay for medical expenses for **bodily injury** to:

   a. a person hired by or on behalf of any **insured** to do work for an **insured;** or
   b. a tenant of an **insured.**

3. **We** do not pay for medical expenses for **bodily injury** to a person injured on that part of the premises owned by or rented to **you** that the person normally occupies.

4. **We** do not pay for medical expenses for **bodily injury** to a person while taking part in athletic activities.

5. **We** do not pay for medical expenses for **bodily injury** included in the **Products/Completed Work Hazard.**

6. **We** do not pay for medical expenses for **bodily injury** to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease or like law.

## ADDITIONAL EXCLUSIONS THAT APPLY TO PERSONAL AND ADVERTISING INJURY LIABILITY

1. **We** do not pay for **personal** or **advertising injury** arising out of oral or written publication of material:

   a. if done by or at the direction of an **insured** who knew it was false; or
   b. whose first publication was prior to the policy period.

2. **We** do not pay for **personal** or **advertising injury** arising out of the willful violation of an ordinance statute or regulation by an **insured** or with the **insured's** consent.

3. **We** do not pay for **personal** or **advertising injury** which is assumed under a contract or an agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

4. **We** do not pay for **advertising injury** arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract.

5. **We** do not pay for **advertising injury** arising out of the failure of goods, products or services to conform with advertised quality or performance.

6. **We** do not pay for **advertising injury** arising out of the wrong description of the price of goods, products or services.

7. **We** do not pay for **advertising injury** arising from an offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice -**

   a. In the case of an **occurrence,** or if an **insured** becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, the **insured** must promptly give notice to **us** or **our** agent.

   b. The notice to **us** must state:

      1) the **insured's** name;
      2) the policy number;
      3) the time, the place and the circumstances of the **occurrence;** and
      4) the names and addresses of all known potential claimants and witnesses.

2. **Volunteer Payments --** An **insured** must not make payments or assume obligations or other costs except at the **insured's** own cost. This does not apply to first aid to others at the time of **bodily injury.**

3. **Other Duties -**

   a. If a claim is made or suit is brought, the **insured** must:

      1) promptly send to **us** copies of all legal papers, demands and notices; and

AP-100  Ed 1.0                           -- 9 --                                    AAIS

Copyright MCMXC, American Association of Insurance Services

2) at **our** request, assist in:

   a) a settlement;
   b) the conduct of suits. This includes the attendance at trials or hearings;
   c) the enforcing of rights against all parties who may be liable to an **insured** for the injury or damage;
   d) the securing of and giving of evidence; and
   e) obtaining the attendance of all witnesses.

b. In the case of a medical payments loss:

   1) the injured person (or one acting on such person's behalf) must:

      a) give **us** written proof of claim (under oath if requested) as soon as practicable; and
      b) give **us** permission to get copies of the medical records.

   2) the injured person must submit to medical exams by doctors chosen by **us** when and as often as **we** may reasonably require.

## HOW MUCH WE PAY

1. The **limits** shown on the Declarations and subject to the following conditions, are the most **we** pay regardless of the number of:

   a. **insureds** under the Commercial Liability Coverage;
   b. persons or organizations who sustain injury or damage; or
   c. claims made or suits brought.

   The payment of a claim under Coverage M does not mean that **we** admit **we** are liable under other coverages.

2. The General Aggregate **Limit** is the most **we** will pay during a policy period for the sum of:

   a. all damages under Coverage L and Coverage P, except damages due to injury or damage included in the **Products/Completed Work Hazard;** and
   b. all medical expenses under Coverage M.

3. The Aggregate **Limit** shown for **Products/ Completed Work Hazard** is the most **we** will pay during a policy period under Coverage N for damages due to injury or damage included under the **Products/Completed Work Hazard.**

4. The Each **Occurrence Limit,** subject to the General Aggregate **Limit** and the **Products/Completed Work Hazard Limit,** is the most **we** will pay for the total of:

a. damages under Coverage L and N; and
b. medical expenses under Coverage M;

due to all **bodily injury** and **property damage** arising out of a single **occurrence.**

5. Subject to the Each **Occurrence Limit** and the General Aggregate **Limit, our limit** for **property damage** covered under Fire Legal Liability is $50,000 for each **occurrence** unless otherwise shown on the Declarations.

6. Subject to the General Aggregate and Each **Occurrence Limits,** the Medical Payment **Limit** is the most that **we** will pay under Coverage M for all medical expenses because of **bodily injury** sustained by any one person.

7. Subject to the General Aggregate **Limit,** the Each **Occurrence Limit** that applies to Coverage P is the most **we** will pay as damages for all **personal** and **advertising injury** arising out of a single **occurrence.**

The General Aggregate **Limit** and Aggregate **Limit** shown for **Products/Completed Work Hazard** apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the Declarations. They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining **limits.**

AP-100   Ed 1.0
AAIS

Copyright MCMXC, American Association of Insurance Services

## CONDITIONS

1. **Bankruptcy --** Bankruptcy or insolvency of an **insured** does not relieve **us** of **our** obligations for Commercial Liability Coverage.

2. **Suit Against Us --** No suit may be brought against **us** unless:

   a. all the **terms** of the Commercial Liability Coverage have been complied with; and
   b. the amount of the **insured's** liability has been determined by:

      1) a final judgment against an **insured** as a result of a trial; or
      2) a written agreement by the **insured,** the claimant and **us.**

   No person has a right under the Commercial Liability Coverage to join **us** or implead **us** in actions that are brought to determine an **insured's** liability.

3. **Commercial Liability Coverage Premium --** If the premium is shown on the Declarations as a deposit premium, **we** will compute the final earned premium at the end of each audit period shown on the Declarations. If it is more than the deposit premium paid by **you, we** will bill **you** for the difference. If the final earned premium is less than the deposit premium paid by **you, we** will return the difference to **you. You** must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to **us** at the end of the audit period or when requested by **us.**

4. **Insurance Under More Than One Policy --** (Applies to all coverages except Coverage M -- Medical Payments.)

   a. Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 4.c. below, or unless otherwise stated. The amount of **our** liability is not reduced because of other insurance which applies to the loss on other than a primary basis.
   b. If the other insurance is also primary, **we** will share in the loss as follows:

      1) If the other insurance provides for contribution by equal shares, **we** will pay equal amounts with other insurers until:

         a) the closest applicable **limit** under any one policy is reached; or

         b) the full amount of the loss is paid. If part of the loss remains unpaid, **we** will pay an equal share with the other insurers until the full amount of the loss is paid, or until **we** have paid **our limit** in full.

      2) If the other insurance does not provide for contribution by equal shares, **we** will pay no more than that proportion of the loss to which the applicable **limit** under this policy for such loss bears to the total applicable **limit** for all insurance against the loss.

   c. Insurance under the Commercial Liability Coverage is excess over any other insurance:

      1) if the other insurance, whether primary, excess, contingent or on any other basis, provides:

         a) fire, extended coverage, builders' risk, installation risk or similar coverage for **your work;** or
         b) fire insurance for premises rented to **you;** or

      2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, **autos** or watercraft which may be covered by this policy.

   d. When this insurance is excess over any other insurance:

      1) **we** will have no duty under Coverage L to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will do so. However, **we** will be entitled to the **insured's** rights against all those other insurers.
      2) **we** will pay **our** share of the amount of loss, if any, that exceeds the sum of:

         a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and
         b) the total of all deductibles and self-insured amounts required by such other insurance.

         **We** will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not brought specifically to apply in excess of the **limits** of insurance shown on the Declarations page of this Commercial Liability Coverage.

AP-100  Ed 1.0                           -- 11 --                                    **AAIS**

Copyright MCMXC, American Association of Insurance Services

5. **Separate Insureds --** Coverage provided under the Commercial Liability Coverage applies separately to each **insured** against whom claim is made or suit is brought. This does not affect the **limits** stated under How Much **We Pay.**

6. **Motor Vehicle Financial Responsibility Certification --** When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for **bodily injury** liability or **property damage** liability will comply with the provisions of the law to the extent of the coverage and **limits** of insurance required by that law.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to **bodily injury** or **property damage:**

   a. with respect to which an **insured** under the policy is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its **limit** of liability; or

   b. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

      1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or
      2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. under any liability coverage, to **bodily injury** or **property damage,** resulting from the **hazardous properties** of **nuclear material,** if:

   a. the **nuclear material:**

      1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured;** or
      2) has been discharged or dispersed therefrom;

   b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, stored, processed, transported or disposed of by or on behalf of an **insured;** or

   c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility,** but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to **property damage** to such **nuclear facility** and property thereat.

### DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. **Hazardous Properties --** These include radioactive, toxic or explosive properties.

2. **Nuclear Material --** This means **source material, special nuclear material** or **by-product material.**

3. **Source Material, Special Nuclear Material, By-product Material --** These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. **Spent Fuel --** This means any fuel element or fuel component solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

5. **Waste --** This means any **waste** material:

   a. containing **by-product material** other than the tailings or **wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

   b. resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

AP-100  Ed 1.0                    -- 12 --                    AAIS

Copyright MCMXC, American Association of Insurance Services

6. **Nuclear Facility --** This means:

   a. any **nuclear reactor.**

   b. any equipment or device designed or used for:

     1) separating the isotopes of uranium or plutonium;

     2) processing or utilizing **spent fuel;** or

     3) handling, processing or packaging **waste.**

   c. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235.

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste**, and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. **Nuclear Reactor --** This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or

   b. to contain a critical mass of fissionable material.

8. **Property Damage --** This includes all forms of radioactive contamination of property.

## COMMERCIAL PROPERTY COVERAGES

### ADDITIONAL DEFINITIONS

1. **Falling Objects --** This means **falling objects** but does not include loss or damage to personal property in the open or to the interior of buildings or personal property inside buildings unless the exterior of the roof or walls are first damaged by a **falling object.**

2. **Sinkhole Collapse --** This means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

3. **Specified Perils --** This means aircraft; civil commotion; explosion; **falling objects;** fire; hail; leakage from fire extinguishing equipment; lightning; riot; **sinkhole collapse;** smoke; sonic boom; vandalism; vehicles; **volcanic action; water damage;** weight of ice, snow, or sleet; and windstorm.

4. **Valuable Papers and Records --** This means abstracts, account books, bills, blue prints, card index systems, data processing media and programs, deeds, designs, drawings, evidences of debt, manuscripts, plans, specifications and other records.

5. **Volcanic Action --** This means airborne volcanic blast or airborne shock waves; ash, dust or particulate matter; or lava flow. It does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss to the covered property.

6. **Water Damage --** This means the accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

### PRINCIPAL COVERAGES

**We** provide insurance for the following coverages for which a specific **limit** or premium charge is shown on the Declarations. **We** insure against loss caused by the perils insured against, subject to all the policy **terms.**

### COVERAGE A -- BUILDINGS

**We** cover the building and structures described on the Declarations. This includes the following property located on the **described premises:**

1. additions;

2. fixtures, machinery and equipment which are a permanent part of the buildings and are used to provide building services;

Copyright MCMXC, American Association of Insurance Services

3. outdoor fixtures;

4. personal property used for maintenance or service of the **described premises**, including air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing and laundering;

5. material, equipment and supplies intended for use in construction, alteration or repair of the buildings; and

6. buildings that are auxiliary to the buildings described on the Declarations.

## COVERAGE B -- BUSINESS PERSONAL PROPERTY

**We** cover **your** business personal property in the described buildings or in the open (or in vehicles) on or within 100 feet of the **described premises**. This includes:

1. **your** interest in personal property of others to the extent of **your** labor, material and services; and

2. **your** use interest in improvements to the described buildings. Improvement means fixtures, alterations, installations or additions to a building **you** do not own. These improvements must have been made or acquired at **your** expense, other than rent, and not be legally subject to removal by **you**.

## COVERAGE C -- LOSS OF INCOME

**We** provide the Earnings and Extra Expense Coverages shown below when **your** business is necessarily interrupted by loss or damage to real or personal property caused by a peril insured against during the policy period.

**We** will pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the loss or damage to property. **We** will not pay more for loss of earnings and extra expense combined than the **limit** shown on the Declarations.

1. **Earnings**

   **We** cover **your** actual loss of net income, payroll expense, taxes, interest, rents, and other operating expenses normally earned by **your** business. Net income means profit or loss before income tax.

   **We** cover only such expenses as are necessary during this interruption of business. Consideration will be given to continuation of payroll and other expenses

to the extent necessary to resume **your** business with the same quality of service that existed before the loss.

**We** cover **your** loss for the time it should reasonably take to resume **your** business, but no longer than the time it should reasonably take to rebuild, repair or replace the covered property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

**You** must do all **you** can to reduce the loss. **We** do not cover any increase in loss due to **your** failure to use reasonable efforts to resume complete or partial business. This includes making use of other location and property to reduce the loss.

**We** will cover expenses in excess of normal that **you** necessarily incur to reduce the loss, but only to the extent that they reduce the loss under this coverage.

In determining a loss, **we** will consider the experience of **your** business before the loss and the probable experience, had no loss occurred.

2. **Extra Expenses**

   **We** cover the necessary extra expenses that **you** incur in order to continue as nearly as practical **your** normal business following damage by a peril insured against.

   **We** cover **your** extra expenses for the time it should reasonably take to resume **your** normal business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

   **You** do all **you** can to resume **your** business and to reduce the loss. **We** do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

   The salvage value of any property bought for temporary use shall be deducted from the extra expenses.

## COLLAPSE COVERAGE

**We** pay for loss or damage caused by or resulting from direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

**AP-100   Ed 1.0**                    **-- 14 --**                                        **AAIS**

Copyright MCMXC, American Association of Insurance Services

1. **specified perils;**

2. hidden decay;

3. hidden insect or vermin damage;

4. weight of people or business personal property;

5. weight of rain that collects on a roof; or

6. the use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**We** will not pay for loss or damage to the following types of property, if otherwise covered in this Collapse Coverage part, under the above items 2. through 6. inclusive unless the loss or damage is a direct result of the collapse of a building:

outdoor radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring; outdoor awnings or canopies of fabric or slat construction or their supports; fences, outdoor signs; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinking, bulging or expanding.

This does not increase the **limit** of insurance.

## INCIDENTAL PROPERTY COVERAGES

**We** provide the following extensions of **your** Commercial Property Coverages.

Unless otherwise stated each incidental coverage:

a. applies for loss caused by a peril insured against;
b. applies only at the **described premises**; and
c. is an additional amount of insurance.

1. The following extensions of coverage apply to either Coverage A or Coverage B.

a. **Antennas, Awnings, Canopies, Fences and Signs -- You** may apply an amount up to $1,000 to cover **your** outdoor:

1) radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;

2) awnings or canopies of fabric or slat construction or their supports;
3) fences; or
4) signs.

b. **Debris Removal -- We** cover the cost to remove the debris of covered property that is caused by a peril insured against. This coverage does not include costs to:

1) extract **pollutants** from land or water; or
2) remove, restore or replace polluted land or water.

**We** will not pay any more under this debris removal coverage than 25 percent of the amount **we** pay for the direct loss or damage. **We** will not pay more for loss to property and debris removal combined than the **limit** of insurance for the property.

However, **we** will pay an additional amount of debris removal expense up to $5,000 when the debris removal expenses exceeds 25 percent of the amount **we** pay for direct loss or damage or when the loss to property and debris removal combined exceeds the **limit** of insurance for the property.

**We** will not pay any expenses unless they are reported to **us** within 180 days of the direct physical loss or damage to covered property.

c. **Fire Department Service Charges -- You** may apply an amount up to $1,000 to cover **your** liability, assumed by contract or agreement prior to the loss, for fire department service charges.

This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a peril insured against.

d. **Removal -- We** cover loss to covered property while removed or being removed from the insured location for preservation from damage caused by a peril insured against. This coverage applies for up to 10 days, but does not extend past the expiration of the policy.

e. **Repairs -- We** cover the cost of repairs that are reasonable and necessary to protect covered property from further damage after damage resulting from a peril insured against. **We** will not pay more for loss to property and repairs combined than the **limit** of insurance for the property.

Copyright MCMXC, American Association of Insurance Services

2. The following extensions of coverage applies only to Coverage A.

   a. **Newly Acquired Buildings -- You** may apply an amount up to 25 percent of the **limit** of insurance, but not exceeding $100,000, to cover **your** buildings or structures being built or that **you** acquire. This coverage is for up to 30 days after construction is started or **you** acquire the building, but not beyond the expiration of the policy. **We** only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date construction is started or the date **you** acquire the building.

   b. **Trees, Shrubs and Plants -- You** may apply an amount up to $1,000 to cover outdoor trees, shrubs and plants. **We** only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot. This coverage is limited to $250 on any one tree, shrub or plant, including debris removal.

3. The following extensions of coverage apply only to Coverage B:

   a. **Personal Property -- Acquired Locations -- You** may apply an amount up to 10 percent of the **limit** of insurance, but not exceeding $20,000, to property covered at locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   b. **Personal Property -- Off Premises -- You** may apply an amount up to $2,500, unless otherwise shown on the Declarations, to covered property while temporarily at locations within the **basic territory** that **you** do not own, control, rent or lease. Coverage applies while the property is in transit or at a job site.

   Covered property includes:

   1) portable tools and equipment, including spare parts and accessories; and/or
   2) materials, supplies, machinery and fixtures that are owned by **you**, or for which **you** are legally liable.

   c. **Personal Property of Others -- You** may apply an amount up to $2,500 to cover personal property of others in **your** care. This coverage is only for the benefit of the owners of the personal property.

   d. **Valuable Papers and Records -- You** may apply an amount up to $1,000 to cover the cost of research or other expenses necessary to reproduce, replace or restore **your** valuable papers and records.

4. The following extensions of coverage apply only to Coverage C:

   a. **Alterations and New Buildings -- We** extend **your** coverage to include loss caused by damage to additions, alterations and new buildings under construction at the **described premises** by a peril insured against. **We** cover **your** loss for the delay in using such additions, alterations and new buildings starting from the time business would have begun had no damage occurred. This does not increase the **limit** of insurance.

   b. **Interruption by Civil Authority -- We** extend **your** coverage to include loss while access to **your** premises is specifically denied by an order of a civil authority. This order must be a result of damage to property in the immediate vicinity and caused by a peril insured against. This extension is limited to two consecutive weeks. This does not increase the **limit** of insurance.

   c. **Newly Acquired Locations -- We** extend **your** coverage for an amount up to $100,000, to include loss caused by damage to locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   **We** only cover loss at such locations within the **basic territory** and caused by a peril insured against. Additional premium will be charged from the date **you** acquire the locations. This is an additional amount of insurance.

   d. **Period of Loss Extension -- We** extend **your** coverage to cover loss for the time from the date the property that incurred the loss or damage is rebuilt, repaired or replaced, until the date **you** could reasonably resume **your** normal business, or the end of 30 consecutive days, whichever is earlier. This does not increase the **limit** of insurance.

## PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

1. The following exclusions are applicable to Coverage A -- Buildings and Coverage B -- Business Personal Property. Limited coverage of some of these types of property is included in the Incidental Property Coverages.

   a. **Animals -- We** do not cover animals, including birds and fish.

   b. **Antennas, Awnings, Canopies, Fences and Signs -- We** do not cover outdoor:

**AP-100  Ed 1.0**                    **-- 16 --**                                    **AAIS**

Copyright MCMXC, American Association of Insurance Services

    1) radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;
    2) awnings or canopies of fabric or slat construction or their supports;
    3) fences; or
    4) signs.

c. **Boilers -- We** do not cover loss to hot water boilers or heaters, steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment, including bursting, cracking, exploding or rupturing. This exclusion does not apply to loss or damage caused by explosion of gas or fuel in the fire box, combustion chamber or flues; or loss or damage to hot water boilers or heaters caused by internal explosion.

d. **Contraband -- We** do not cover contraband or property in the course of illegal transportation or trade.

e. **Foundations, Retaining Walls, Piling, Piers, Wharves or Docks -- We** do not cover foundations which are below the lowest basement floor or below ground level if there is no basement; retaining walls that are not part of buildings; or pilings, piers, wharves or docks.

f. **Glass Breakage -- We** do not cover building glass breakage loss for more than $100 for any plate, pane, multiple plate insulating unit, heating pane, jalousie, louver or shutter, or more than $500 in any one occurrence. These **limits** do not apply to loss by **specified perils** other than vandalism.

g. **Land, Cost of Excavation, Grading or Filling, Paved Surfaces or Underground Pipes, Flues or Drains -- We** do not cover:

    1) land, including land on which the property is located;
    2) cost of excavations, grading or filling;
    3) paved outdoor surfaces, including driveways, parking lots, roads and walks; or
    4) underground pipes, flues and drains.

h. **Money, Securities or Lottery Tickets -- We** do not cover money, securities or lottery tickets.

i. **Personal Property of Others -- We** do not cover personal property owned by others.

j. **Property More Specifically Insured -- We** do not cover property which is more specifically insured in whole or in part by any other insurance. **We** do cover the amount in excess of the amount due from the more specific insurance.

k. **Trees, Shrubs and Plants -- We** do not cover trees, shrubs and plants, including lawns and growing crops.

l. **Valuable Papers and Records -- We** do not cover loss to valuable papers or records unless the loss is caused by a **specified peril.**

m. **Vehicles, Aircraft and Watercraft -- We** do not cover vehicles designed for use on public roads; aircraft; or watercraft, including motors, equipment and accessories while afloat.

n. **Water -- We** do not cover underground or surface water.

2. The following exclusions are applicable only to Coverage C -- Loss of Income.

a. **Delayed Rebuilding, Repairing or Replacement -- We** do not cover any loss beyond the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage.

b. **Electronic Equipment -- We** do not cover earnings loss caused by loss or damage to media, programs or records for electronic data processing or electronically controlled equipment beyond 60 consecutive days, or the time necessary to rebuild, repair or replace other damaged property, whichever is greater.

c. **Environmental Damage -- We** do not cover any increase in loss caused by any law, regulation or decree that regulates the prevention, control, repair, decontamination, clean-up or restoration of environmental damage.

d. **Fire Extinguishment -- We** do not cover expenses to put out a fire.

e. **Leases, Licenses, Contracts or Orders -- We** do not cover any increase in loss due to the suspension, lapse or cancellation of leases, licenses, contracts or orders.

    **We** do cover such loss resulting directly from the interruption of **your** business, but not beyond the time the business could have been resumed.

f. **Property Damage -- We** do not cover the normal cost of repair, replacement or restoration of property.

g. **Records -- We** do not cover the cost of research or other extra expense necessary to replace records, including electronic data processing or electronically controlled equipment programs, data or media.

h. **Strikes, Protests and Other Interference -- We** do not cover any increases in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing or replacing property or with the resumption of **your** business.

Copyright MCMXC, American Association of Insurance Services

## PERILS INSURED AGAINST -- COVERAGES A AND B

**Coverage A -- Buildings and Coverage B -- Business Personal Property -- We** insure against risks of direct physical loss unless specifically excluded.

**The following exclusions apply to Coverages A and B:**

1. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority -- We** do not cover loss caused by order of any civil authority, including seizure, confiscation or destruction of property.

      **We** will cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

   b. **Collapse -- We** do not cover loss or damage caused by or resulting from collapse. This exclusion does not apply to loss or damage caused by or resulting from collapse described in the Collapse Coverage section of the Commercial Property Coverages.

   c. **Defects, Errors and Omissions -- We** do not cover loss which results from one or more of the following:

      1) an act, error or omission (negligent or not) relating to:

         a) land use;
         b  the design, specification, construction, workmanship, installation or maintenance of property;
         c) planning, zoning, development, siting, surveying, grading or compaction; or
         d) maintenance of property (including land, structures or improvements);

         whether on or off the premises;

      2) a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair, whether on or off the premises;
      3) the cost to make good an error in design; or
      4) a data processing error or omission in programming or giving improper instructions.

      In addition, **we** do not cover loss to Business Personal Property caused by deficiency or

defects in design, specification materials or workmanship, or caused by or resulting from latent or inherent defects.

   **We** will cover any resulting loss caused by a peril insured against unless the resulting loss itself is excluded.

   d. **Earth Movement or Volcanic Eruption -- We** do not cover loss caused by any earth movement (other than **sinkhole collapse**) or caused by eruption, explosion or effusion of a volcano. Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; or sinking, rising or shifting of earth.

      **We** will cover direct loss by fire, explosion or **volcanic action** resulting from either earth movement or eruption, explosion or effusion of a volcano.

      All volcanic eruptions that occur within a 72-hour period shall be considered a single loss.

   e. **Nuclear Hazard -- We** do not cover loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to or aggravated by a peril insured against and whether caused by natural, accidental or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

   f. **Ordinance or Law -- We** do not cover loss or increased cost caused by the enforcement of an ordinance, law or decree that regulates the construction, use, repair or demolition of covered property.

   g. **Utility Failure -- We** do not cover loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the **described premises**. Interruption includes reduced voltage, low pressure or other interruptions of normal services.

      **We** will cover the direct loss by a peril insured against which occurs on the described premises as a result of any power interruption.

   h. **War -- We** do not cover loss caused by war. This means:

      1) declared war, undeclared war, civil war, insurrection, rebellion or revolution;
      2) a warlike act by a military force or by military personnel;

**AP-100  Ed 1.0**                    **-- 18 --**                              **AAIS**

Copyright MCMXC, American Association of Insurance Services

3) the destruction, seizure or use of the property for a military purpose; or
4) the discharge of a nuclear weapon, even if it is accidental.

i. **Water -- We** do not cover loss caused by water. This means:

1) flood, surface water, waves, tidal water or the overflow of a body of water. This includes spray that results from these whether driven by wind or not;
2) water that backs up through a sewer or drain; and
3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool or other structure.

If a fire, theft or explosion results, **we** do cover the loss caused by the fire, theft, or explosion, except for boiler explosion.

j. **Weather -- We** do not cover loss to personal property in the open caused by rain, snow, ice or sleet. **We** do not cover loss to the interior of buildings caused by rain, snow, sand or dust, unless entering through openings made by a **specified peril**.

2. **We** do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Animals -- We** do not cover loss caused by or resulting from animals, including birds, insects or vermin. **We** will cover any resulting loss caused by a **specified peril**.

b. **Criminal, Fraudulent or Dishonest Act -- We** do not cover loss caused by or resulting from criminal, fraudulent, dishonest or illegal act, alone or in collusion with another, by:

1) **you;**
2) others who have an interest in the property;
3) others to whom **you** entrust the property;
4) **your** partners, officers, directors, trustees, joint adventurers; or
5) the employees or agents of 1), 2), 3) or 4) above, whether or not they are at work.

c. **Deterioration -- We** do not cover loss caused by or resulting from deterioration including corrosion, decay, fungus, mildew, mold, rot or rust. **We** will cover any resulting loss caused by a **specified peril**.

d. **Disappearance -- We** do not cover unexplained or mysterious disappearance, or shortage discovered on taking inventory.

e. **Electrical Currents -- We** do not cover loss caused by or resulting from arcing or by electrical currents other than lightning. If a fire results, **we** will cover only the damage caused by fire.

f. **Explosion -- We** do not cover loss caused by or resulting from explosion of hot water boilers or heaters, steam boilers, steam turbines or steam engines that **you** own or lease or that are under **your** control. This exclusion does not apply to loss or damage caused by the explosion of gas or fuel in the firebox, combustion chamber or flues; or loss or damage to hot water boilers or heaters caused by internal explosion. If a fire results from this explosion, **we** do cover the loss caused by the fire.

g. **Freezing -- We** do not cover water damage caused by or resulting from freezing of plumbing, heating, airconditioning systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain heat in the building or to turn off the water and drain the equipment, if heat is not maintained.

**We** do not cover water damage caused by or resulting from freezing of fire protection systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain conditions necessary for the proper operation of the fire protection equipment.

h. **Increased Hazard -- We** do not cover loss occurring while the hazard has been materially increased by any means within **your** knowledge or control.

i. **Neglect -- We** do not cover loss caused by or resulting from **your** neglect to use all reasonable means to save covered property at and after the time of loss.

**We** do not cover loss or damage caused by or resulting from **your** neglect to use all reasonable means to save and preserve covered property when endangered by a peril insured against.

Copyright MCMXC, American Association of Insurance Services

j. **Pollutants -- We** do not cover loss caused by or resulting from release, discharge or dispersal of pollutants unless the release, discharge or dispersal is caused by a **specified peril. We** will cover any resulting loss caused by a **specified peril.**

k. **Protective Safeguards -- We** do not cover losses occurring while protective safeguards that **you** control are not in working condition. This exclusion applies only to protective safeguards shown on the Declarations and to the property, premises and perils affected. This lasts until the safeguards are back in order.

l. **Seepage -- We** do not cover loss caused by or resulting from continuous or repeated seepage or leakage from within a plumbing, heating or air-conditioning system or domestic appliance.

m. **Settling, Cracking, Shrinking, Bulging or Expanding -- We** do not cover loss caused by or resulting from settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls, ceilings or roofs. **We** will cover any resulting loss caused by a **specified peril.**

n. **Smog, Smoke, Vapor or Gas -- We** do not cover loss caused by or resulting from smog, smoke, vapor or gas from agricultural or industrial operations.

o. **Temperature/Humidity -- We** do not cover loss to personal property caused by or resulting from dampness, or changes in or extremes of temperature. **We** will cover any resulting loss caused by a **specified peril.**

p. **Theft of Property From Unattended Vehicles We** do not cover theft of property from unattended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence of forcible entry.

q. **Vacancy/Unoccupancy -- We** do not cover loss occurring while the building has been vacant beyond 60 consecutive days.

**We** do not cover loss occurring while the building has been unoccupied for more than 60 consecutive days or for more than the usual or incidental unoccupancy period for the described premises, whichever is longer.

Unoccupied means that the customary activities or operations of the described occupancy are suspended, but personal property has not been removed. The building shall be considered vacant and not unoccupied when the occupants have moved leaving the building empty except for limited personal property.

r. **Voluntary Parting -- We** do not cover loss caused by or resulting from voluntary parting with title or possession of any property because of any fraudulent scheme, trick or false pretense.

s. **Wear/Breakdown -- We** do not cover loss caused by or resulting from wear and tear, mechanical breakdown, centrifugal force, marring or scratching. **We** will cover any resulting loss caused by a **specified peril.**

t. **Weight of a Load -- We** do not cover loss caused by or resulting from the weight of a load when it exceeds the designed capacity of a machine to lift, move or support the load from any position.

u. **Work or Operations -- We** do not cover loss to property caused by or resulting from actual work or operations. This includes altering, constructing, installing, manufacturing, processing, servicing or testing. **We** will cover any resulting loss caused by a **specified peril.**

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice --** In case of a loss, the **insured** must:

   a. give **us** or **our** agent prompt notice **(We** may request written notice.);
   b. give notice to the police when the act that causes the loss is a crime; and
   c. give notice to the credit card company if the loss involves a credit card.

2. **Protect Property -- You** must take all reasonable steps to protect covered property at and after an **insured** loss to avoid further loss. **We** pay for the costs. The **insured** must keep an accurate record of such costs. This does not increase **our limit.**

3. **Volunteer Payments -- You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

4. **Proof of Loss -- You** must send **us** a statement of loss (under oath, if requested) within 60 days after the loss. This must include the following information:

   a. the time, place and circumstances of the loss;
   b. other policies of insurance that may cover the loss;
   c. **your** interest and the interests of all others in the property involved, including all mortgages and liens;

AP-100  Ed 1.0                    -- 20 --                              AAIS

Copyright MCMXC, American Association of Insurance Services

d. changes in title or occupancy of the covered property during the policy period;

e. detailed estimates for repair or replacement of covered property;

f. available plans and specifications of buildings or structures;

g. detailed estimates of any covered loss of income and expenses; and

h. an inventory of damaged and undamaged covered personal property showing in detail the quantity, description, cost, actual cash value and amount of the loss. **You** must attach to the inventory copies of all bills, receipts and related documents that substantiate the inventory. An inventory of undamaged personal property is not required if the total claim for a loss is less than $10,000 and less than five percent of the total **limit** of insurance.

5. **Examination --** Any **insured** must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of the others.

6. **Records -- You** must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss and expense and permit copies and extracts to be made of them as often as **we** reasonably request.

7. **Damaged Property -- You** must exhibit the damaged property as often as **we** reasonably request.

8. **Abandonment of Property -- We** do not have to accept any abandonment of property.

## HOW MUCH WE PAY

1. **Actual Cash Value --** When replacement cost is not indicated on the Declarations for Property Coverage, the loss payment will be based upon the actual cash value at the time of the loss with a deduction for depreciation.

2. **Replacement Cost --** When replacement cost is indicated on the Declarations for Coverage A or Coverage B the valuation of property insured under that Coverage shall be the replacement cost without any deduction for depreciation.

    This replacement cost provision does not apply to carpeting, objects of art, rarity or antiquity, or property of others.

    The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

    Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value and later for the replacement cost if you notify us of your intent within 180 days after the loss.

3. **Rebuilding, Repairing or Replacing --** The valuation of losses is limited to the cost to rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable.

4. **Glass --** Glass will be valued at the cost of safety glazing material where required by code, ordinance or law.

5. **Merchandise Sold --** Merchandise that you have sold but not delivered will be valued at the selling price less all discounts and unincurred expenses.

6. **Valuable Papers and Records --** The valuation of valuable papers and records is the cost of blank materials.

7. **Tenant's Improvements --** Tenant's improvements losses will be valued at the basis applicable to Business Personal Property (actual cash value or replacement cost) if repaired or replaced at your expense within a reasonable time.

    Tenant's improvements losses are not covered if repaired or replaced at another's expense.

    Tenant's improvements losses will be valued at a portion of your original cost if not repaired or replaced within a reasonable time. This portion is the ratio between the time remaining on your lease and the time between the installation or acquisition of the improvements and the end of your lease. Any renewal options in your lease are to be considered in valuation of your loss.

    **Example:**

    Tenant's improvements installed at the beginning of a five year lease with a five year extension. The value of the damaged or

AP-100  Ed 1.0                    -- 21 --                                    AAIS

Copyright MCMXC, American Association of Insurance Services

destroyed property after three years is 70 percent of **your** original cost if not repaired or replaced.

8. **Pair or Set** -- Loss to an article which is part of a pair or set will be a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

## PAYMENT OF LOSS OR CLAIM

1. **Our Options -- We** have the following options:

   a. pay the loss;
   b. rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable, within a reasonable time;
   c. ake all or any part of the damaged property at the agreed or appraised value.

   **We** must give **you** notice of **our** intent to rebuild, repair or replace within 30 days after receipt of a duly executed proof of loss.

2. **Insurable Interest -- We** do not cover more than **your** insurable interest in any property.

3. **Your Losses -- We** will adjust all losses with **you**. Payment will be made to **you** unless another loss payee is named in the policy. An **insured** loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us**.

4. **Property of Others --** Losses to property of others may be adjusted with **you. We** reserve the right to adjust with and pay to the owners. Payment to the owners satisfies **our** obligation to **you** for loss to this property. **We** may also choose to defend any suits arising from the owners.

5. **Deductible -- We** pay only that part of **your** loss over the deductible amount stated on the Declarations in any one **occurrence.**

6. **Limit of Insurance -- We** will not pay more than **our limit** of insurance for any loss.

7. **Automatic Increase --** The **limits** of insurance are increased when a percentage increase is shown on the Declarations. The increase shown is the annual percentage increase and applies proportionally from the date of the most recent **limit**. The increase applies only to the **limits** of insurance shown on the Declarations.

8. **Insurance Under More Than One Coverage --** If more than one coverage of this policy insures the same loss, **we** pay no more than the actual claim, loss or damage sustained.

9. **Insurance Under More Than One Policy --** If there is any other insurance which applies to a loss, **we** pay only for the excess of the amount due from such other insurance, whether collectible or not.

10. **Benefit To Others --** Insurance under the Property Coverage shall not directly or indirectly benefit anyone having custody of **your** property.

11. **Appraisal --** If **you** and **we** do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the actual cash value of covered property items at the time of the loss, if requested. The appraisers will also determine any income or expense amounts, if requested.

    If the appraisers submit a written report of any agreement to **us**, the amount agreed upon will be the amount of the loss, value, income or expense. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss, value, income or expense.

    Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.**

AP-100  Ed 1.0                    -- 22 --                    AAIS

Copyright MCMXC, American Association of Insurance Services

# CONDITIONS

In addition to the policy terms which are contained in other sections of the Property Coverage, the following conditions apply.

1. **Control of Property --** The Property Coverage is not affected by any act or neglect beyond **your** control.

2. **Mortgage Provisions --** If a mortgagee (mortgage holder) is named in this policy, loss to buildings shall be paid to the mortgagee and **you** as interest appear. If more than one mortgagee is named, they shall be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage terms. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us**.

   **We** will also notify the mortgagee if **we** cancel the policy. The cancellation conditions apply to the mortgagee.

   **We** may request payment of the premium from the mortgagee, if **you** fail to pay the premium.

   If **we** pay the mortgagee for a loss where **your** insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from **you** then belongs to **us**. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from **you**. As an alternative, **we** may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

3. **Recoveries --** If **we** pay **you** for the loss under the Property Coverage and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. You must notify us promptly if you recover property or receive payment.
   b. We must notify you promptly if we recover property, or receive payment.
   c. Any recovery expenses incurred by either are reimbursed first.
   d. You may keep the recovered property but you must refund to us the amount of the claim paid, or any lesser amount to which we agree.
   e. if the claim paid is less than the agreed loss due to a deductible or other limiting term of this policy any recovery will be pro rated between you and us based on our respective interest in the loss.

4. **Suit Against Us --** No suit to recover any loss may be brought against **us** unless:

   a. the terms of the Property Coverages have been fully complied with; and
   b. the suit is commenced within one year after the loss.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

5. **Waiver of Right of Recovery -- You** may waive **your** right of recovery in writing before a loss without voiding the coverage.

   **You** may waive **your** right of recovery in writing after a loss only to the following parties:

   a. someone insured by this policy;
   b. your tenant;
   c. a business firm owned or controlled by you; or
   d. a business firm which owns or controls your business.

AP-100  Ed 1.0                          -- 23 --                                    AAIS

Copyright MCMXC, American Association of Insurance Services

**AAIS**
**AP 0225 10 05**
**Page 1 of 1**

This endorsement changes the Commercial
Liability Coverage provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

## ASBESTOS EXCLUSION

The Commercial Liability Coverage is amended
as follows:

## EXCLUSIONS

1.  The following exclusions are added under
    Exclusions That Apply To Bodily Injury,
    Property Damage, Personal Injury, And/Or
    Advertising Injury:

    "We" do not pay for:

    a.  "bodily injury" arising out of the actual,
        alleged, or threatened ingestion,
        inhalation, or absorption of asbestos,
        asbestos products, asbestos fibers, or
        asbestos dust;

    b.  "property damage" arising out of the
        actual, alleged, or threatened contact
        with, existence of, exposure to, or
        presence of asbestos, asbestos
        products, asbestos fibers, or asbestos
        dust; or

    c.  any loss, cost, or expense arising out of
        the testing for, monitoring, cleaning up,
        removing, containing, treating,
        detoxifying, neutralizing, or in any way
        responding to or assessing the effects of
        asbestos, asbestos products, asbestos
        fibers, or asbestos dust by any "insured"
        or any other person or organization.

2.  The following exclusions are added under
    Additional Exclusions That Apply Only To
    Personal Injury And/Or Advertising Injury:

    "We" do not pay for:

    a.  "personal injury" or "advertising injury"
        arising out of the actual, alleged, or
        threatened ingestion of, inhalation of,
        absorption of, contact with, existence of,
        exposure to, or presence of asbestos,
        asbestos products, asbestos fibers, or
        asbestos dust; or

    b.  any loss, cost, or expense arising out of
        the testing for, monitoring, cleaning up,
        removing, containing, treating,
        detoxifying, neutralizing, or in any way
        responding to or assessing the effects of
        asbestos, asbestos products, asbestos
        fibers, or asbestos dust by any "insured"
        or any other person or organization.

**AP 0225 10 05**

Copyright, American Association of Insurance Services, Inc., 2005

AAIS

- PLEASE READ THIS CAREFULLY -

AP-336
Ed 1.0

# PREMIUM PAYMENTS

The premium for this policy is payable each year. Each annual premium is based on the rates or premiums which are in effect for us at that time. The forms and endorsements will be those which are in effect for us at that time.

AP-336 Ed 1.0

AAIS

Copyright MCMXC, American Association of Insurance Services

| AAIS | This endorsement changes |
|---|---|
| AP 0643  12 99 | the policy |
| Page 1 of 2 | - PLEASE READ THIS CAREFULLY- |

## KNOWN INJURY OR DAMAGE AMENDMENTS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "Designated insured" means:

   a. "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;

   b. "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;

   c. "you" and all "your" members and managers, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as a limited liability company; and

   d. "you" and all "your" executive officers and directors, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as an organization (other than a partnership, joint venture, or limited liability company).  It also includes "your" stockholders, but only for their liability as such; or

   e. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

2. Under Principal Coverages, Coverage L and , if applicable, Coverage N are amended by the addition of the following:

This insurance applies only to:

a. "Bodily injury" or "property damage" which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period.  If a "designated insured" knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that "bodily injury" or "property damage" had occurred, any continuation of, resumption of, or change in such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of the policy period.

b. "Bodily injury" or "property damage" that occurs during the policy period and which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of, resumption of, or change in such "bodily injury" or "property damage" after the end of this policy period.

3. Under Defense Coverage, the following is added:

   "We" have no duty to defend a suit or claim seeking "damages" because of "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge

of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period.

4. Under Conditions, the following condition is added:

**Knowledge of Bodily Injury or Property Damage** – Knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

a. when a suit, claim, or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

b. when any "designated insured" reports the "bodily injury" or "property damage" to "us" or any other insurer; or

c. when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

---

AP 0643 12 99
Copyright, American Association of Insurance Services, 2000

# WORK PERFORMED EXCLUSION

## THIS ENDORSEMENT CHANGES THE COMMERCIAL LIABILITY COVERAGES PROVIDED BY THIS POLICY.

### — PLEASE READ THIS CAREFULLY—

Exclusion number 8 under the Additional Exclusions that apply to Property Damage Liability under the Commercial Liability Coverage Section of the policy is hereby deleted and replaced with the following:

8.  We do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Product Completed Work Hazard.** This exclusion applies even if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

ART 00 07

07/96

BUSINESSOWNERS
BP 02 01 01 10

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# MONTANA CHANGES

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS STANDARD OR SPECIAL PROPERTY COVERAGE FORM, BUSINESSOWNERS LIABILITY COVERAGE FORM, AND COMMON POLICY CONDITIONS FORM**

**A.** The following condition is added to the **COMMON POLICY CONDITIONS:**

**4. Conformity With Statutes**

**1.** The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this policy.

**2.** Any provision of this policy (including endorsements which modify the policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

**B. COMMON POLICY CONDITIONS** is amended as follows:

**1.** Paragraph **2.. Cancellation** is replaced by the following:

**2. Midterm Cancellation**

We may cancel this policy, based on the provisions below, by mailing or delivering written notice to the first Named Insured at least 10 days before the effective date of cancellation:

**a.** If this policy has been in effect for less than 60 days, except as provided in **c.** below, we may cancel for any reason.

**b.** If this policy has been in effect for 60 days or more, we may cancel this policy prior to the expiration of the agreed term or prior to one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons:

**(1)** Failure to pay premium when due;

**(2)** Material misrepresentation;

**(3)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(4)** Substantial breaches of contractual duties, conditions or warranties;

**(5)** Determination by the Commissioner of Insurance that continuation of the policy would place us in violation of the Montana Insurance Code;

**(6)** Our financial impairment; or

**(7)** Such other reasons that are approved by the Commissioner of Insurance.

**c.** If this policy has been issued for a term longer than one year, and if either the premium is prepaid or an agreed term is guaranteed for additional premium consideration, we may cancel this policy only for one or more of the reasons stated in **b.** above.

**d. Anniversary Cancellation**

We may cancel any policy with a term of more than one year by mailing or delivering to the first Named Insured written notice of cancellation at least 45 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

**2.** Paragraph **2.** of **Cancellation** is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

However, when a financed insurance policy is cancelled, we will send any refund due to the premium finance company on a pro rata basis.

© Insurance Services Office, Inc., 2009   □

3. **Misrepresentation , Concealment, Or Fraud** is replaced by the following:

   9. **Concealment, Misrepresentation Or Fraud**

      1. We will not pay for loss or damage in a case of:

         a. Concealment or misrepresentation of a material fact; or

         b. Fraud;

         committed by you or any other insured, whether before or after the loss and relating to coverage of the loss under this policy.

      2. We will not pay for loss or damage in a case of:

         a. Concealment or misrepresentation of a material fact; or

         b. Fraud;

         committed by you or any other insured in the application for this policy.

4. The following paragraph is added:

   L. **Nonrenewal**

      1. If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations and agent, if any, a notice of intention not to renew at least 45 days before the agreed expiration date.

      2. We need not mail or deliver this notice if:

         a. You have purchased insurance elsewhere;

         b. You have accepted replacement coverage;

         c. You have requested or agreed to nonrenewal; or

         d. This policy is expressly designated as nonrenewable.

 © Insurance Services Office, Inc., 2009 **BP 02 01 01 10** □

**BUSINESSOWNERS**
**BP 05 01 07 02**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

© ISO Properties, Inc.,  2001

**AAIS**
**CL 0605 01 08**
**Page 1 of 1**

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown
below, on the "declarations", or on the "schedule of coverages".)

## SCHEDULE

Certified Terrorism Loss Premium   $ _____

Additional information, if any, concerning terrorism premium:

1. The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2. Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays 85% of insured losses for "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a Program Year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

   If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

**CL 0605 01 08**

Copyright, American Association of Insurance Services, Inc., 2008

**AAIS**
**CL-144  Ed 1.0**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# AMENDATORY ENDORSEMENT
## MONTANA

Under the Common Policy Conditions, the Cancellation condition is deleted and replaced by:

**Cancellation and Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

"We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

During the first 60 days this policy is in effect, "we" may cancel for any reason. "We" will give "you" notice at least ten days before cancellation is effective.

After this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us" effective immediately, "we" may cancel or not renew only at the anniversary date unless one or more of the following reasons apply:

a.  nonpayment of premium;

b.  material misrepresentation;

c.  substantial change in the risk assumed, except to the extent that "we" should reasonably have foreseen the change or contemplated the risk in writing the policy;

d.  substantial breaches of contractual duties, conditions, or warranties;

e.  determination by the Commissioner of Insurance that continuation of the policy would place "us" in violation of the Montana Insurance Code;

f.  "our" financial impairment; or

g.  such other reasons that are approved by the Commissioner of Insurance.

If "we" cancel this policy for any of the reasons listed above after it has been in effect for 60 days or more, "we" will mail or deliver written notice of cancellation to "you" at least ten days before the cancellation is to take effect.

If "we" cancel this policy or coverage on any anniversary date, "we" will mail or deliver "our" notice of cancellation to "you" at least 30 days prior to the anniversary date on which cancellation is to be effective.

If "we" decide not to renew this policy, "we" will mail or deliver "our" notice of nonrenewal to "you" and "your" agent at least 30 days before the end of the policy period. This nonrenewal provision does not apply if "you" have insured elsewhere, have accepted replacement coverage, or have requested or agreed to nonrenewal.

"Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time.

Payment or tender of the unearned premium is not a condition of cancellation.

**CL-144  Ed 1.0**
Copyright MCMXCVI
American Association of Insurance Services

# POLICYHOLDER NOTICE

Meeting Notice: Midwest Family Mutual Insurance Company is a "Mutual" form of insurance company. As a Policyholder, you are a "Member" of the company and have the right to influence the business of the company. Each Policyholder "member" is entitled to one vote regarding any company business conducted at this Annual Meeting.

The Company's annual meeting is held at its Home Office located at 1711 Osceola Avenue, Chariton, Iowa at 10 a.m. on the third Monday in August each year. Attendance and participation via video-teleconferencing service will also be made available at Midwest Family Mutual Insurance Company's Regional Office at 3033 Campus Drive, Plymouth, Minnesota.

**President**                                        **Secretary**

MFM 001 08-12

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT–RELATED PRACTICES EXCLUSION

The following exclusion is added:

This insurance does not apply to "bodily injury" or "personal injury" arising out of any:

   **a.** Refusal to employ;

   **b.** Termination of employment;

   **c.** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   **d.** Consequential "bodily injury" or "personal injury" as a result of a. through c. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

The exception to this exclusion is any limited EPLI coverage that may be provided under optional form EP 00 01.

Portions copyrighted from Insurance Services Office, Inc.

COMMERCIAL GENERAL LIABILITY
MFMAP003 03-09

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – LIQUOR LIABILITY EXCLUSION

This endorsement modifies the insurance provided under the following:

CONTRACTORS SPECIAL POLICY FORM

This insurance does not apply to "bodily injury" or "property damage" for which any insured may be held liable by reason of:

a. Causing or contributing to the intoxication of any person;

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity requires a license; or is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without charge if a license is required for such activity.

**AAIS**
**MFMAP-01 01 09**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# NUCLEAR, BIOLOGICAL, AND CHEMICAL
# TERRORISM EXCLUSIONS

1. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

   "Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   1. The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   2. The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. The following exclusion is added under the Commercial Liability Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for injury or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Commercial Liability Coverages of the policy to which this endorsement applies.

3. The following exclusion is added under the Property Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

4. When the Terrorism Exclusion set forth under item 3. of this endorsement applies due to an incident of "terrorism" described above under items 3.a. or 3.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the policy to which this endorsement applies.

5. The following provisions are added.

a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the policy to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that policy under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the policy to which this endorsement applies under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

6. The Property and Liability Coverages are amended as follows:

**CAP ON CERTIFIED TERRORISM LOSSES**

The following limitation applies to coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of the exclusion in Paragraphs **B.1.** and **C.1.** and to any loss or damage that is covered and to which the exception in Paragraph **B.2.** applies.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

Includes copyrighted material of American Association of Insurance Services with its permission. Modified from original language.

## Midwest Family Mutual Insurance Company

## *Privacy Policy Notice*

To Our Customers:

Midwest Family Mutual values you as a customer and has always safeguarded the information that is collected in order to provide you with the best possible products and services. Federal legislation, the Gramm-Leach-Bliley Financial Modernization Act of 1999, now requires that we formally advise of this.

You provide us with most of the information about you that we use in evaluating your application and servicing your insurance policy. We may collect non-public personal information about you from any of the following sources: Information from you on application or other forms or in other transactions with us; our agents; or information we receive from a consumer reporting agency. Depending on the nature of your coverage, we may collect information about you from third parties, such as other persons proposed for coverage under your policy or the State Motor Vehicle Department concerning your driving record.

We do not disclose any non-public information about our customers or former customers to anyone, except as permitted by law. In some cases this may mean information can be disclosed to third parties without your authorization. This is only done within the law and with parties that facilitate the underwriting of risk, settlement of claims, reinsurance of these functions or to comply with regulatory requirements. We do not release information for any marketing purpose.

We restrict access to information about you to employees or agents to allow them to provide you with products or to provide you benefits or services under them. We maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your non-public personal information.

You have the right to obtain access to certain items of information we have collected about you, and you have the further right to request correction of information if you feel it is inaccurate.

We would also be pleased to tell you about our policies and procedures for the privacy of your information. For a copy of our privacy policy or to access your information, please contact us in one of the following ways:

Midwest Family Mutual Insurance Company
3033 Campus Drive STE 195E
Plymouth, MN  55441
Tel:  763-951-7000
Toll Free:  1-800-225-5636
Fax:  763-951-7092
Email:  www.midwestfamily.com

**PRIV NTC  07/01**

## MIDWEST FAMILY MUTUAL INSURANCE COMPANY, INC
### AP 101 (01 00)
### EQUIPMENT BREAKDOWN COVERAGE ENDORSEMENT

**THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ THIS CAREFULLY**

*This endorsement modifies insurance provided under the Contractors Special Policy-Commercial Property Coverage Section, specifically form AP - 100 Ed. 1.0.*

### ADDITIONAL DEFINITIONS

1. **"Accident"** means direct physical loss as follows:
   a. mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force;
   b. loss caused by arcing or by electrical currents other than lightning;
   c. explosion of steam boilers, steam pipes, steam turbines or steam engines that "you" own or lease or that are operated under "your" control;
   d. loss to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment; or
   e. loss to hot water boilers or water heaters caused by any condition or occurrence within such equipment.

2. **"Computers"** mean:
   Covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.

3. **"Covered equipment":**
   a. means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.
   b. does not mean:
      i. structure, foundation, cabinet, compartment or air supported structure or building;
      ii. insulating or refractory material;
      iii. sewer piping, any underground vessels or piping, or any piping forming a part of a sprinkler system;
      iv. water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
      v. vehicle, dragline, excavation or construction equipment, or "mobile equipment"; or
      vi. equipment manufactured by you for sale.

4. **"Media"** means:
   All forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.

5. **"One accident"** means:
   If an initial "accident" causes other "accidents", they will all be considered "one accident". All "accidents" that are the result of the same event will be considered "one accident".

6. **"Perishable Goods"** means personal property preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.

7. **"Hazardous Substances"** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

### ADDITIONAL COVERAGES

The following additional coverages also apply to loss caused by or resulting from an "accident". These coverages do not

provide additional amounts of insurance.

1. **Expediting Expenses**-- With respect to "your" damaged covered property, "we" pay, up to $100,000, the reasonable extra cost to:
   a. expedite permanent repairs or replacement; and
   b. make temporary repairs.

2. **"Hazardous Substances"**-- "We" pay for the additional cost to repair or replace covered property because of contamination by "hazardous substances". This includes the additional expenses to clean up or dispose of such property.
   Additional costs mean those beyond what would have been required had no "hazardous substances" been involved. The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

3. **Computer Equipment**-- "We" pay for direct damage to "computers" caused by arcing or electrical currents, other than lightning.
   The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

4. **Perishable Goods**--
   a. "We" pay, up to $100,000 for "your" loss of "perishable goods" due to spoilage.
   b. "We also pay for "your" loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.
   c. "We" also pay any necessary expenses "you" incur to reduce the amount of loss under this coverage. "We" pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.
   d. If "you" are unable to replace the "perishable goods" before its anticipated sale, the amount of "our" payment will be determined

on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses "you" otherwise would have had. Otherwise "our" payment will be determined in accordance with the How Much We Pay section.

5. **CFC Refrigerants**-- "We" pay for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:
   a. Repair the damaged property and replace any lost CFC refrigerant;
   b. Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or
   c. Replace the system with one using a non-CFC refrigerant.
   Additional costs mean those beyond what would have been required had no CFC refrigerant been involved. The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

6. **Service Interruption**
   The insurance provided for loss of Income and Perishable Goods is extended to apply to loss caused by or resulting from an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom "you" have a contract to provide "you" with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

## PERILS INSURED AGAINST

1. "We" pay for loss caused by or resulting from an "accident" to "covered equipment".

2. Exclusions

a. Only as regards Equipment Breakdown Coverage, Perils Insured Against is amended as follows:
   i. Electrical Currents 2.e. and Explosion 2.f. do not apply;
   ii. **Animals--** exclusion 2.a. is deleted and replaced with the following:
   Animals-- "We" do not pay for loss caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds, or insects. "We" do pay for any resulting "accident";
   iii. **Wear/Breakdown--** Exclusion 2.s. is deleted and replaced with the following:
   Wear and Tear-- "We" do not pay for loss caused by wear and tear. "We" do pay for any resulting loss caused by an "accident".
b. The following additional exclusions also apply to Equipment Breakdown Coverage:
   i. **Tests--** "We" also do not pay under this Coverage for loss or damage caused by any of the following tests:
   a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or
   an insulation breakdown test of any type of electrical equipment;
   ii. **Perishable Goods--** With respect to Perishable Goods coverage, "we" also do not pay for loss or damage as a result of "your" failure to use all reasonable means to protect the "perishable goods" from damage following an "accident";
   iii. **Computer Equipment--** "We" also do not pay for loss or damage caused by or resulting from any defect, virus, loss of data or other situation within "software". But if loss or

damage from an "accident" results, "we" pay for that resulting loss or damage;
   iv. **Service Interruption--** With respect to Service Interruption coverage and Perishable Goods coverage, we will also not pay for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse.
   v. **Contamination or Deterioration--** "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault or weakness in covered property that causes it to damage or destroy itself. "We" do pay for any resulting "accident".
c. The following is added to Perils Insured Against, 1.i.1., Water: However, if electrical "covered equipment" requires drying out as a result of the above, "we" pay for the direct expenses of such drying out, subject to the applicable property damage "limit" and "deductible" shown in the Declarations.

**PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS**

Only as regards Equipment Breakdown Coverage, Paragraph 1.c., Boilers, under Property Not Covered Or Subject To Limitations, is deleted.

**HOW MUCH WE PAY**

1. The most we will pay for loss under this endorsement is the applicable

"limit" shown in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

2. **Deductibles--** "We" will not pay for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the applicable deductible shown in the Declarations. "We" will then pay the amount of loss or damage in excess of the applicable deductible or deductibles, subject to the applicable "limit" shown in the Declarations.

**CONDITIONS**

Only as regards Equipment Breakdown, the following are added to Conditions:

1. **Suspension--** When any "covered equipment" is discovered to be in, or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that equipment. "We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the Declarations, or at the address where the equipment is located. Once so suspended, "your" insurance can be reinstated only by written notice from "us". If "your" insurance is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.

2. **Jurisdictional Inspections--** If any property that is "covered equipment" under the Equipment Breakdown Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, "we" agree to perform such inspection on "your" behalf.

AAIS

> This endorsement changes the Commercial
> Liability Coverges provided by this policy
>
> - PLEASE READ THIS CAREFULLY-

AP-222
Ed 1.0

## PROPERTY DAMAGE LIABILITY DEDUCTIBLE

### SCHEDULE

( The information required below may be shown on a separate schedule or supplemental Declarations.)

Policy Number: _____ See Declarations _____

### DEDUCTIBLE

Deductible Amount

Property Damage Liability . . . . . . . . . . . . . . . . . (per occurrence )     $ _____

### APPLICATION OF ENDORSEMENT

(Enter here any limitations on the application of this endorsement.   If no limitation is entered,  the deductibles apply to all loss, however caused.)

The Commercial Liability Coverages section is amended as follows:

### HOW MUCH WE PAY

The following is added to the terms regarding "How Much We Pay":

Our obligation under Coverage L and N to pay damages on behalf of the Insured applies only to the amount of damages in excess of any deductible amounts stated in the schedule above as applicable to such coverages.   The limit of liability shown in this policy as being applicable to each occurrence for such coverages shall be reduced by the amount of such deductible.   The limit of liability shown in this policy as aggregate, for such coverages shall not be reduced by the application of such deductible amounts.

The deductible amounts stated in the schedule apply as follows:

Per Occurrence Basis - If the deductible is on a per occurrence basis, the deductible amount applies

under the Property Damage Liability Coverage, to all damages because of all bodily injury or property damage as the result of any one occurrence, regardless of the number of persons or organizations who sustain damages because of that occurrence.

The terms of the policy, including those with respect to:

1. our rights and duties with respect to the defense of suits; and

2. the insured's duties in the event of an occurrence

apply irrespective of the application of the deductible amount.

We may pay any part or all of the deductible amount to affect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

AP-222 Ed 1.0

AAIS

Copyright MCMXC, American Association of Insurance Services

## CONTRACTORS ADVANTAGE ENDORSEMENT

Included in the Contractors Advantage Endorsement:

All Property subject to $250 Deductible
Miscellaneous Tools $2000.00 maximum $500 each tool
$5000 Accounts Receivable
$1000 Mobile Equipment
$2000 Contents at Principal Residence
$2000 Medical Payments
$2000 Computer Coverage
Contractual Liability to policy limit
Additional $50,000 Fire Legal Liability

# CONTRACTORS ADVANTAGE ENDORSEMENT

## PLEASE READ THIS ENTIRE ENDORSEMENT CAREFULLY

## AGREEMENT

1. Return for **your** payment of the required premium, **we** provide the Inland Marine coverage described in this policy during the policy period subject to:

    1. Inland Marine General **Terms.**
    2. Inland Marine coverage **Terms.**
    3. Policy **terms** that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

## INLAND MARINE GENERAL TERMS

### DEFINITIONS

1. The words **you** and **your** mean the person, persons or organization named on the declarations.

2. The words **we, us** and **our** mean the company providing this insurance.

3. **Insured** means **you**. With respect to covered property that is not used for **business,** the word **insured** also means:

    a. **your** spouse;
    b. **your** relatives if residents of **your** household;
    c. persons under the age of 21 in **your** care or the care of **your** resident relatives; or **your** legal representative if **you** die while insured by this policy. (This person is an **insured** only for the covered property.)

4. **Business** means a trade, profession or occupation whether full or part time. This includes:

    a. the rental of property to others; and
    b. farming.

5. **Described premises** means that part of the building and grounds, which **you** occupy at the location shown.

6. **Terms** means the conditions, definitions, exclusion, limitations and provisions used in this policy.

### PERILS EXCLUDED

**We** do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. **We** do not pay for a loss that results from:

1. wear and tear to covered property.

2. gradual deterioration of covered property.

3. A fault or weakness that is intrinsic to the property, which causes it to break, spoil, become defective or destroy itself.

4. Insects or vermin damage to covered property.

5. delay, loss of market, loss of use, or **business** interruption.

6. Obsolescence or depreciation of covered property.

7. war. This means:

    a. declared war, undeclared war, civil war, insurrection, rebellion or revolution;
    b. a warlike act by a military force or by military personnel;
    c. the destruction, seizure or use of the property for a military purpose; or
    d. the discharge of a nuclear weapon even if it is accidental.

8. civil authority. This means:

    a. seizure or destruction under quarantine or customs regulations;
    b. confiscation or destruction by order of a government or public authority; or
    c. risks of contraband or illegal transportation or trade.

9. nuclear hazard. This means nuclear reaction, nuclear radiation or radioactive contamination:

    a. whether controlled or uncontrolled; or

    b. caused by, contributed to or aggravated by a peril covered by this policy. A loss caused by nuclear hazard will not be considered to be a loss caused by fire, explosion or smoke. If fire is covered by this policy, **we** do cover the loss caused by a fire that results from the nuclear hazard.

10. other perils that are not covered. These are listed for each coverage.

**We** do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1. the act or decision of a person, group, organization or governmental body. This includes the failure to act or decide.

2. a fault, defect or error, negligent or not, in:

    a. planning, zoning, surveying, siting, grading, compacting, land use, or development of property.

    b. the design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property. This includes the materials needed to construct, remodel or repair the property.

    c. maintenance of property.

    These apply whether or not the property is covered by this policy.

3. a condition of the weather.

4. the collapse of a building or structure.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Protect the Property.** The **insured** must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2. **Notice.** The **insured** must promptly notify **us** or **our** agent, in writing if requested.

3. **Notice to Police.** The **insured** must promptly notify the police if the loss results from a violation of the law.

4. **Proof of Loss.** The **insured** must send **us** a statement of loss, under oath if requested, within 90 days after the loss occurs. The following information must be included:

    a. the date, time, place and details of the loss.

    b. other insurance that may cover the loss.

    c. **your** interest and the interest of all others in the property involved in the loss. This includes all mortgages and liens.

    d. changes in the title of the covered property during the policy period.

    e. detailed estimates for the repair or replacement of the covered property.

    f. an inventory of lost, damaged and all remaining covered property. This must show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss. Copies of all bills, receipts and related documents that substantiate the inventory must be attached.

5. **Additional Duties.** As often as we may reasonably request, an **insured** must:

    a. submit to an examination under oath.

    b. assist **us** in obtaining the attendance of employees for examination under oath.

    c. exhibit damaged and undamaged property.

    d. produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6. **Cooperation.** The **insured** must cooperate with **us** in performing all acts that are required by this Inland Marine coverage.

7. **Volunteer Payments.** The **insured** may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the **insured's** own expense.

8. **Abandonment.** The **insured** may not abandon the property to **us** without **our** written consent.

## HOW MUCH WE PAY

1. **Actual Cash Value.** Actual cash value includes a deduction for depreciation, however caused.

2. **Valuation.** Valuation is based on the actual cash value of the property at the time of loss

3. **The Amount We Pay.** The smallest of the amounts shown below is the most that **we** will pay for a loss:

    a.    the amount determined under "Valuation."
    b.    the cost to repair, replace or rebuild the property with material of like kind and quality.
    c.    the amount of **your** interest in the property.
    d.    the coverage amount shown.

This amount will be adjusted by the deductible amount coinsurance penalty or other limitation which; may apply.

4.    **Loss To Pairs Or Sets.** If there is a loss to an item that is part of a pair or set, at **your** option **we** will pay the full actual cash value up to the coverage amount shown for the pair or set. **You** will give **us** the remainder of the pair or set. If **you** do not choose this option, **we** will pay only for a reasonable part of the actual cash value of the pair or set.

5.    **Loss To Parts.** If there is a loss to a part of an item that consists of several parts, **we** will pay only for the loss to that part. A loss to a part is not considered to be a loss to the whole item.

6.    **Insurance Under More Than One Policy.** If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this inland Marine coverage, **we** will pay for the loss only after the full amount from the other insurance has been paid.

7.    **Insurance Under More Than One Coverage.** If more than, one coverage applies to the same loss **we** will pay no more than the actual amount of the loss.

8.    **Losses Paid By Others.** **We** will not pay for that part of a loss that has been paid by someone else.

9.    **Restoring the Coverage Amount.** The payment of the claim will not reduce the coverage amount. If **we** pay a loss for items that are separately listed and the coverage amount that applies to these items is reduced at **your** request, **we** will return the unearned premium for these items to **you.**

## LOSS PAYMENT

1.    **Our Options. We** may:

    a.    pay the loss in money; or
    b.    repair, replace or rebuild the property. **We** must give the **insured** notice of **our** intent to do so within 30 days after **we** have received a satisfactory proof of loss.

**We** may take all or a part of the damaged property at the agreed or appraised value. Property that **we** have paid for or replaced will become **our** property.

2.    **Your Property. We** will adjust all losses with **you.** Payment will be made to **you** unless a loss payee is named with respect to this Inland Marine coverage.

3.    **Property of Others.** Loss to property of others may be adjusted with **you. We** reserve the right to adjust the loss with the owner. **Our** payment to the owner will satisfy **our** obligation to **you** for loss to this property. At **our** option, without cost to **you, we** may choose to defend **you** from suits which; result from a covered loss to the property of others.

4.    **When We Pay. We** will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1.    **Subrogation.** If **we** pay for a loss, **we** may require the **insured** to assign to **us** the right of recovery against others. **We** will not pay for a loss if the **insured** impairs this right to recover. The **insured's** right to recover from others may be waived in writing before a loss occurs.

2.    **Loan Receipts.** When **we** believe that a loss can be recovered from others:

    a.    **we** may make an advance payment to **you** in the form of a loan.
    b.    at **our** expense, **we** will be allowed to bring suit in the **insured's** name against those who are responsible for the loss.
    c.    the loan will be repaid from the amount recovered.

3.    **Recoveries.** The **insured** must notify **us** or **we** must notify the **insured** promptly if either receives a recovery for a loss which; **we** have paid. The costs that are incurred by either party in making the recovery are to be reimbursed first. **We** are entitled to the surplus up to the amount that **we** have paid for the loss. The **insured** may then keep any excess.

## DISAGREEMENTS

1.    **Appraisal.** If **you** and **we** do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal.

    Copyright 1984, 1985, 1987 AAIS    

If either party makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court in the state where the appraisal is pending to select an umpire

The appraisers will determine:

a.   the amount of the loss;
b.   the actual cash value of the property; and
c.   the cost to repair or replace the property.

Each amount will be stated separately.

If the appraiser submit a written report of an agreement to **us,** the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by **you** and **us.**

2.   **Suit Against Us.** No suit to recover for a loss may be brought against **us** unless:

a.   all the **terms** of this Inland Marine coverage have been complied with; and
b.   the suit is commenced within one year after the loss.

## OTHER POLICY CONDITIONS

1.   **Conformity With Statutes.** The **terms** of this Inland Marine coverage in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2.   **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), **we** may substitute or **we** may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3.   **Liberalization.** If a revision of a form or endorsement which would broaden coverage without an additional premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4.   **Misrepresentation, Concealment or Fraud.** This Inland Marine coverage is void if before or after a loss:

a.   the **insured** has concealed or misrepresented:
(1)   a material factor or circumstance that relates to this insurance or the subject thereof; or
(2)   an **insured's** interest herein.

b.   there has been fraud or false swearing by an **insured** with regard to a matter that relates to this insurance or the subject thereof.

5.   **No Benefit To Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6.   **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting **terms.** If it is cancelled, **you** must report the required amounts as of the cancellation date.

## CONTRACTUAL LIABILITY COVERAGE
### (Written or Oral Contracts or Agreements)

The Commercial Liability Coverage is amended as follows:

### DEFINITIONS

**Incidental contract** is extended to include any part of a written or oral contract or agreement relating to the conduct of **your** business under which **you** assume tort liability of another to pay damages because of **bodily injury** or **property damage.** Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **incidental contract** does not include that part of any contract or agreement:

1.  that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

    a.  preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
    b.  giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

2.  under which the **insured** , if an architect, engineer or surveyor assumes liability for injury or damages arising out of the **insured's** rendering or failing to render professional services, including those listed in 1.a. above, and supervisory, inspection or engineering services; or

3.  that indemnifies any person or organization for damage by fire to premises rented or loaned to **you.**

### EXCLUSIONS THAT APPLY TO ALL COVERAGES

The following exception is added to exclusion 6., Exclusions That Apply To All Coverages.  This exclusion does not apply to liability assumed under any **incidental contract** for the ownership, maintenance or use of aircraft or watercraft.

## SCHEDULED PROPERTY COVERAGE
### (This Inland Marine coverage is subject to the terms shown below.  The Inland Marine General Terms also apply.)

(The information required below may be shown on a separate schedule or supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy.  A coverage amount must be shown for each item.  This is the most that we will pay for a loss to that item.

| Described Item | Coverage Amount |
|---|---|
| 1. | $_____ |
| 2. | $_____ |
| 3. | $_____ |
| 4.   FOR FURTHER DESCRIPTION, | $_____ |
| 5.   LIMITS AND AMOUNTS SEE | $_____ |
| 6.   DECLARATION PAGE. | $_____ |
| 7. | $_____ |
| 8. | $_____ |
| 9. | $_____ |
| 10. | $_____ |

### DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.

$_____

### COINSURANCE

**You** must maintain a minimum coverage amount for each described item.  This minimum coverage amount is the full actual cash value of the described item.  If the coverage amount at the time of loss is less than the minimum coverage amount, we will pay only a part of a loss.  Our part of the loss will be determined by dividing the coverage amount by the minimum coverage amount.  This percent will be applied to the final adjusted loss to determine the amount that we will pay.

  Copyright 1984, 1985, 1987 AAIS

## PROPERTY COVERED

We cover only those described items for which a coverage amount is shown.  We also will cover up to a total of $2000 of undescribed owned tools or undescribed employees tools at your request.

## PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded.  The loss must be due to an external cause.

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same as, or after the excluded peril.  We do not pay for a loss that results from:

1.  a dishonest or illegal act, alone or in collusion with another, by:
    a.  you;
    b.  others who have an interest in the property;
    c.  others to whom you entrust the property; or
    d.  the employees or agents of a., b. or c., whether or not they are at work.

    We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.  swindling, fraud, trick or false pretense.

3.  the acceptance of:
    a.  counterfeit money or fraudulent post office or express money orders; or
    b.  checks or promissory notes, which are not paid upon presentation.

4.  mysterious disappearance.

5.  any cause when the only proof that a loss occurred is an inventory shortage.

6.  breakage of glass or similar fragile items.  We do cover breakage if it is caused by fire; lightning, windstorm, hail, earthquake, flood, smoke, explosion, aircraft, spacecraft, self-propelled missiles, and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of building.

7.  a process to repair, adjust, service or maintain the covered property.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

8.  mechanical breakdown or failure.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

9.  Electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

There are other perils that are not covered.  These are listed above in the Inland Marine General Terms section.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada, or Puerto Rico.  This includes property that is in transit, except to or from Alaska, Hawaii or Puerto Rico.

# MINI/MICRO COMPUTER COVERAGE

(This Inland Marine coverage is subject to the terms shown below.  The Inland Marine General Terms also applies.)

(The information required below may be shown on a separate schedule or supplemental Declarations).

**Coverage A – Equipment**

                                                         **Coverage Amount**

1.   For **equipment** on the **described premises** at:
     a.                                                                    $_____
     b.  $_____
     c.  $_____
     d.  $_____

2.  For **equipment** in transit or otherwise away from the **described premises:**
     This coverage applies only to **your** legal liability.     $_____

**Coverage B – Media**

1.   For **media** on the **described premises** at:
     a.  $_____
     b.  $_____
     c.  $_____
     d.  $_____

2.  For **media** in transit or otherwise away from the **described premises:**
     This coverage applies only to **your** legal liability.     $_____

**Coverage C – Extra Expense**

1.   For **extra expense** on the **described premises** at:
     a.  $_____
     b.  $_____
     c.  $_____
     d.  $_____

2.  At each **described premises** the following percent of the coverage amounts shown above is the most that **we** will pay for each of the following parts of the **restoration period.**
     a.  $_____
     b.  $_____
     c.  $_____
     d.  $_____

## DEDUCTIBLE

The following deductible amounts will apply to each loss after all other adjustments have been made.
If a loss involves more than one coverage, the deductible for each coverage will apply.

1.   Coverage A – Equipment     $_____
2.   Coverage B – Media     $_____
3.   Coverage C – Extra Expense     $_____

## COINSURANCE

**You** must maintain a minimum coverage amount.  This minimum coverage amount is _____percent of the full actual cash value of all covered property at all **described premises.**  If the coverage amount at the time of loss is less than the minimum coverage amount, **we** will pay only a part of a loss.  **Our** part of the loss will be determined by dividing the coverage amount by the minimum coverage amount.  This percent will be applied to the final adjusted loss to determine the amount that **we** will pay.

If the property is covered for its replacement cost, the minimum coverage amount is the stated percent of its full replacement cost.

This clause applies only to Coverage A.

## DEFINITIONS

In addition to the definitions in the Inland Marine General Terms, the following definitions will apply:

1.   **Data** is a fact; concept or instruction that is converted into a form that can be used in a **data** processing operation.  It includes programs.
2.   **Equipment** is a network of machine components that accepts information, processes it according to plan and produces a desired result.

3. **Extra Expense** is the necessary additional expense that **you** incur following a loss to **equipment** or **media** caused by a covered peril, in order to continue, as nearly as possible, the normal operations of **your data** processing system. This is the amount in excess of **your** normal operating expenses.

4. **Media** is the material on which **data** is recorded, such as magnetic tapes, disk packs, drums, paper tapes, cards and programs. This includes the **data** stored on the **media**.

5. **Period of Restoration** is the time that it takes for **you** to resume normal **data** processing operations following a covered loss to the **equipment** or **media**.

## PROPERTY COVERED

Coverage A, B or C applies only if a coverage amount is shown.

**Coverage A – We** cover **your equipment. We** also cover **equipment** that belongs to others and for which **you** are legally liable.

If **you** rent or lease **equipment** from others, **you** must file a copy of the agreement with **us. We** cover only **your** legal liability for the **equipment** stated in the agreement unless a loss is caused by a peril that is excluded. **You** and **we** may agree on broader coverage for leased **equipment.**

**Coverage B – We** cover **your media. We** also cover **media** that belongs to others and for which **you** are legally liable.

If **you** rent or lease **media** from others, **you** must file a copy of the agreement with **us. We** cover only **your** legal liability for the **media** stated in the agreement unless a loss is caused by a peril that is excluded.

**Coverage C –** In the event of a loss to **your equipment** or **media** caused by a peril covered by this form, **we** cover **your extra expense** loss for the **restoration period.** This begins with the date of loss to the covered **equipment** or **media** and is not limited by the expiration date of this coverage. **You** and **we** may agree on broader coverage for leased **media.**

**You** must do all that is reasonable to reduce a loss and to resume normal **data** processing operations as soon as possible.

## EXTENSIONS OF COVERAGE

The extensions of coverage do not increase the coverage amounts.

1. **Newly Acquired Property – We** cover **equipment** and **media** acquired during the policy period for a period up to 30 days after it is acquired. **You** must provide **us** with a complete description of each item within this 30-day period, and pay the additional premium. **We** cover these items for their actual cash value.

   The most that **we** will pay for all such items will be the smaller of the following: 20 percent of the coverage amount shown for the type of property acquired, or $50,000.

   This coverage will end at the earliest of the following:

   a.  when the newly acquired items are reported to **us;**
   b.  the end of the 30-day period; or
   c.  the expiration date of the policy.

2. **Removal –** Coverage A and B also apply while the covered property is removed from the **described premises** because it is endangered by a covered peril. This applies while the property is moved to, stored in and returned from a safe place. **You** must give **us** notice within 10 days after it is first moved.

## PROPERTY AND COVERAGES EXCLUDED

**We** do not cover:

1. **equipment** or **media** that is sold on an installment plan once it leaves **your** custody.

2. **equipment** or **media** that **you** rent to others. **We** do cover this property while it is on a **described premises.**

3. accounts, bills, deed, evidence of debt, valuable papers or records, manuscripts and other documents. **We** do cover these items once they have been converted to **data** form.

4. **media** that cannot be replaced.

5. **Program** support documentation, flow charts, record formats or narrative descriptions. **We** do cover this property if it has been converted to **data** form.

6.  **We** do not cover **extra expense** that results from the items listed above.

---

### PERILS COVERED

**We** cover direct physical loss to covered property unless the loss is caused by a peril that is excluded.  The loss must be due to an external cause.

### PERILS EXCLUDED

**We** do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act or produce the loss before, at the same time as, or after the excluded peril.

**Coverages A, B and C –** The following exclusions apply to Coverages A, B and C.  **We** do not pay for loss that results from:

1.  a dishonest or illegal act, alone or in collusion with another, by:

    a.  **you;**
    b.  others who have an interest in the property;
    c.  others to whom **you** entrust the property; or
    d.  the employees or agents of a., b. or c., whether or not they are at work.

    **We** do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.  corrosion or rust.

3.  dampness of atmosphere.

4.  Extremes of temperature.

5.  A processing operation of the data processing system.

6.  A process to repair, adjust, service or maintain the **equipment** or **media**.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

7.  Mechanical or machinery breakdown or failure.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

8.  Electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

9.  Earth movement.  This includes:

    a.  earthquake;
    b.  sinkhole;
    c.  landslide or mudflow; and
    d.  the rising, sinking or shifting of the earth.

    If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only, caused by the earth movement, if the covered property is away from the **described premises.**

10. volcanic activity.  This means the formation, eruption or effusion of a volcano.  It includes ash, cinders, dust, lava, steam and other products that result from volcanic activity.  The formation, eruption or effusion of a volcano is not an explosion.

    If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only caused by volcanic activity if the property is away from the **described premises.**

11. water.  This means:

    a.  flood, surface, water, waves, tidal water or the overflow of a body of water.  This includes spray that results from these, whether driven by wind or not.
    b.  Water that backs up through a sewer or drain.
    c.  Water below the surface of the ground.  This includes water that exerts pressure on or flows, seeps or leaks into a building, sidewalk, foundation or other structure or through a door, window or other opening.

    If a **fire** or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only, caused by water, if the property is away from a **described premises.**

---

12. a fault, defect, error or omission in a plan, blueprint, design or specification.

13. a fault or defect in workmanship, installation or material.

14. A change in the electrical power supply to the equipment that occurs away from a **described premises.** This includes interruption, power surge, reduced voltage, low pressure, black- or brownouts and other interruptions of normal service.

**Coverages B and C –** The following additional exclusions apply to Coverages B and C. **We** do not pay for loss that results from:

1. electrical or magnetic injury, disturbance or erasure of electronic recordings. **We** do cover the loss caused by the fire or explosion.

2. breakdown or malfunction of the **equipment** while the **media** is being run through the system. If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

3. An error or omission in programming or giving improper instructions.

**Coverage C –** The following additional exclusions apply to Coverage C. **We** do not pay for loss that results from:

1. the enforcement of a code, ordinance or law that regulates the use, construction, repair or demolition of covered property or a building or structure.

2. the suspension, lapse or cancellation of a lease, license, contract or order.

3. Strike, riot or civil commotion.

There are other perils that are not covered. These are listed in the Inland Marine General Terms section of this endorsement. They apply to Coverages A, B and C.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the **equipment** or **media** is in the United States, Canada or Puerto Rico. This includes **equipment** or **media** that is in transit except to or from Alaska, Hawaii or Puerto Rico.

## AMOUNT WE PAY

This replaces the "Amount We Pay" provision in the Inland Marine General Terms section. The smallest of the amounts shown below is the most that **we** will pay for a loss:

1. **Equipment** and **Media –**

   a. the amount determined under "Valuation."
   b. the cost to repair, replace or rebuild the property with material of like kind and quality. For **media,** this includes the cost to reproduce the **media** if it is actually reproduced. If not reproduced, **we** will pay only the value of blank **media.**
   c. the coverage amounts shown.

2. **Extra Expense –**

   a. the percent shown for each part of the **restoration period.**
   b. the actual total **extra expense** that results from a covered loss.
   c. the coverage amounts shown.

## PREMISES PROTECTION

**You** must maintain in proper working order the protective devices that were in operation on the effective date of this coverage.

AAIS                    **PLEASE READ THIS ENTIRE POLICY CAREFULLY**                    IM-100
                           **IT IS A LEGAL CONTRACT**                          (Ed. 6-84)

# AGREEMENT

In return for **your** payment of the required premium, we provide the Inland Marine coverage described in this policy during the policy period subject to the:

1. Inland Marine General **Terms.**
2. Inland Marine coverage **terms.**
3. policy **terms** that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

## INLAND MARINE GENERAL TERMS

### DEFINITIONS

1. The words **you** and **your** mean the person, persons or organization named on the declarations.

2. The words **we, us** and **our** mean the company providing this insurance.

3. **Insured means you.** With respect to covered property that is not used for **business,** the word **insured** also means:

   a. **your** spouse;

   b. **your** relatives if residents of **your** household;

   c. persons under the age of 21 in **your** care or the care of **your** resident relatives; or

   d. **your** legal representative if **you** die while insured by this policy. (This person is an **insured** only for the covered property.)

4. **Business** means a trade, profession or occupation whether full or part time. This includes:

   a. the rental of property to others; and

   b. farming.

5. **Described premises** means that part of the building and grounds which **you** occupy at the location shown.

6. **Terms** means the conditions, definitions, exclusions, limitations and provisions used in this policy.

### PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. We do not pay for a loss that results from:

1. wear and tear to covered property.

2. gradual deterioration of covered property.

3. a fault or weakness that is intrinsic to the property which causes it to break, spoil, become defective or destroy itself.

4. insects or vermin damage to covered property.

5. delay, loss of market, loss of use, or **business** interruption.

6. obsolescence or depreciation of covered property.

7. war. This means:

   a. declared war, undeclared war, civil war, insurrection, rebellion or revolution;

   b. a warlike act by a military force or by military personnel;

   c. the destruction, seizure or use of the property for a military purpose; or

   d. the discharge of a nuclear weapon even if it is accidental.

8. civil authority. This means:

   a. seizure or destruction under quarantine or customs regulations;

   b. confiscation or destruction by order of a government or public authority; or

   c. risks of contraband or illegal transportation or trade.

9. nuclear hazard. This means nuclear reaction, nuclear radiation or radioactive contamination:

   a. whether controlled or uncontrolled; or

   b. caused by, contributed to or aggravated by a peril covered by this policy. A loss caused by nuclear hazard will not be considered to be a loss caused by fire, explosion or smoke. If fire is covered by this policy, we do cover the loss caused by a fire that results from the nuclear hazard.

10. other perils that are not covered. These are listed for each coverage.

We do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1. the act or decision of a person, group, organization or governmental body. This includes the failure to act or decide.

2. a fault, defect or error, negligent or not, in:

    a. planning, zoning, surveying, siting, grading, compacting, land use, or development of property.

    b. the design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property. This includes the materials needed to construct, remodel or repair the property.

    c. maintenance of property.

    These apply whether or not the property is covered by this policy.

3. a condition of the weather.

4. the collapse of a building or structure.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Protect the Property.** The **insured** must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2. **Notice.** The **insured** must promptly notify **us** or **our** agent, in writing if requested.

3. **Notice to Police.** The **insured** must promptly notify the police if the loss results from a violation of the law.

4. **Proof of Loss.** The **insured** must send **us** a statement of loss, under oath if requested, within 90 days after the loss occurs. The following information must be included:

    a. the date, time, place and details of the loss.

    b. other insurance that may cover the loss.

    c. **your** interest and the interest of all others in the property involved in the loss. This includes all mortgages and liens.

    d. changes in the title to the covered property during the policy period.

    e. detailed estimates for the repair or replacement of the covered property.

    f. an inventory of lost, damaged and all remaining covered property. This must show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss. Copies of all bills, receipts and related documents that substantiate the inventory must be attached.

5. **Additional Duties.** As often as we may reasonably request, an **insured** must:

    a. submit to an examination under oath.

    b. assist **us** in obtaining the attendance of employees for examination under oath.

    c. exhibit damaged and undamaged property.

    d. produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6. **Cooperation.** The **insured** must cooperate with us in performing all acts that are required by this Inland Marine coverage.

7. **Volunteer Payments.** The **insured** may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the **insured's** own expense.

8. **Abandonment.** The **insured** may not abandon the property to us without our written consent.

## HOW MUCH WE PAY

1. **Actual Cash Value.** Actual cash value includes a deduction for depreciation, however caused.

2. **Valuation.** Valuation is based on the actual cash value of the property at the time of loss.

3. **The Amount We Pay.** The smallest of the amounts shown below is the most that we will pay for a loss:

    a. the amount determined under "Valuation."

    b. the cost to repair, replace or rebuild the property with material of like kind and quality.

    c. the amount of **your** interest in the property.

    d. the coverage amount shown.

    This amount will be adjusted by the deductible amount, coinsurance penalty or other limitation which may apply.

4. **Loss To Pairs Or Sets.** If there is a loss to an item that is part of a pair or set, at **your** option we will pay the full actual cash value up to the coverage amount shown for the pair or set. **You** will give **us** the remainder of the pair or set. If you do not choose this option, we will pay only for a reasonable part of the actual cash value of the pair or set.

5. **Loss To Parts.** If there is a loss to a part of an item that consists of several parts, we will pay only for the loss to that part. A loss to a part is not considered to be a loss to the whole item.

6. **Insurance Under More Than One Policy.** If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this Inland Marine coverage, we will pay for the loss only after the full amount from the other insurance has been paid.

7. **Insurance Under More Than One Coverage.** If more than one coverage applies to the same loss, we will pay no more than the actual amount of the loss.

8. **Losses Paid By Others.** We will not pay for that part of a loss that has been paid by someone else.

9. **Restoring the Coverage Amount.** The payment of a claim will not reduce the coverage amount. If we pay a loss for

items that are separately listed and the coverage amount that applies to these items is reduced at your request, we will return the unearned premium for these items to you.

## LOSS PAYMENT

1. **Our Options.** We may:

   a. pay the loss in money ; or

   b. repair, replace or rebuild the property. We must give the insured notice of our intent to do so within 30 days after we have received a satisfactory proof of loss.

   We may take all or a part of the damaged property at the agreed or appraised value. Property that we have paid for or replaced will become our property.

2. **Your Property.** We will adjust all losses with you. Payment will be made to you unless a loss payee is named with respect to this Inland Marine coverage.

3. **Property of Others.** Loss to property of others may be adjusted with you. We reserve the right to adjust the loss with the owner. Our payment to the owner will satisfy our obligation to you for loss to this property. At our option, without cost to you, we may choose to defend you from suits which result from a covered loss to the property of others.

4. **When We Pay.** We will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1. **Subrogation.** If we pay for a loss, we may require the insured to assign to us the right of recovery against others. We will not pay for a loss if the insured impairs this right to recover. The insured's right to recover from others may be waived in writing before a loss occurs.

2. **Loan Receipts.** When we believe that a loss can be recovered from others:

   a. we may make an advance payment to you in the form of a loan.

   b. at our expense, we will be allowed to bring suit in the insured's name against those who are responsible for the loss.

   c. the loan will be repaid from the amount recovered.

3. **Recoveries.** The insured must notify us or we must notify the insured promptly if either receives a recovery for a loss which we have paid. The costs that are incurred by either party in making the recovery are to be reimbursed first. We are entitled to the surplus up to the

amount that we have paid for the loss. The insured may then keep any excess.

## DISAGREEMENTS

2. **Appraisal.** If you and we do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal.

   If either party makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, you or we can ask a judge of a court in the state where the appraisal is pending to select an umpire

   The appraisers will determine:

   a. the amount of the loss;

   b. the actual cash value of the property; and

   c. the cost to repair or replace the property.

   Each amount will be stated separately.

   If the appraisers submit a written report of an agreement to us, the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

   Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by you and us .

2. **Suit Against Us.** No suit to recover for a loss may be brought against us unless:

   a. all the terms of this Inland Marine coverage have been complied with; and

   b. the suit is commenced within one year after the loss.

## OTHER POLICY CONDITIONS

1. **Conformity With Statutes.** The terms of this Inland Marine coverage in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2. **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), we may substitute or we may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3. **Liberalization.** If a revision of a form or endorsement which would broaden coverage without an additional

IM-100
AAIS

—3—

© Copyright 1984

premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4. **Misrepresentation, Concealment or Fraud.** This Inland Marine coverage is void if before or after a loss:

   a. the **insured** has concealed or misrepresented:

   1) a material fact or circumstance that relates to this insurance or the subject thereof; or

   2) an **insured's** interest herein.

   b. there has been fraud or false swearing by an **insured** with regard to a matter that relates to this insurance or the subject thereof.

5. **No Benefit To Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6. **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting terms. If it is cancelled, **you** must report the required amounts as of the cancellation date.

IM-100
AAIS

—4—

© Copyright 1984

AAIS

IM-810
(Ed. 8-85)

This Inland Marine coverage is subject to the terms shown below
The Inland Marine General Terms also apply.

- PLEASE READ THIS CAREFULLY -

CONTRACTORS EQUIPMENT COVERAGE

(The information required below may be shown on a separate schedule of supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy.  A coverage
amount must be shown for each item.  This is the most that we will pay for a loss to that item.

| Described Item | Manufacturer | Serial Number | Coverage Amount |
|---|---|---|---|
| 1. | | | $_____ |
| 2. | | | $_____ |
| 3. | | | $_____ |
| 4. | | | $_____ |
| 5. | FOR FURTHER DESCRIPTION | | $_____ |
| 6. | LIMITS AND AMOUNTS SEE | | $_____ |
| | DECLARATION PAGE | | |
| 7. | | | $_____ |
| 8. | | | $_____ |
| 9. | | | $_____ |
| 10. | | | $_____ |

DEDUCTIBLE

The following deductible amount will apply separately to each item involved in each loss after all other
adjustments have been made.                                        $_____

COINSURANCE

You must maintain a minimum coverage amount for each described item.  This minimum coverage amount
is the full actual cash value of the described item.  If the coverage amount at the time of loss is less than the
minimum coverage amount, we will pay only a part of a loss.  Our part of the loss will be determined by
dividing the coverage amount by the minimum coverage amount.  This percentage will be applied to the
final adjusted loss to determine the amount that we will pay.

CEG-20

## PROPERTY COVERED

We cover only those described items for which a coverage amount is shown. It is a condition that at the time this coverage is effective all described items are in sound condition.

## EXTENSION OF COVERAGE

We cover contractor's equipment acquired during the policy period for up to 30 days after each item is acquired. You must provide us with a complete description of each item within this 30-day period and pay the additional premium.

We cover these items for their actual cash value. The most that we will pay for all such items will be the smaller of the following:

1.   25% of the total coverage amount for all described items; or
2.   $50,000.

Coverage for each item acquired will end at the earliest of the following:

1.   when the newly acquired item is reported to us.
2.   the end of the reporting period shown above.
3.   the expiration date of this policy.

## PROPERTY EXCLUDED

We do not cover:

1.   property that is not in sound condition when this coverage is effective.
2.   property that you rent to others.
3.   property that is waterborne. We do cover property that is in transit on a regular ferry, lighter or carfloat.
4.   property that is underground, in caissons or underwater.
5.   property that is or will be a permanent part of a building or structure.
6.   plans, blueprints, designs or specifications.
7.   self-propelled vehicles that are designed for highway use.
8.   aircraft.
9.   watercraft.
10.  tires and tubes mounted on vehicles. We do cover tires and tubes mounted on covered vehicles, if:
     a.   the loss is caused by fire, windstorm, theft or vandalism.
     b.   the loss is caused by a covered peril which also damages the vehicle.

## PERILS COVERED

1.   Except for booms that exceed 25 feet in length, we cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

2.   For booms that exceed 25 feet in length, we cover direct physical loss to this property caused only by fire; lightning; windstorm; hail; earthquake; flood; smoke; explosion; aircraft, spacecraft, self-propelled missiles and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike; riot; civil commotion; vandalism; theft; attempted theft; sprinkler leakage; collapse of buildings and the upset or overturn of the unit of which the boom is a part, or the collision of the unit with another object.

CEG-21

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded peril.  We do not pay for a loss that results from:

1.  a dishonest or illegal act, alone or in collusion with another, by:

    a.   you;
    b.   others who have an interest in the property;
    c.   others to whom you entrust the property; or
    d.   the employees or agents of a., b. or c., whether or not they are at work.

    We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.  mysterious disappearance.

3.  any cause when the only proof that a loss occurred is an inventory shortage.

4.  dampness of atmosphere.

5.  extremes of temperature.

6.  corrosion or rust.

7.  pitting.

8.  mechanical breakdown or failure.  If a fire or explosion results, we do cover the loss cause by the fire or explosion.

9.  electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

10. a process to repair, adjust, service or maintain the covered property.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

11. the weight of a load when it exceeds the designed capacity of a machine to lift or support the load from any position.

There are other perils that are not covered.  These are listed in the Inland Marine General Terms.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada or Puerto Rico.  This includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

CEG-22

AAIS

This Inland Marine coverage  is subject to the terms shown below.
The Inland Marine General Terms also apply.

IM-827
(Ed. 5-86)

- PLEASE READ THIS CAREFULLY -
## INSTALLATION COVERAGE
### REPORTING FORM

(The information required below may be shown on a separate schedule or supplemental Declarations.)

For each location or situation described below, the coverage amount shown is the most that we will pay for a loss.

**Coverage Amount**

1. For each jobsite location.    $ _____

2. For property in transit.    $ _____

3. For property at a temporary storage location.    $ _____

4. For property at all jobsite locations.    $ _____

### DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.    $ _____

### COINSURANCE

You must report to us the full actual cash value of all covered property at each jobsite where work is in progress.  If the full actual cash value is not reported, we will pay only a part of a loss.  Our part of the loss will be determined by dividing the amount shown in the last report received by the full actual cash value of the property on the date for which the report was made.  This percent will be applied to the final adjusted loss to determine the amount that we will pay.

### DEFINITIONS

In addition to the definitions in the Inland Marine General Terms, the following definition applies:

**Temporary Storage Location** - This is a location where property that is to be a permanent part of a completed project is stored while waiting to be delivered to a jobsite where work is in progress or will begin in 30 days.

## PROPERTY COVERED

We cover all materials, supplies, equipment, machinery and fixtures that are owned by you, or for which you are legally liable, that are to be installed by you or at your direction while the property is:

1. on a covered jobsite.

2. in transit.

3. at a temporary storage location.

Coverage for this property begins when the property is at your risk which begins on or after the effective date of this coverage. This coverage will end at the earliest of the following:

4. when the owner or buyer accepts the property.

5. when building materials, equipment or supplies have been installed and have become a permanent part of a building or structure.

6. when a jobsite is abandoned with no intention to complete the installation work.

7. 30 days after installation work at a jobsite is completed.

8. after your interest in a jobsite ends.

9. on the expiration date of the policy, or when this policy is cancelled.

## WHAT IS NOT COVERED

We do not cover:

1. an existing building or structure to which an addition,

© Copyright 1986 AAIS

alteration, improvement or repair is being made.

2. property stored at a permanent warehouse or storage yard that you own.

3. money. This means currency, coins, bank notes, money orders, traveler's checks, bullion and similar items.

4. securities. These are any negotiable or nonnegotiable agreements in writing that have value. They include revenue stamps, other stamps in current use, tokens and tickets.

5. accounts, bills, deeds or an evidence of debt.

6. a plan, blueprint, design or specification.

7. self-propelled vehicles that are designed for highway use.

8. aircraft.

9. watercraft.

10. all animals, including birds and fish.

11. trees, grass, sod, shrubbery or plants.

12. machinery, tools, equipment, supplies or similar property that do not become a permanent part of the installation at a covered jobsite. This includes contractors' equipment and other tools that belong to a contractor or subcontractor, but does not include scaffolds, construction forms or temporary structures.

## PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded peril. We do not pay for a loss that results from:

1. a dishonest or illegal act, alone or in collusion with another, by:

   a. you;

   b. others who have an interest in the property;

   c. others to whom you entrust the property; or

   d. the employees or agents of a., b., or c., whether or not they are at work.

We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2. swindling, fraud, trick or false pretense.

3. the acceptance of:

   a. conterfeit money or fraudulent post office or express money orders; or

   b. checks or promissory notes that are not paid upon presentation.

4. mysterious disappearance.

5. any cause when the only proof that a loss occurred is an inventory shortage.

6. corrosion or rust.

7. rot or mold.

8. dampness of atmosphere.

9. expansion or contraction due to a change in temperature.

10. mechanical or electrical breakdown or failure. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

11. electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

12. testing. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

13. the weight of a load when it exceeds the designed capacity of a machine to lift, move or support the load from any position.

14. the cost to make good or replace faulty or defective materials or workmanship.

15. a fault, defect, deficiency, error or omission in a plan, blueprint, design or specification.

There are other perils that are not covered. These are listed in the Inland Marine General Terms.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada or Puerto Rico. This includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

## VALUATION

This replaces the "Valuation" provision in the Inland Ma-

rine General Terms.  The value of the property will be its actual cash value at the time of loss.  This value includes:

1. labor charges.

2. transportation costs.

3. the cost of insurance.

4. taxes.

## REPORTING TERMS

1. **Reports** - You must send us a written report showing the total finished contract value of all covered property at each jobsite location where work is in progress as of the last business day of each month.  This report is due within 30 days after the end of each month.  You must report to us the total finished contract value of all covered property at each jobsite location, even if it exceeds the coverage amount shown.  The report does not change the coverage amount.

2. The premium shown is only an estimate.  The earned premium will be determined by multiplying the total amount reported to us each month by the monthly rate.  The earned premium will be applied against the estimated premium.  All earned premium that exceeds the estimated premium is due at the time the premium is adjusted.  If the total earned premium for each twelve month period does not exceed the estimated premium, we will return the difference to you.

3. **Minimum Premium** - The minimum premium is not subject to a refund.

4. **Late Reports** - If a report is not received when due, we will not pay more for a loss than the amount shown on the last report received before the loss.  If this is the first report due, we will not pay more than 90 percent of the loss that would otherwise have been paid.

IM-827                              —3—                      © Copyright 1986 AAIS

# INLAND MARINE

This Inland Marine coverage is subject to the terms shown below. The Inland Marine General Terms also apply. Please read this carefully.

### SCHEDULED PROPERTY COVERAGE

(The information required below may be shown on a separate schedule or supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy. A coverage amount must be shown for each item. This is the most that we will pay for a loss to that item.

| Described Item | Coverage Amount |
|---|---|
| 1. | $_____ |
| 2. | $_____ |
| 3. | $_____ |
| 4. | $_____ |
| 5. | $_____ |
| 6. | $_____ |
| 7. | $_____ |
| 8. | $_____ |
| 9. | $_____ |
| 10. | $_____ |

**FOR FURTHER DESCRIPTION, LIMITS AND AMOUNTS SEE DECLARATION PAGE.**

### DEDUCTIBLE

The following deductible amount will apply
to each loss after all other adjustments
have been made.                                            $_____

### COINSURANCE

You must maintain a minimum coverage amount for each described item. This minimum coverage amount is the full actual cash value of the described item. If the coverage amount at the time of loss is less than the minimum coverage amount, we will pay only a part of a loss. Our part of the loss will be determined by dividing the coverage amount by the minimum coverage amount. This percent will be applied to the final adjusted loss to determine the amount that we will pay.

### PROPERTY COVERED

We cover only those described items for which a coverage amount is shown.

### PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

IM 901 (8-84)                                                           Page 1 of 2

PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same as, or after the excluded peril. We do not pay for a loss that results from:

1.  a dishonest or illegal act, alone or in collusion with another, by:
    a.      you;
    b.-     others who have an interest in the property;
    c.      others to whom you entrust the property; or
    d.      the employees or agents of a., b. or c., whether or not they are at work.

    We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.  swindling, fraud, trick or false pretense.

3.  the acceptance of:
    a.      counterfeit money or fraudulent post office or express money orders; or
    b.      checks or promissory notes which are not paid upon presentation.

4.  mysterious disappearance.

5.  any cause when the only proof that a loss occurred is an inventory shortage.

6.  breakage of glass or similar fragile items. We do cover breakage if it is caused by fire; lightning, windstorm, hail, earthquake, flood, smoke, explosion, aircraft, spacecraft, self-propelled missiles, and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of buildings.

7.  a process to repair, adjust, service or maintain the covered property. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

8.  mechanical breakdown or failure. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

9.  electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

There are other perils that are not covered. These are listed in the Inland Marine General Terms.

**TERRITORY WHERE COVERAGE APPLIES**

Coverage applies only while the property is in the United States, Canada, or Puerto Rico. This includes property that is in transit, except to or from Alaska, Hawaii or Puerto Rico.

IM 901(8-84)                                                                              Page 2 of 2

BUSINESSOWNERS

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE
## IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added as an Additional Coverage to the Property section:

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Theft Expense coverage is applicable; and

3. Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

1. **Case Management Service**

   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

2. **Expense Reimbursement**

   Reimbursement of necessary and reasonable "identity theft expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. "Identity theft   expenses" incurred to restore a professional or business identity.

2. "Identity theft expenses" incurred due to any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others.

3. Loss other than "identity theft expenses".

4. "Identity theft expenses" arising from any "identity theft" by or with the knowledge of any relative or former relative of the "identity recovery insured."

5. Loss arising from an "identity theft" that is first discovered by the "identity recovery insured" prior to the policy period or after the policy period, whether or not such "identity theft" began or continued during the policy period.

6. Loss arising from an "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity recovery insured."

7. Loss arising from an "identity theft" that is not reported in writing to the police.

**LIMITS**

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

Legal costs as provided under item d. of the definition of "identity theft expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

**DEDUCTIBLE**

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to an annual aggregate deductible per "identity recovery insured" of $500. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

**CONDITIONS**

The following additional conditions apply to this coverage:

**A.Assistance and Claims**

For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-888-772-1796.**

The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

1. Information and advice for how to respond to a possible "identity theft"; and

2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

IR 08 84  04-05

DRAFT – FOR DISCUSSION PURPOSES ONLY

The "identity recovery insured" must submit the applicable form to request Case Management Service or Expense Reimbursement Coverage.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity theft expenses."

**B. Computer Security**

It is the responsibility of each "identity recovery insured" to use and maintain his or her computer system security, including personal firewalls, anti-virus software and proper disposal of used hard drives.

**C. Services**

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:.

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

"Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

"Identity theft" does not include the unauthorized use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3. **"Identity Theft Expenses"** means the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an "identity theft":

a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

c. Costs for up to six credit reports from established credit bureaus (with no more than two reports from any one credit bureau) dated within 12 months after your knowledge or discovery of an "identity theft."

d. Fees and expenses for an attorney appointed by us for:

(1) Defending any civil suit brought against an "identity recovery insured" by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan as a result of an "identity theft"; and

(2) Removing any civil judgment wrongfully entered against an "identity recovery insured" as a result of the "identity theft."

4. **"Identity Recovery Insured"** means the following:

a. When the business insured under this policy is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured business.

b. When the business insured under this policy is a partnership, the "identity recovery insureds" are all partners listed on this policy as insureds.

c. When the business insured under this policy is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured business. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be the chief executive of the insured entity.

An "identity recovery insured" must always be an individual person. The business insured under this policy is not an "identity recovery insured."

All other provisions of this policy apply.

# EXHIBIT B

NO. _____

FILED

FEB 1 9 2020

HAZEL L. PARKER
CLERK OF DISTRICT COURT
DEPUTY _____

DODD LAW FIRM, P.C.
Matthew A. Dodd
PO Box 160669
Big Sky, MT 59716
406.414.7640
406.551.7601 fax
matt@doddlawfirmpc.com

IN THE SIXTEENTH JUDICIAL DISTRICT COURT,
COUNTY OF CUSTER,
STATE OF MONTANA

| | |
|---|---|
| Timothy King,<br><br>     Plaintiff,<br><br>vs.<br><br>Paul Oakland, Jr. and<br>Oakland Improvements, Inc.,<br><br>     Defendants. | Case No. DV 2020-24<br><br>Judge MICHAEL B. HAYWORTH<br><br>Complaint and Demand for Jury Trial |

Timothy King, by and through undersigned counsel, files this Complaint and Demand for Jury Trial against Paul Oakland, Jr. and Oakland Improvements, Inc. as follows:

## INTRODUCTION

1.     This is a case about a builder who promised a "turn-key" home but delivered a home needing extensive and expensive repairs.

2.     Because Defendants misled Mr. King, failed to properly construct the home, and failed to deliver the home in "turn-key" condition, Mr. King has been left with a defective home that will require significant repairs in order to be safe and habitable.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–1 of 9–

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff, Tim King, is a resident of Custer County, Montana.

4.      Defendant, Paul Oakland, is a resident of Custer County, Montana.

5.      Defendant, Oakland Improvements, Inc., is domestic profit corporation with its primary place of business located in Custer County, Montana.

6.      The real property at issue in this matter is located in Custer County, Montana.

7.      This Court has personal jurisdiction over the parties to this action pursuant to rule 4(b) of the Montana Rules of Civil Procedure, as some of the claims for relief arise out of the ownership, use, or possession of any property, or of any interest therein, situated within Montana.

8.      This Court has subject matter jurisdiction pursuant over this actual pursuant to § 3-5-302, MCA.

9.      Venue is proper pursuant to §§ 25-2-121 – 123, MCA.

## FACTUAL BACKGROUND

10.     Defendants bought land and constructed homes on that land in the Southgate Meadows neighborhood in Miles City, Montana.

11.     As part of their business, Defendants acted as the builder-vendor of homes in the Southgate Meadows neighborhood.

12.     In the spring of 2014, Defendants discussed the sale of lot within Southgate Meadows with Mr. King.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–2 of 9–

13.    While Defendants were willing to sell Mr. King a lot, the sale was contingent upon Mr. King agreeing that Defendants would construct the home on the lot.

14.    Based on their eventual agreement, Defendants acted as the builder-vendor on Mr. King's purchase of a lot and home.

15.    The parties agreed that Mr. King would purchase the property and home construction was complete.

16.    The home was to be located at 322 Arrowhead Drive.

17.    The parties agreed that, at the conclusion of construction, Defendants would present Mr. King with a home in "'turn-key' condition."

18.    On April 15, 2015, Mr. King completed the purchase of the land and home at 322 Arrowhead Drive.

19.    In the Spring of 2018, Mr. King discovered that cracks were developing in the walls and soffits of the home.

20.    Many of the cracks originated from the corners of door casings, window cases, and wall joints.

21.    Those cracks have worsened to the point at which doors will not properly shut and locks have failed to work.

22.    Mr. King also discovered that portions of the concrete surrounding the home have begun to subside, settle, and/or crack.

23.    That subsidence / settlement has caused the siding of the home to buckle and crack.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–3 of 9–

24.     The subsidence / settlement has increased to the point that the sides of the home's foundation are inches higher than a reference point in the center of the home.

25.     The subsidence / settlement of the home has impacted the home's safety and habitability.

26.     In the Spring / Summer of 2018, Mr. King alerted Defendants of the home's defects.

27.     While Defendants came and inspected the home, they refused to take any action to correct the home's defects.

28.     On November 22, 2019, Mr. King, through counsel, sent Defendants notice of a construction defect claim pursuant to § 70-19-427(1), MCA.

29.     The parties attempted to settle this matter pursuant § 70-19-427, MCA.

30.     The parties were unable to settle this matter.

## CAUSES OF ACTION

### First Cause of Action –
### Breach of Contract

31.     Each and every allegation of the Complaint is incorporated herein by reference.

32.     The parties agreed that Defendants would construct and present Mr. King a home in "'turn-key' condition."

33.     Defendants breached their contract with Mr. King when they failed to construct and present a home in "'turn-key' condition."

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–4 of 9–

34.     Defendants constructed and presented a home with many defects arising from faulty work, skills, and/or material that affect the home's value, safety, and habitability.

35.     Defendants have failed to remedy the home's defects caused by Defendants' faulty work, skills, and/or material.

36.     As the direct and proximate result of Defendants' breach of contract, Mr. King has suffered property, financial, and other injuries.

## Second Cause of Action – Construction Defect Claim Pursuant to §§ 70-19-427 and -428, MCA

37.     Each and every allegation of the Complaint is incorporated herein by reference.

38.     The home presented to Mr. King contained a number of above-referenced construction defects.

39.     Mr. King sent Defendants notice of the above-referenced construction defects pursuant to § 70-19-427(1), MCA, on November 22, 2019.

40.     The parties followed the procedures set forth in § 70-19-427, MCA.

41.     Defendants failed to remedy the above-referenced construction defects.

42.     Mr. King is therefore free to bring this construction defect claim.

43.     As the direct and proximate result of Defendants' failure to properly construct the home, Mr. King is entitled to damages pursuant to § 70-19-428, MCA.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–5 of 9–

### Third Cause of Action –
### Breach of the Covenant of Good Faith and Fair Dealing

44.     Each and every allegation of the Complaint is incorporated herein by reference.

45.     Every contract in Montana carries with it the duty of good faith and fair dealing.

46.     Defendants breached the covenant of good faith and fair dealing when they intentionally and/or negligently misled Mr. King about the quality of Defendants' work.

47.     Defendants breached the covenant of good faith and fair dealing when they failed to construct the home in a workmanlike manner.

48.     Defendants breached the covenant of good faith and fair dealing when they failed to construct the home in accord with industry standards.

49.     As the direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Mr. King has suffered property, financial, and other injuries.

### Fourth Cause of Action –
### Negligent Construction

50.     Each and every allegation of the Complaint is incorporated herein by reference.

51.     Defendants had a duty to construct the home with the reasonable degree of care, skill, and ability which is ordinarily employed by others in the same profession.

52.     Defendants breached their duty of care.

53.     As the direct and proximate result of Defendants' negligence, Mr. King has suffered property, financial, and other injuries.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–6 of 9–

## Fifth Cause of Action –
## Breach of the Implied Warranty of Workmanlike Construction

54.     Each and every allegation of the Complaint is incorporated herein by reference.

55.     Defendants had a common law duty to construct the home for Mr. King in a workmanlike manner.

56.     Defendants failed to construct the home in a workmanlike manner when it failed to construct a home free from defects.

57.     As the direct and proximate result of Defendants' failure to build the home in a workmanlike manner, Mr. King has suffered property, financial, and other injuries.

## Sixth Cause of Action –
## Breach of the Implied Covenant of Habitability

58.     Each and every allegation of the Complaint is incorporated herein by reference.

59.     Defendants acted as a builder-vendor of Mr. King's home.

60.     "The implied warranty of habitability places on the builder-vendor liability for defects in a structure which make it uninhabitable." *Degnan v. Executive Homes, Inc.*, 215 Mont. 162, 168, 696 P.2d 431 (1985).

61.     "The duty to present a buyer with a habitable house is a legal duty placed on the builder-vendor of that house." *Id.*

62.     Defendants breached their duties as a builder-vendor when they presented Mr. King with a house that is not safe or habitable.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–7 of 9–

63.     As the direct and proximate result of Defendants' failure to present Mr. King with a home that is safe and habitable, Mr. King has suffered property, financial, and other injuries.

**Seventh Cause of Action –
Negligent Misrepresentation**

64.     Each and every allegation of the Complaint is incorporated herein by reference.

65.     Defendants represented that they would construct and present a home in "'turn-key' condition."

66.     That representation was untrue.

67.     Defendants made the representation without any reasonable grounds for believing it to be true.

68.     The representation was made to induce Mr. King to rely on the representation and close on the home.

69.     Mr. King was unaware of the falsity of the representation, acted in reliance of the representation, and was justified in acting on the representation.

70.     As the direct and proximate result of Defendants' negligent misrepresentation, Mr. King has suffered property, financial, and other injuries.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–8 of 9–

## PRAYER FOR RELIEF

Mr. King therefore requests the following relief:

a.     Judgment in favor of Plaintiff on all counts;

b.     For all Damages allowed by law for construction (§ 70-19-428, MCA);

c.     For all Damages allowed by law for negligent construction;

d.     For all Damages allowed by law for negligent misrepresentation;

e.     An award of punitive damages against Defendants based on their fraudulent conduct as pled above;

f.     An award of the costs of litigation and attorney fees, pursuant to statute, contract, and/or equitable principles;

g.     An award of pre- and post-judgment interest;

h.     Trial by twelve (12) person jury; and

i.     Any other relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted this the 14th day of February, 2020.


DODD LAW FIRM, P.C.

_____
Matthew A. Dodd
*Attorney for Plaintiff*


*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–9 of 9–

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

## MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) | Civil Action No. DV 21-23 |
| | ) | |
| Plaintiff, | ) | **NOTICE AND** |
| | ) | **ACKNOWLEDGMENT OF** |
| v. | ) | **RECEIPT OF SUMMONS,** |
| | ) | **COMPLAINT, MOTION FOR** |
| OAKLAND IMPROVMENTS, INC., PAUL | ) | **SUMMARY JUDGMENT, BRIEF IN** |
| OAKLAND, JR., and TIMOTHY KING | ) | **SUPPORT OF MOTION FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| Defendants. | ) | **AFFIDAVIT OF JON DYRE** |
| | ) | |

## <u>NOTICE</u>

TO:   Defendant, Oakland Improvements, Inc.
      c/o

The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the

completed form to the sender within twenty-one (21) days after the date it was mailed to you as

shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment.  If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below.  If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint will have been mailed on the 15th day of May, 2017.

Dated this 15th day of May, 2017.     _____

GRANT S. SNELL

**ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT**

I declare, under penalty of perjury, that I received a copy of the Summons and of the Complaint in the above-captioned matter at _____, Montana.

_____

Signature

_____

Relationship of Entity/Authority to
Receive Service of Process

_____

Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com


Attorneys for Plaintiff


MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) ) | Civil Action No. DV 21-23 |
| Plaintiff, | ) ) | **NOTICE AND** **ACKNOWLEDGMENT OF** |
| v. | ) ) ) | **RECEIPT OF SUMMONS,** **COMPLAINT, MOTION FOR** **SUMMARY JUDGMENT, BRIEF IN** |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) ) | **SUPPORT OF MOTION FOR** **SUMMARY JUDGMENT AND** |
| Defendants. | ) ) | **AFFIDAVIT OF JON DYRE** |

## <u>NOTICE</u>

TO:   Defendant, Paul Oakland, Jr.
        c/o Bryan Kautz
        Ritchie Manning Kautz PLLP
        175 N. 27th St., Suite 1206
        Billings, MT 59101

The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the completed form to the sender within twenty-one (21) days after the date it was mailed to you as shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment.  If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below.  If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons, Complaint, Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and Affidavit of Jon Dyre will have been mailed on the ____ day of _____, 2021.

Dated this _____ day of _____, 2021.

_____
JON T. DYRE

## **ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT**

I declare, under penalty of perjury, that I received a copy of the Summons, Complaint,

Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and

Affidavit of Jon Dyre in the above-captioned matter at _____

_____, Montana.

_____
Signature
_____
Relationship of Entity/Authority to
Receive Service of Process
_____
Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

MONTANA SIXTEENTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Civil Action No. DV 21-23 |
| Plaintiff, | ) ) | **NOTICE AND** |
| | ) | **ACKNOWLEDGMENT OF** |
| v. | ) | **RECEIPT OF SUMMONS,** |
| | ) | **COMPLAINT, MOTION FOR** |
| OAKLAND IMPROVEMENTS, INC., PAUL | ) | **SUMMARY JUDGMENT, BRIEF IN** |
| OAKLAND, JR., and TIMOTHY KING | ) | **SUPPORT OF MOTION FOR** |
| | ) | **SUMMARY JUDGMENT AND** |
| Defendants. | ) | **AFFIDAVIT OF JON DYRE** |
| | ) | |

## NOTICE

TO:   Defendant, Oakland Improvements, Inc.
      c/o Bryan Kautz
      Ritchie Manning Kautz PLLP
      175 N. 27th St., Suite 1206
      Billings, MT 59101

The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the completed form to the sender within twenty-one (21) days after the date it was mailed to you as shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below. If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint will have been mailed on the 18th day of March, 2021.

Dated this 18th day of March, 2021.

_____
JON T. DYRE

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the Summons, Complaint,

Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and

Affidavit of Jon Dyre in the above-captioned matter at _Billings_____,

Montana.

BRYAN KAUTZ
attorney for Defendant
Relationship of Entity/Authority to
Receive Service of Process

April 7 2021
Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

MONTANA SIXTEENTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUAL INSURANCE COMPANY, | ) ) ) | Civil Action No. DV 21-23 |
| Plaintiff, | ) ) ) | **NOTICE AND** **ACKNOWLEDGMENT OF** |
| v. | ) ) | **RECEIPT OF SUMMONS,** **COMPLAINT, MOTION FOR** |
| OAKLAND IMPROVEMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) ) | **SUMMARY JUDGMENT, BRIEF IN** **SUPPORT OF MOTION FOR** **SUMMARY JUDGMENT AND** |
| Defendants. | ) ) ) | **AFFIDAVIT OF JON DYRE** |

## NOTICE

TO:   Defendant, Paul Oakland, Jr.
　　　c/o Bryan Kautz
　　　Ritchie Manning Kautz PLLP
　　　175 N. 27th St., Suite 1206
　　　Billings, MT 59101

The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the completed form to the sender within twenty-one (21) days after the date it was mailed to you as shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment.  If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity.  If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below.  If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons, Complaint, Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and Affidavit of Jon Dyre will have been mailed on the 18th day of March, 2021.

Dated this 18th day of March, 2021.

_____
JON T. DYRE

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the Summons, Complaint,

Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and

Affidavit of Jon Dyre in the above-captioned matter at _____ *Billings* _____,

Montana.

_____
BRYAN KAUTZ

*attorney for Defendant*
_____
Relationship of Entity/Authority to
Receive Service of Process

*April 7, 2021*
_____
Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com


Attorneys for Plaintiff

SIXTEENTH

MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | |
|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) Civil Action No. DV 21-23 |
| Plaintiff, | ) **NOTICE AND** ) **ACKNOWLEDGMENT OF** |
| v. | ) **RECEIPT OF SUMMONS,** ) **COMPLAINT, MOTION FOR** |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) **SUMMARY JUDGMENT, BRIEF IN** ) **SUPPORT OF MOTION FOR** ) **SUMMARY JUDGMENT AND** |
| Defendants. | ) **AFFIDAVIT OF JON DYRE** ) |

## NOTICE

TO:   Defendant, Oakland Improvements, Inc.
      c/o


The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the

completed form to the sender within twenty-one (21) days after the date it was mailed to you as

shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below. If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons and Complaint will have been mailed on the 18th day of March, 2021.

Dated this 15th day of May, 2017.

_____
GRANT S. SNELL

**ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT**
I declare, under penalty of perjury, that I received a copy of the Summons and of the Complaint in the above-captioned matter at bKantz@cmefrrm.com, Billings, Montana.

_____
Signature

Page 2

_Attorney for Oakland Improvements, Inc._

Relationship of Entity/Authority to
Receive Service of Process

_April 7, 2021_

Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

*SixTEENTH*

MONTANA ~~FIFTH~~ JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | |
|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, )<br><br>Plaintiff, )<br><br>v. )<br><br>OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING )<br><br>Defendants. ) | Civil Action No. DV 21-23<br><br>**NOTICE AND ACKNOWLEDGMENT OF RECEIPT OF SUMMONS, COMPLAINT, MOTION FOR SUMMARY JUDGMENT, BRIEF IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT AND AFFIDAVIT OF JON DYRE** |

## NOTICE

TO:   Defendant, Paul Oakland, Jr.
c/o Bryan Kautz
Ritchie Manning Kautz PLLP
175 N. 27th St., Suite 1206
Billings, MT 59101

The enclosed Summons, Complaint, Motion for Summary Judgment, Brief in Support of

Motion for Summary Judgment and Affidavit of Jon Dyre are served pursuant to Rule 4(d)(3) of

the Montana Rules of Civil Procedure.

You may complete the acknowledgment part of this form and return one copy of the completed form to the sender within twenty-one (21) days after the date it was mailed to you as shown below.

If you decide to complete and return this form, you must sign and date the acknowledgment. If you are served on behalf of a corporation, unincorporated association (including a partnership), or other entity, you must indicate under your signature your relationship to that entity. If you are served on behalf of another person and you are authorized to receive process, you must indicate under your signature your authority.

If you do not complete and return this form, to the sender within twenty-one (21) days after the date it was mailed to you as shown below, you (or the party on whose behalf you are being served) may be required to pay any expenses incurred in serving a Summons and Complaint in any other manner permitted by law.

If you do complete and return this form, you (or the party on whose behalf you are being served) must answer the Complaint within twenty-one (21) days after the date of signature which you place on the acknowledgment below. If you fail to answer the Complaint within the foregoing twenty-one (21) day period, judgment by default will be taken against you for the relief demanded in the Complaint.

I declare, under penalty of perjury, that this Notice and Acknowledgment of Receipt of Summons, Complaint, Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and Affidavit of Jon Dyre will have been mailed on the _18th_ day of _March_, 2021.

Dated this _____ day of _____, 2021.

_____
JON T. DYRE

## ACKNOWLEDGMENT OF RECEIPT OF SUMMONS AND COMPLAINT

I declare, under penalty of perjury, that I received a copy of the Summons, Complaint,

Motion for Summary Judgment, Brief in Support of Motion for Summary Judgment and

Affidavit of Jon Dyre in the above-captioned matter at _Via email - bKandz @ rmkfirm .com_

_Billings_ , Montana.

_[signature]_
_____
Signature

_attorny for Paul Oakland, Jr._
_____
Relationship of Entity/Authority to
Receive Service of Process

_April 7, 2021_
_____
Date of Signature

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com


Attorneys for Plaintiff


MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) | Civil Action No. DV 21-23 |
| | ) | |
| Plaintiff, | ) ) | |
| | ) | |
| v. | ) | **SUMMONS** |
| | ) | |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) | |
| | ) | |
| Defendants. | ) ) | |

TO:    Oakland Improvements, Inc.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you, you must serve on the Plaintiff a response to the attached Complaint for Declaratory Judgment under Rule 12 of the Montana Rules of Civil Procedure.  Do not include the day you were served in your calculation of time.  The response or motion must be served on Plaintiff's attorney, whose name and address are listed above.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You must also file your answer or motion with the court.

WITNESS my hand and the seal of said Court this _16th_ day of _March_, 2021.

KRISTI CELANDER
Custer County Clerk of Court

(COURT SEAL)

By:_____
　　　Deputy Clerk

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

### MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | |
|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, ) ) | Civil Action No. DV 21-23 |
| ) | |
| Plaintiff, ) ) | |
| v. ) ) | **SUMMONS** |
| OAKLAND IMPROVMENTS, INC., PAUL ) OAKLAND, JR., and TIMOTHY KING ) ) | |
| Defendants. ) ) | |

TO:    Paul Oakland, Jr.

A lawsuit has been filed against you.

Within 21 days after service of this summons on you, you must serve on the Plaintiff a response to the attached Complaint for Declaratory Judgment under Rule 12 of the Montana Rules of Civil Procedure. Do not include the day you were served in your calculation of time. The response or motion must be served on Plaintiff's attorney, whose name and address are listed above.

If you fail to respond, judgment by default will be entered against you for the relief demanded in the Complaint.

You must also file your answer or motion with the court.

WITNESS my hand and the seal of said Court this _16ᵗʰ_ day of _March_ 2021.

KRISTI CELANDER
Custer County Clerk of Court

(COURT SEAL)

By: _____
                Deputy Clerk

Jon T. Dyre
CROWLEY FLECK PLLP
500 Transwestern Plaza II
P. O. Box 2529
Billings, MT  59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Attorneys for Plaintiff

## MONTANA FIFTH JUDICIAL DISTRICT COURT, CUSTER COUNTY

| | | |
|---|---|---|
| MIDWEST FAMILY MUTUTAL INSURANCE COMPANY, | ) ) ) ) | Civil Action No. DV 21-23 |
| Plaintiff, | ) ) | |
| v. | ) ) | **AFFIDAVIT O JON T. DYRE IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT** |
| OAKLAND IMPROVMENTS, INC., PAUL OAKLAND, JR., and TIMOTHY KING | ) ) ) | |
| Defendants. | ) ) ) | |

COUNTY OF YELLOWSTONE      )
                                                    )ss.
STATE OF MONTANA            )

Jon T. Dyre, after being duly sworn, testifies as follows:

1.      I am counsel of record for Midwest Family Insurance Company ("Midwest").

2.      Exhibit A hereto is a certified copy of policy no. ACMT0560098291 ("Policy")

that Midwest sold to Oakland Improvements, Inc. and Susan Sanderson.

3.      Exhibit B here to is an email from Bryan Kautz tendering to Midwest the defense

of *Timothy King, vs. Paul Oakland, Jr., and Oakland Improvements, Inc.*, in the Sixteenth Judicial

District Court, Custer County, Montana, Cause No. DV-2020-24 ("King Lawsuit").

4.      Exhibit C is a copy of the Complaint in *Timothy King, vs. Paul Oakland, Jr., and Oakland Improvements, Inc.*, in the Sixteenth Judicial District Court, Custer County, Montana, Cause No. DV-2020-24.

5.      Exhibit D is letter from Midwest to Oakland agreeing to provide a defense of the King Lawsuit under a reservation of rights.

Dated this _18_ day of March, 2021.

_____
Jon T. Dyre

SUBSCRIBED AND SWORN to before me this 18th day of March, 2021.

_____
[Signature of Notary]

[NOTARIAL SEAL]

JAIME EASLEY
NOTARY PUBLIC for the
State of Montana
Residing at Laurel, Montana
My Commission Expires
May 24, 2023

# EXHIBIT A



**MIDWEST FAMILY MUTUAL**
**INSURANCE COMPANY**
Telephone • 763-951-7000
Fax • 763-951-7092
3033 Campus Drive Suite E195, Plymouth, MN 55441
Mailing Address:
P.O. Box 9425 • Minneapolis, MN 55440-9425
www.midwestfamily.com

To Whom It May Concern:

RE:   **Policy Number:**   ACMT0560098291
       **Named Insured:**   Oakland Improvements, Inc. Susan Sanderson
       **Claim Number:**   00381349
       **Date of Loss:**   08/01/2014

Attached is a certified and true copy of the noted policy for the term shown.

Sincerely Yours,

Kristie F. Van Pelt
Vice President -Finance
Midwest Family Mutual Insurance Company
763-951-7008
kristie.vanpelt@midwestfamily.com

Attachments

**MIDWEST FAMILY MUTUAL**
**INSURANCE COMPANY**
P.O. BOX 9425
Minneapolis, MN 55440-9425

PART B DECLARATION PAGE

**Commercial Summary Page**

EFFECTIVE 11/10/13
Amended Declarations

DB

| POLICY NUMBER | POLICY PERIOD FROM | TO | | AGENT |
|---|---|---|---|---|
| ACMT0560098291 | 11/10/13 | 11/10/14 | 12:01 AM STANDARD TIME | 06408 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| OAKLAND IMPROVEMENTS INC<br>SUSAN SANDERSON<br>414 MISSOURI<br>MILES CITY, MT  59301 | TAYLOR-LEAVITT INS AGENCY LLC<br>2345 KING AVE WEST SUITE A<br>BILLINGS, MT  59102<br><br>Phone: (406) 252-4104        01 |

**Business Description:** GENERAL CONTRACTOR     **Form of Business:** Corporation

====================================== **COVERAGE SUMMARY** ======================================
THIS POLICY CONSISTS OF THE FOLLOWING COVERAGE PARTS/POLICIES FOR WHICH A PREMIUM IS INDICATED.
THIS PREMIUM MAY BE SUBJECT TO ADJUSTMENT OR FINAL AUDIT.

**COVERAGE PART/POLICY ATTACHED**                                  **PREMIUM**
Artisan Contractor                                                     $12,188.00
                                                                    _____
                              **POLICY FEES/TAXES**                      $.00
                              **ESTIMATED TOTAL PREMIUM**            $12,188.00
                                                                    ============

====================== **END OF SUMMARY DECLARATIONS** ======================

IN RETURN FOR THE PAYMENT OF THE PREMIUM, AND SUBJECT TO ALL THE TERMS OF THE COVERAGE
PARTS/POLICIES ATTACHED, WE AGREE WITH YOU TO PROVIDE THE INSURANCE DESCRIBED THEREIN.

DATE   12/11/2013
PAGE   1

PART B DECLARATION PAGE

# MIDWEST FAMILY MUTUAL
# INSURANCE COMPANY
P.O. BOX 9425 Minneapolis, MN 55440-9425

**Artisan Contractor**

MFM — Midwest Mutual Family — Insuring Midwest Values Since 1891

Amended Declarations
EFFECTIVE 11/10/13

DB

| POLICY NUMBER | POLICY PERIOD FROM | TO | | AGENT |
|---|---|---|---|---|
| ACMT0560098291 | 11/10/13 | 11/10/14 | 12:01 AM STANDARD TIME | 06408 |

| NAMED INSURED AND ADDRESS | AGENT |
|---|---|
| OAKLAND IMPROVEMENTS INC<br>SUSAN SANDERSON<br>414 MISSOURI<br>MILES CITY, MT  59301 | TAYLOR-LEAVITT INS AGENCY LLC<br>2345 KING AVE WEST SUITE A<br>BILLINGS, MT  59102<br><br>Phone: (406) 252-4104                01 |

CHANGE REASON: CHANGE INSURED'S MAILING ADDRESS

'X' IF SUPPLEMENTAL DECLARATION  [X]  SUPPLEMENTAL DECLARATION

| Business Description:<br><br>Carpentry - Framing | Form of Business:<br><br>Corporation |
|---|---|

In return for the payment of the premium and subject to all the terms of this policy, we agree with you to provide the insurance as stated in this policy.

| DESCRIBED PREMISES | Forms Applicable:   **Special** |
|---|---|
| Premises No.        Bldg. No.        Location | Mortgage Holder Name and Address |
| **SEE ATTACHED SUPPLEMENTAL DECLARATIONS** | **SEE ATTACHED SCHEDULE** |

| PROPERTY | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. | PREM. NO. | BLDG. NO. |
|---|---|---|---|---|---|---|
| **SEE ATTACHED SUPPLEMENTAL DECLARATIONS**<br>Loss of Income/Extra Expense | | | ACTUAL LOSS SUSTAINED | | | |

Deductible $      **SEE ATTACHED SUPPLEMENTAL DECLARATIONS**

OPTIONAL COVERAGES

**SEE ATTACHED SUPPLEMENTAL DECLARATIONS**

## LIABILITY AND MEDICAL PAYMENTS

Except for Fire Legal Liability, each paid claim for the following coverages reduces the amount of insurance we provide during the applicable annual period.  Please refer to paragraph D.4. of the Businessowners Liability Coverage Form.

| | Limits of Insurance |
|---|---|
| Liability | $1,000,000/$2,000,000 Aggregate |
| Products/Completed Operations Liability | $1,000,000 Occurrence/ $2,000,000 Aggregate |
| Medical Expense | $5,000 per person |
| Fire Legal Liability | $50,000 any one fire or explosion |
| Deductible (Property Damage Liability) | $1,000 |

THIS POLICY IS SUBJECT TO AUDIT AND BASED UPON ____4____ FULL TIME EMPLOYEES AND ____1____ PART TIME EMPLOYEES.

**TOTAL PREMIUM**              $12,188.00

FORMS AND ENDORSEMENTS:    **SEE ATTACHED SCHEDULE**

During the past three years no insurer has canceled any insurance issued to the name insured, similar to that afforded hereunder, unless otherwise stated herein.

THESE DECLARATIONS, TOGETHER WITH THE COVERAGE FORM(S), COMMON POLICY CONDITIONS AND FORMS AND ENDORSEMENTS, IF ANY, ISSUED TO FORM A PART THEREOF, COMPLETE THE ABOVE NUMBERED POLICY.

Includes copyright material of Insurance Service Office Inc., with its permission.  Copyright Insurance Service Inc., 1984, 1985

DATE  12/11/2013
PAGE  1

Policy Number: ACMT0560098291                           Artisan Contractor

## BUSINESSOWNERS SUPPLEMENTAL DECLARATIONS

================================ **LOCATION ADDRESS(ES)** ================================

| Prems. No. | Bldg. No. | Address |
|---|---|---|
| 1 | 1 | 715 WASHINGTON ST, MILES CITY, MT, 59301 |
| 1 | 1 | 715 WASHINGTON ST(CONTENTS), MILES CITY, MT, 59301 |

================================ **DESCRIPTION OF PREMISES** ================================

| Prems. No. | Bldg. No. | Occupancy | Construction |
|---|---|---|---|
| 1 | 1 | Carpentry - Framing | Frame |
| 1 | 1 | Carpentry - Framing | Frame |

================================ **COVERAGES** ================================

### COVERAGES PROVIDED

| Prems. No. | Bldg. No. | Coverages | Limit of Insurance | Automatic Increase in Insurance | Ded |
|---|---|---|---|---|---|
| 1 | 1 | Building - ACV | $380,000 | 6% | $1,000 |
| 1 | 1 | Personal Property/Contents - RC | $20,800 | 6% | $1,000 |

### OPTIONAL COVERAGES

| Prems. No. | Bldg. No. | Coverages | Limit | Ded |
|---|---|---|---|---|
| 1 | 1 | Equipment Breakdown deductible ---- total sublimit on: $380,000 expediating expenses perishable good computer equipment hazardous substances | $380,000 | $1,000 |
| 1 | 1 | BOP/ Contractors Advantage | | |

### OPTIONAL LIABILITY COVERAGES

| Prems. No. | Bldg. No. | Coverages | Limit | Ded | Premium |
|---|---|---|---|---|---|
| 1 | 1 | General Contractors Liability This coverage is subject to annual audit and premium is based on ($1,500,000) of TOTAL annual sales/receipts. | INCLUDED | | $4,253 |

**Policy Number: ACMT0560098291**                    **Artisan Contractor**

====================================================================

## Tool Floater Coverage

| Description | Serial Number | Value | Deductible | Premium |
|---|---|---|---|---|
| MISC TOOLS @ A MAX OF $1500 PER ITEM | | $20,000 | $500 | $347.00 |

====================================================================

## Equipment Coverage

| Description | Serial Number | Value | Deductible | Premium |
|---|---|---|---|---|
| BOBCAT SKIDSTEER | S185 | $30,000 | $500 | $270.00 |
| GROVE MANLIFT WITH BASKET | MZ66B | $10,000 | $500 | $90.00 |
| 2000 GRANDALL FORKLIFT | | $15,000 | $500 | $135.00 |
| 2012 BOBCAT | | $42,800 | $500 | $385.00 |
| 1998 JD 410E BACKHOE | 835665 | $30,000 | $500 | $270.00 |
| 2011 WHITEMAN POWER TROWEL | | $12,000 | $500 | $108.00 |
| 2010 SPI LPG SYNERGY BLOWER | | $12,000 | $500 | $108.00 |

====================================================================

## FORM SCHEDULE

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description | Loc Item | Ded | Limit | Premium |
|---|---|---|---|---|---|---|
| MFM ML1 | 04-05 | Amendatory Endorsement #1 | | | | |
| AP 0689 | 06-02 | Wet Rot, Dry Rot, Bacteria, Fungi or Protists | | | | |
| AP 0690 | 06-02 | Exterior Installation and Finish Systems | | | | |
| AP 0700 | 01-08 | Certified Terrorism Loss | | | | |
| AP-100 | 01-01 | Contractors Special Policy | | | | |
| AP-0225 | 10-05 | Asbestos Exclusion | | | | |
| AP-336 | 01-00 | Premium Payments | | | | |
| AP-0643 | 12-99 | Known Injury or Damage Amendments | | | | |
| ART-0007 | 07-96 | Work Performed Exclusion | | | | |
| BP 02 01 | 01-10 | Montana Changes | | | | |
| BP 05 01 | 07-02 | Calculation of Premium | | | | |
| CL 0605 | 01-08 | Cert Terror Loss Disclosure - Prem, Fed Share | | | | |
| CL-144 | 01-12 | Montana Amendatory Endorsement | | | | |
| MFM 001 | 08-12 | Policy Holder Notice | | | | |
| MFMAC001 | 11-08 | Employment Related Practices Exclusion | | | | |
| MFMAP003 | 03-09 | Amendment-Liquor Liab Exclusion | | | | |
| MFMAP-01 | 01-09 | Nuclear, Bio, Chemical Terrorism Exclusion | | | | |
| PRIV NTC | 07-01 | Privacy Policy Notice | | | | |
| AP 101 | 01-00 | Equipment Breakdown Coverage | | | | |
| AP-222 | 01-00 | Property Damage Liability Deductible | | | | |
| ART 0020 | 07-03 | Contractors Advantage Endorsement | | | | |
| IM-100 | 06-84 | Inland Marine General Terms | | | | |
| IM-810 | 08-85 | Contractors Equipment Coverage | | | | |
| IM-827 | 05-86 | Installation Coverage | | | $50,000 | $975.00 |

Policy Number: ACMT0560098291                          Artisan Contractor

================================================================================

**FORM SCHEDULE**

Forms and Endorsements applying to this Coverage Part and made part of this policy at time of issue:

FORMS APPLICABLE TO ALL PREMISES AND COVERAGES

| Form | Edition | Description | Loc Item | Ded | Limit | Premium |
|------|---------|-------------|----------|-----|-------|---------|
| IM-901 | 08-84 | Scheduled Property Coverage | | | | |
| IR 08 84 | 04-05 | Commercial (BOP/Garage) Identity Recovery Cov | LOC 1 | $500 | 25,000 | $27.00 |

**Amendatory Endorsement #1**                    **MFM ML1 04-05**

```
MIDWEST FAMILY MUTUAL INSURANCE COMPANY
INSURED: OAKLAND IMPROVEMENTS INC
POLICY NUMBER: ACMT0560098291


INSTALLATION FLOATER          $50,000    DED    $1000

MAX LIMIT PER LOC                               $50,000
MAX LIMIT IN TRANSIT                            $50,000
MAX LIMIT ALL LOCS                              $50,000
```

This endorsement changes the Commercial
Liability Coverage provided by this policy
— PLEASE READ THIS CAREFULLY —

# EXCLUSION -- WET ROT, DRY ROT, BACTERIA, FUNGI, OR PROTISTS
## CONTRACTING OPERATIONS

The Commercial Liability Coverage is amended
as follows:

The following exclusions are added:

1.  "We" do not pay for actual or alleged "bodily
    injury" or "property damage" (or "personal
    injury" or "advertising injury", when provided
    by this policy) that arises out of "your work"
    and that results directly or indirectly from
    ingestion of, inhalation of, physical contact
    with, or exposure to:

    a.  wet rot; dry rot; a bacterium; a fungus,
        including but not limited to mildew and
        mold; or a protist, including but not
        limited to algae and slime mold; or

    b.  a chemical, matter, or a compound
        produced or released by wet rot, dry rot,
        a bacterium, a fungus, or a protist,
        including but not limited to toxins,
        spores, fragments, and metabolites such
        as microbial volatile organic compounds.

2.  "We" do not pay for actual or alleged "bodily
    injury" or "property damage" included in the
    "products/completed work hazard" and that
    results directly or indirectly from ingestion of,
    inhalation of, physical contact with, or
    exposure to:

    a.  wet rot; dry rot; a bacterium; a fungus,
        including but not limited to mildew and
        mold; or a protist, including but not
        limited to algae and slime mold; or

    b.  a chemical, matter, or a compound
        produced or released by wet rot, dry rot,
        a bacterium, a fungus, or a protist,
        including but not limited to toxins,
        spores, fragments, and metabolites such
        as microbial volatile organic compounds.

3.  "We" do not pay for "bodily injury" or
    "property damage" liability assumed by an
    "insured" under a contract or agreement and
    that results directly or indirectly from
    ingestion of, inhalation of, physical contact
    with, or exposure to:

a.  wet rot; dry rot; a bacterium; a fungus,
    including but not limited to mildew and
    mold; or a protist, including but not
    limited to algae and slime mold; or

b.  a chemical, matter, or a compound
    produced or released by wet rot, dry rot,
    a bacterium, a fungus, or a protist,
    including but not limited to toxins,
    spores, fragments, and metabolites such
    as microbial volatile organic compounds.

4.  "We" do not pay for any loss, cost, or
    expense arising out of any request, demand,
    or order that any "insured" or others test for,
    monitor, clean up, remove, contain, treat,
    detoxify, neutralize, or in any way respond to
    or assess the effects of:

    a.  wet rot; dry rot; a bacterium; a fungus,
        including but not limited to mildew and
        mold; or a protist, including but not
        limited to algae and slime mold; or

    b.  a chemical, matter, or a compound
        produced or released by wet rot, dry rot,
        a bacterium, a fungus, or a protist,
        including but not limited to toxins,
        spores, fragments, and metabolites such
        as microbial volatile organic compounds.

5.  "We" do not pay for any loss, cost, or
    expense arising out of any claim or suit by or
    on behalf of any governmental authority
    relating to testing for, monitoring, cleaning
    up, removing, containing, treating,
    detoxifying, neutralizing, or in any way
    responding to or assessing the effects of:

    a.  wet rot; dry rot; a bacterium; a fungus,
        including but not limited to mildew and
        mold; or a protist, including but not
        limited to algae and slime mold; or

AAIS
AP 0689 06 02
Page 2 of 2

b.  a chemical, matter, or a compound
    produced or released by wet rot, dry rot,
    a bacterium, a fungus, or a protist,
    including but not limited to toxins,
    spores, fragments, and metabolites such
    as microbial volatile organic compounds.

AP 0689 06 02
Copyright, American Association of Insurance Services, 2002

AAIS
AP 0690 06 02
Page 1 of 1

This endorsement changes the Commercial
Liability Coverage provided by this policy
— PLEASE READ THIS CAREFULLY —

# EXCLUSION -- EXTERIOR INSULATION AND FINISH SYSTEMS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "EIFS" means an exterior wall cladding or finish system used on any part of any structure consisting of:

   a. a rigid or semi-rigid insulation board made of expanded polystyrene or other materials;

   b. an adhesive or mechanical attachment of the insulation board to the substrate;

   c. a reinforced base coat on the face of the insulation board or base coat and mesh;

   d. a protective finish applied to the surface of the base coat providing surface texture to which color may be added; and

   e. any conditioners, primers, accessories, flashings, coatings, caulking, and sealants that interact to form an energy efficient wall.

2. The following exclusions are added:

   a. "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, or repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof, including any method or procedure to correct problems with installed or partially installed systems performed by or on behalf of an "insured".

   b. "We" do not pay for actual or alleged "bodily injury" or "property damage" (or "personal injury" or "advertising injury", when provided by this policy) that arises out of "your work" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

   c. "We" do not pay for actual or alleged "bodily injury" or "property damage" included in the "products/completed work hazard" and that results directly or indirectly from any exterior component, fixture, or feature of any structure if an "EIFS" is used on any part of that structure.

   d. "We" do not pay for "bodily injury" or "property damage" liability assumed by an "insured" under a contract or agreement for the design, manufacture, sale, service, construction, fabrication, preparation, installation, application, maintenance, repair, including any remodeling, correction, or replacement of an "EIFS" or any part thereof, or any substantially similar system or any part thereof.

---

AP 0690 06 02

Copyright, American Association of Insurance Services, 2002

**AAIS**
**AP 0700 01 08**
**Page 1 of 2**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# CERTIFIED TERRORISM LOSS

The Contractors Special Policy is amended as follows:

## COMMON POLICY DEFINITIONS

1. The following definitions are added.

    a. "Certified act of terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States:

        1) to be an act of terrorism;
        2) to be a violent act or an act that is dangerous to human life, property, or infrastructure;
        3) to have resulted in damage:

            a) within the United States; or
            b) to an air carrier (as defined in section 40102 of title 49, United States Code); to a United States flag vessel (or a vessel based principally in the United States, on which United States income tax is paid and whose insurance coverage is subject to regulation in the United States), regardless of where the loss occurs; or at the premises of any United States mission;

        4) to have been committed by an individual or individuals, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion; and
        5) to have resulted in insured losses in excess of five million dollars in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act, as amended.

    b. "Certified terrorism loss" means loss that results from a "certified act of terrorism".

## COMMERCIAL LIABILITY COVERAGES

2. The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

    This exclusion does not apply to "certified terrorism loss".

3. The following provision is added.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

## PROPERTY COVERAGES

4. The "terms" of any terrorism exclusion that is part of or that is attached to this policy are amended by the following provision:

    This exclusion does not apply to "certified terrorism loss".

Copyright, American Association of Insurance Services, Inc., 2008

AAIS
AP 0700 01 08
Page 2 of 2

5. The following provision is added.

If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

6. The following provisions are added.

a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the Property Coverages section of this policy provide coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion; and

b. the absence of any other terrorism endorsement does not imply coverage for any loss that would otherwise be excluded by the Property Coverages section of this policy under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

AP 0700 01 08

Copyright, American Association of Insurance Services, Inc., 2008

AAIS

**PLEASE READ THIS ENTIRE POLICY CAREFULLY**
**-- THIS IS A LEGAL CONTRACT --**

AP-100
Ed 1.0

# CONTRACTORS SPECIAL POLICY

### TABLE OF CONTENTS

Page

Agreement ........................................................................................................................................... i
**Common Policy Conditions** ............................................................................................................ 1
**Common Policy Definitions** ........................................................................................................... 2
**Commercial Liability Coverage Section**
  Additional Definitions ..................................................................................................................... 2
  Principal Coverages ........................................................................................................................ 4
    Coverage L -- Bodily Injury/Property Damage ........................................................................ 4
    Coverage M -- Medical Payments ............................................................................................ 5
    Coverage N -- Products/Completed Work ............................................................................... 5
    Coverage O -- Fire Legal Liability ........................................................................................... 5
    Coverage P -- Personal and Advertising Injury Liability ......................................................... 5
  Incidental Liability Coverages ....................................................................................................... 5
  Defense Coverage .......................................................................................................................... 6
  Exclusions That Apply To All Liability Coverages ........................................................................ 7
    Additional Exclusions That Apply To Property Damage Liability ........................................... 8
    Additional Exclusions That Apply To Medical Payments ....................................................... 9
    Additional Exclusions That Apply To Personal
    and Advertising Injury Liability .............................................................................................. 9
  What Must Be Done In Case Of Loss ............................................................................................. 9
  How Much We Pay .......................................................................................................................... 10
  Conditions ...................................................................................................................................... 11
  Nuclear Energy Liability Exclusion ............................................................................................... 12
    Nuclear Energy Liability Exclusion Definitions ...................................................................... 12
**Commercial Property Coverage Section**
  Additional Definitions ..................................................................................................................... 13
  Principal Coverages ........................................................................................................................ 13
    Coverage A -- Buildings ............................................................................................................ 13
    Coverage B -- Business Personal Property .............................................................................. 14
    Coverage C -- Loss Of Income ................................................................................................. 14
      Earnings ................................................................................................................................ 14
      Extra Expenses .................................................................................................................... 14
  Collapse Coverage ......................................................................................................................... 14
  Incidental Property Coverages ...................................................................................................... 15
  Property Not Covered Or Subject To Limitations .......................................................................... 16
  Perils Insured Against -- Coverages A and B ................................................................................ 18
  What Must Be Done In Case Of Loss ............................................................................................. 20
  How Much We Pay .......................................................................................................................... 21
  Payment Of Loss Or Claim ............................................................................................................ 22
  Conditions ...................................................................................................................................... 23

Endorsements may also apply. They are identified on the Declarations Page.

Refer to the Common Policy Definitions and Additional Definitions for words that have special meanings. These words are shown in **"bold type."**

### AGREEMENT

Subject to all the **terms** that apply, and in return for **your** payment of the required premium, **we** provide the coverages described in this policy during the policy period.

**AP-100  Ed 1.0**

-- i --

AAIS

Copyright MCMXC, American Association of Insurance Services

# COMMON POLICY CONDITIONS

This Section contains **terms** that apply to all coverages provided by this policy.

1. **Assignment --** This policy is void if it is assigned without **our** written consent.

2. **Cancellation -- You** may cancel this policy by returning it to **us** or by giving **us** a written notice and stating at what future time coverage is to cease.

   **We** may cancel this policy, or one or more of its parts, by giving **you** a written notice at least 10 days before the cancellation is to take effect. The notice will state the time that the cancellation is to take effect. The notice will be sent to **your** mailing address last known to **us.**

   **Your** return premium, if any, will be refunded to **you** with the cancellation notice or within a reasonable time. Payment or tender of the unearned premium is not a condition of cancellation.

3. **Change, Modification or Waiver of Policy Terms --** A change or waiver of terms of this policy must be issued by **us** in writing to be valid.

4. **Conformity With Statute --** Terms of this policy, in conflict with the statutes of the state where the premises described are located, are amended to conform to such statutes.

5. **Cooperation --** In case of loss, **you** must cooperate in performing all acts required by this policy.

6. **Examination of Books and Records -- We** may examine and audit **your** books and records that relate to this policy during the policy period and within three years after the policy has expired.

7. **Inspections -- We** have the right, but are not obligated, to inspect **your** property and operations. This inspection may be made by **us** or may be made on **our** behalf. An inspection or its resulting advice or report does not warrant that **your** property or operations are safe, healthful or in compliance with laws, rules or regulations. Inspections or reports are for **our** benefit only.

8. **Liberalization --** If **we** adopt a revision of forms during a policy period which broadens this policy without additional premium, the broadened coverage will automatically apply to this policy. This also applies if **we** adopt the revision within 60 days before this policy is effective.

9. **Misrepresentation, Concealment or Fraud --** This coverage is void if before or after a loss:

   a. any **insured** has concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or
      2) the **insured's** interest herein;

   b. there has been fraud or false swearing by any **insured** with regard to a matter that relates to this insurance or the subject thereof.

10. **Subrogation --** If **we** pay for a loss under this policy **we** may require that the **insured** assign to **us** any right of recovery against others up to the amount **we** paid. **We** are not liable for a loss if, after the loss or **occurrence,** any **insured** impairs **our** right to recover.

    An **insured** may waive its right to recover, in writing, before the loss or occurrence takes place without voiding coverage.

**AP-100  Ed 1.0**                    **-- 1 --**                          **AAIS**

Copyright MCMXC, American Association of Insurance Services

# COMMON POLICY DEFINITIONS

**This section contains definitions that apply to all coverages under this policy.**

1. **Basic Territory --** This means the United States of America, its territories and possessions, Canada and Puerto Rico.

2. **Described Premises --** This means that part of the building and grounds which **you** occupy at the location shown.

3. **Insured -- Insured** means:

   a. **you**; or
   b. in the event of the death of an individual **insured, your** legal representative and anyone having temporary custody of **your** property until **your** legal representative is appointed. Such persons are **insureds** only with respect to insurance on covered property and liability incurred while acting within the scope of their duties.

4. **Limit --** This means the **limit** of liability that applies.

5. **Pollutants --** This means:

   a. any solid, liquid, gaseous, thermal, electrical emission (visible or invisible) or sound emission pollutant, irritant or contaminant; or
   b. waste, including materials to be recycled, reclaimed or reconditioned as well as disposed of.

6. **Terms --** This means all provisions, limitations, exclusions, conditions and definitions that apply.

7. **We, Us, Our --** These words mean the company providing this coverage.

8. **You, Your --** These words mean the persons or organizations named on the Declarations.

## COMMERCIAL LIABILITY COVERAGES

This Section contains the additional definitions, coverage descriptions, exclusions, limitations and conditions that apply to the Contractor's Liability Coverages.

### ADDITIONAL DEFINITIONS

In addition to the Common Policy definitions the following also apply to the Commercial Liability Coverages.

1. **Advertising Injury --** This means injury (other than **bodily injury**) arising out of one or more of the following offenses:

   a. oral or written publication of material:

      1) that slanders or libels a person or organization;
      2) that disparages a person's or organization's goods, products or services; or
      3) that violates a person's right of privacy.

   b. misappropriation of advertising ideas or style of doing business;
   c. infringement of copyright, title, slogan, trademark or trade name.

2. **Auto --** This means a land motor vehicle, a trailer or a semi-trailer which is designed for use on public roads. **Auto** includes attached machinery and equipment.

3. **Bodily Injury --** This means bodily harm, sickness or disease sustained by a person and includes required care and loss of services. **Bodily injury** includes death that results from bodily harm, sickness or disease.

4. **Coverage Territory --** This means:

   a. the **basic territory**;
   b. international waters and airspace, only if the **bodily injury** or **property damage** occurs in the course of travel to or from the **basic territory**;
   c. the world, if the injury or damage arises out of:

      1) products **you** have made or sold in the **basic territory**; or
      2) the activities of a person who normally resides in the **basic territory**, but is away for a short time on **your** business; and

   provided that **your** liability to pay damages has been determined:

      1) in a suit on the merits in the **basic territory**; or
      2) in a settlement that **we** have agreed to.

Copyright MCMXC, American Association of Insurance Services

5. **Impaired Property --** This means tangible property (other than **your products** or **your work):**

   a. whose value has been decreased:

      1) because it includes **your product** or **your work** that is, or is believed to be, defective, deficient or dangerous; or

      2) because **you** failed to carry out the terms of a contract; and

   b. whose value can be restored:

      1) by the repair, replacement, adjustment or removal of **your product** or **your work;** or

      2) by **your** fulfilling the terms of the contract.

6. **Incidental Contract --** This means a written:

   a. lease of premises;

   b. easement agreement (this does not include an agreement in connection with any construction or demolition operation on or adjacent to a railroad);

   c. promise to indemnify a municipality if required by an ordinance (this does not apply in connection with work done for the municipality);

   d. sidetrack agreement; or

   e. elevator maintenance agreement.

   This does not include any contract or agreement to obtain insurance of any kind in connection with a project upon which **you** may be employed as a sub-contractor, or to indemnify any person with respect to such project.

7. **Insured --** If shown on the Declarations as an "individual," **insured** means **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

   If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.

   If shown on the Declarations as an "organization" (other than a partnership or a joint venture), **insured** means **you** and all of **your** executive officers and directors, but only while acting within the scope of their duties. It also includes **your** stockholders, but only for their liability as such.

   **Insured** also includes:

   a. with respect to the operation, with **your** permission, of mobile equipment:

      1) **your** employee in the course of employment. This does not apply to a fellow employee injured in the course of employment;

      2) any other person. This includes anyone legally liable for the conduct of such person but only:

         a) for liability arising out of the operation of the equipment; and

         b) if there is no other insurance covering the liability available to them.

   No one is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you,** or an employee of anyone who is an **insured** under paragraph a.

   b. **your** employees, for acts within the scope of their employment by **you** (this does not include **your** executive officers). None of these employees are **insureds** for:

      1) injury to **you** or to a fellow employee;

      2) **property damage** to property owned by, rented to or loaned to employees, or any of **your** partners or members and their spouses (if **you** are a joint venture or a partnership).

   c. any organization (other than a joint venture or a partnership) newly acquired or formed by **you,** and in which **you** have a majority interest.

   Such an organization is not an **insured:**

      1) if there is other similar insurance available to it; or

      2) after 90 days immediately following that acquisition or formation; or

      3) for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

   No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Declarations as an **insured.**

8. **Loading or Unloading --** This means the movement of property:

   a. starting with the time it is removed from the point where it has been accepted for transit by **auto,** aircraft or watercraft;

   b. continuing while it is in or on such vehicle; and

   c. ending when it has been removed from the vehicle to its point of destination.

   **Loading or unloading** includes movement by any mechanical device attached to the vehicle.

Copyright MCMXC, American Association of Insurance Services

9. **Occurrence --** This means an accident and includes repeated exposure to similar conditions.

10. **Personal Injury -- Personal injury** means injury (other than **bodily injury)** arising out of one or more of the following offenses:

    a. oral or written publication of material:

       1) that slanders or libels a person or organization;
       2) that disparages a person's or organization's goods, products or services; or
       3) that violates a person's right of privacy;

    b. false arrest, detention, imprisonment, or malicious prosecution;
    c. wrongful entry into, or eviction of a person from a room, dwelling or premises that the person occupies.

    It does not include advertising, publishing, broadcasting or telecasting done by or for **you.**

11. **Products/Completed Work Hazard --**

    a. **Products hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your product** after physical possession of it has been relinquished to others.
    b. **Completed work hazard** means **bodily injury** or **property damage** arising out of **your work.** It does not include work that has not been completed, or that has been abandoned.

       **Your work** is deemed completed at the earliest of the following times:

       1) when all work specified in **your** contract has been done;
       2) when all work to be done at a job site has been completed if **your** contract includes work at more than one site; or
       3) when **your work** at a job site has been put to its intended use by someone other than another contractor or subcontractor working on the same job site.

       Work which requires further service, maintenance, correction, repair or replacement because of a defect or deficiency, but which is otherwise complete, shall be deemed completed.
    c. Neither of these hazards include **bodily injury** or **property damage** arising out of:

       1) the transportation of property, unless the injury or damage arises out of a condition in or on a

vehicle, created by **loading or unloading;**
       2) the presence of tools, uninstalled equipment or abandoned or unused materials; or
       3) **products** or work for which the classification on the Declarations specifies "including **Products/Completed Work."**

12. **Products --** This means goods or **products** manufactured, sold, handled, distributed or disposed of by **you,** others trading under **your** name, or a person or organization whose business or assets **you** have acquired.

    **Products** includes:

    a. warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **your products;** and
    b. containers (other than vehicles), materials, parts or equipment furnished in connection with such goods or **products.**

    **Products** does not include:

    a. vending machines;
    b. property that is rented to or placed for the use of others, but not sold; or
    c. real property.

13. **Property Damage --** This means:

    a. physical injury or destruction of tangible property; or
    b. the loss of use of tangible property whether or not it is physically damaged.

14. **Your Work --** This means:

    a. ork or operations performed by **you** or on **your** behalf;
    b. materials, parts and equipment **you** supply for such work or operations; and
    c. written warranties or representations made at any time regarding quality, fitness, durability or performance of any of the foregoing.

## PRINCIPAL COVERAGES

**We** provide insurance for the following coverages indicated by a specific **limit** or premium charge on the Declarations.

### COVERAGE L -- BODILY INJURY LIABILITY
### PROPERTY DAMAGE LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies.

Copyright MCMXC, American Association of Insurance Services

The **bodily injury** or **property damage** must be caused by an **occurrence.**

This insurance applies only to **bodily injury** or **property damage** which occurs:

1.  within the **coverage territory;** and

2.  during the policy period.

## COVERAGE M -- MEDICAL PAYMENTS

**We** pay the medical expenses defined below for **bodily injury** caused by accidents:

1.  on premises **you** own or rent;

2.  on ways adjacent or next to premises **you** own or rent; or

3.  arising out of **your** operations.

**We** pay such expenses regardless of fault but only if:

1.  they arise out of an accident that occurred in the **coverage territory** and during the policy period; and

2.  they are incurred and reported within one year of the accident.

Medical expenses means the reasonable and necessary expenses for:

1.  medical, surgical, x-ray and dental services, including prosthetic devices and eye glasses;

2.  ambulance, hospital, professional nursing and funeral services; and

3.  first aid at the time of an accident.

## COVERAGE N -- PRODUCTS/COMPLETED WORK

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Work Hazard** to which this insurance applies. The **bodily injury** or **property damage** must be caused by an **occurrence.** This insurance applies only to **bodily injury** or **property damage** which occurs:

1.  within the **coverage territory;** and

2.  during the policy period.

## COVERAGE O -- FIRE LEGAL LIABILITY

**We** pay for **property damage** to buildings, or parts thereof, which **you** rent if the **property damage** is caused by fire for which **you** are legally liable. Buildings include fixtures permanently attached thereto.

All of the exclusions otherwise applicable to **property damage** do not apply to this coverage. However, **we** do not cover:

1.  liability arising under any contract to indemnify any person or organization for damages by fire to the premises; or

2.  liability arising out of **property damage** expected, directed or intended by an **insured.**

## COVERAGE P -- PERSONAL AND ADVERTISING INJURY LIABILITY

**We** pay all sums which an **insured** becomes legally obligated to pay as damages due to **personal injury** or **advertising injury** to which this insurance applies.

The **personal injury** or **advertising injury** must arise out of the conduct of **your** business:

1.  within the **coverage territory;** and

2.  during the policy period.

## INCIDENTAL LIABILITY COVERAGES

These coverages are subject to all the **terms** of the Principal Coverages. They do not increase the **limits** stated for the Principal Coverages.

### INCIDENTAL MEDICAL MALPRACTICE INJURY

**We** cover **bodily injury** arising out of the rendering or failure to render the following services:

1.  medical, surgical, dental, x-ray or nursing services or treatment, or the furnishing of food or beverages in connection therewith; or

2.  the furnishing or dispensing of drugs or medical, dental or surgical supplies or appliances.

This coverage does not apply to:

1.  expenses incurred by an **insured** for first aid to others at the time of an accident;

2.  an **insured** or an **employee** engaged in the business or occupation of providing any of the services described under 1. and 2. above; or

3.  injury caused by an indemnitee if such indemnitee is engaged in the business or occupation of providing any of the services described in 1. and 2. above.

Copyright MCMXC, American Association of Insurance Services

**MOBILE EQUIPMENT**

**We** pay all sums for which an **insured** is legally liable for **bodily injury** or **property damage** resulting from mobile equipment, including attached equipment and machinery.

This coverage applies only to land motor vehicles that meet one or more of the following criteria:

1. Those which are used only on premises owned by or rented to **you** (premises includes adjoining ways).

2. Those which are designed primarily for use off public roads.

3. Those which travel on crawler treads.

4. Those which are self-propelled and designed or used only to afford mobility to the following types of equipment, which must be a part of or be permanently attached to such vehicle:

    a. power cranes, shovels, loaders, diggers or drills;
    b. concrete mixers (this does not include the mix-in-transit type); and
    c. graders, scrapers, rollers and other road construction or repair equipment.

5. Those which are not self-propelled, but are used primarily to afford mobility to the following types of equipment permanently attached thereto:

    a. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment);
    b. geophysical exploration, lighting and well servicing equipment; and
    c. cherry pickers and similar devices used to raise or lower workers.

This coverage does not apply to self-propelled vehicles with the following types of permanently attached equipment:

1. equipment designed primarily for snow removal, street cleaning, road maintenance other than road construction or resurfacing;

2. cherry pickers and similar devices used to raise or lower workers;

3. air compressors, pumps and generators (this includes spraying, welding and building cleaning equipment); or

4. geophysical exploration, lighting and well servicing equipment.

**We** cover **bodily injury** or **property damage** arising out of the operation of any of the equipment listed in paragraphs 2., 3. and 4. above.

**We** will provide any liability, uninsured motorists, no fault or other coverages required by any motor vehicle insurance law. **We** will provide the required **limits** for such required coverage.

## DEFENSE COVERAGE

Payments under this coverage are in addition to the **limits** for the Commercial Liability Coverage.

**We** have the right and duty to defend a suit seeking damages for **bodily injury**, **property damage**, **personal injury** and **advertising injury** which may be covered under the Commercial Liability Coverage. **We** may make investigations and settle claims or suits **we** decide are appropriate.

Suit includes any alternative dispute resolution proceeding involving **bodily injury**, **property damage**, **personal injury** and **advertising injury** to which:

1. **you** must submit; or

2. **you** submit with **our** consent.

**We** do not have to provide defense after **we** have paid an amount equal to the **limit** as the result of:

1. a judgment; or

2. a written settlement agreed to by **us**.

If **we** defend a suit, **we** will pay:

1. The costs taxed to the **insured**.

2. The expenses incurred by **us**.

3. The actual loss of earnings by an **insured** for the time spent away from work at **our** request. **We** pay up to $100 per day.

4. The necessary expenses incurred by an **insured** at **our** request.

5. Pre-judgment interest awarded against any **insured** on that part of the judgment **we** pay. If **we** offer to pay the **limit**, **we** will not pay any pre-judgment interest based on that period of time after the offer.

6. The interest which accrues, beginning with entry of a judgment, and ending when **we** tender, deposit in court, or pay up to **our limit**.

Copyright MCMXC, American Association of Insurance Services

7. The cost of appeal bonds or bonds for the release of attachments up to **our limit. We** are not required to apply for or furnish such bonds.

8. The cost, up to $500, for bail bonds required of an **insured** because of an accident or traffic violation arising out of the use of a vehicle to which Coverage L applies. **We** are not required to apply for or furnish such bonds.

## EXCLUSIONS THAT APPLY TO ALL LIABILITY COVERAGES

**We** do not pay for a loss if one or more of the following excluded events apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded event.

1. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** which is expected by, directed by, or intended by an **insured.** This exclusion does not apply to **bodily injury** that arises out of the use of reasonable force to protect people or property.

2. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** arising out of the willful violation of an ordinance, statute or regulation by an **insured** or with the **insured's** consent.

3. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** which is assumed under a contract or an agreement. This exclusion does not apply to:

   a. an **incidental contract;** or
   b. liability for damages that an **insured** would have in the absence of the contract or agreement.

4. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the rendering or the failure to render a professional service, except as provided by the coverage under **Incidental Medical Malpractice Injury.**

5. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the use of mobile equipment in or in the practice or preparation for racing, speed, pulling or pushing, demolition or stunt activities or contests.

6. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of transporting mobile equipment by an **auto** owned by, operated by, rented to or loaned to an **insured.**

7. **We** do not pay for **bodily injury, property damage, personal injury** or **advertising injury** that arises out of the ownership, operation, maintenance, **use,** occupancy, renting, loaning, entrusting, supervision, **loading or unloading** of:

   a. an aircraft;
   b. an **auto,** except as provided under the Incidental Coverage -- Mobile Equipment. This exclusion does not apply to the parking of an **auto** on premises owned by, rented to or controlled by **you** or on the ways immediately adjoining if the **auto** is not owned by or rented to or loaned to an **insured;**
   c. a watercraft. This exclusion does not apply if the watercraft:

      1) is on shore on premises owned by, rented to or controlled by **you;** or
      2) is not owned by **you** and is less than 26 feet in length, and not being used to carry persons or property for a charge.

   d. mobile equipment, except as provided under Incidental Coverage -- Mobile Equipment.

8. **We** do not pay for:

   a. **bodily injury** to an employee of an **insured** if it occurs in the course of employment; or
   b. consequential injuries to a spouse, child, parent, brother or sister of such injured employee.

   Exclusion 8. applies where the **insured** is liable either as an employer or in any other capacity; or there is an obligation to fully or partially reimburse a third person for damages arising out of paragraph 8.a. or 8.b. above.

   Exclusion 8. does not apply to liability assumed by an **insured** under an **incidental contract.**

9. **We** do not pay for **bodily injury** or **property damage:**

   a. arising wholly or partially out of the actual, alleged or threatened discharge, dispersal, release or escape of **pollutants:**

**AP-100  Ed 1.0**

**AAIS**

Copyright MCMXC, American Association of Insurance Services

1) at or from premises **you** own, rent, use or occupy, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be;

2) at or from premises used by **you**, or for **you** or others, for the handling, storage, disposal, processing or treatment of waste;

3) occurring in the transporting, handling, treatment, storage, disposal or processing of any material, including waste, by or for **you** or by any person or organization for whom **you** may be legally liable; or

4) at or from any premises where **you** or any contractor or subcontractor, directly or indirectly under **your** control, are working or have completed work:

   a) if the **pollutant** is on the premises in connection with such work, unless the **bodily injury** or **property damages** arise from the heat, smoke or fumes of a fire which becomes uncontrollable or breaks out from where it was intended to be; or

   b) if the work in any way involves testing, monitoring, clean-up, containing, treating or removal of **pollutants.**

   b. due to any loss, cost or expense arising out of governmental action or inaction involving in any way the testing, monitoring, clean-up, containing, treating or removal of **pollutants.**

10. **We** do not pay for **bodily injury** if benefits are provided or are required to be provided by an **insured** under a workers' compensation, non-occupational disability, occupational disease or like law.

11. **We** do not pay for **bodily injury** or **property damage** that arises out of war. War includes undeclared war, civil war, insurrection, rebellion or revolution, or an act or a condition of war.

## ADDITIONAL EXCLUSIONS THAT APPLY

1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured,** except as covered under Coverage O.

2. **We** do not pay for **property damage** to premises **you** sell, give away or abandon, if the **property damage** arises out of any part of those premises. This exclusion does not apply if the premises are **your work** and were not occupied, rented or held for rental by **you.**

3. **We** do not pay for **property damage** to property used by or loaned to **you.** This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

4. **We** do not pay for **property damage** to property in the care, custody or control of an **insured.** This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

5. **We** do not pay for **property damage** to that specific part of real property on which work is being performed by:

   a. **you;** or
   b. a contractor or subcontractor working on **your** behalf, if the **property damage** arises out of such work. This exclusion does not apply with respect to liability assumed under a written sidetrack agreement.

6. **We** do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship. This exclusion does not apply to:

   a. **property damage** covered under the **Products/Completed Work Hazard;** or
   b. liability assumed under a written sidetrack agreement.

7. **We** do not pay for **property damage** to **your products** if the damage is caused by the **product** or a part of it.

8. **We** do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Products/Completed Work Hazard.** This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

9. **We** do not pay for **property damage** to property that has not been physically injured or destroyed, or to **impaired property,** that results from:

   a. a delay or failure to perform a contract by **you** or one acting on **your** behalf; or
   b. a defect, deficiency, inadequacy or unsafe condition in **your product** or **work** performed by **you** or on **your** behalf.

   This exclusion does not apply to the loss of use of property resulting from sudden and accidental injury to or destruction of **your products** or **your work** after the **products** or **work** have been put to their intended **use.**

Copyright MCMXC, American Association of Insurance Services

10. **We** do not pay for any loss or expense incurred by **you** or anyone else arising out of the loss of use, disposal, withdrawal or recall (including any expenses involved in the withdrawal or recall) of **your products, your work,** or **impaired property.** This applies when the loss of use, disposal, withdrawal or recall was because of a known or suspected defect, deficiency or unsafe condition.

## ADDITIONAL EXCLUSIONS THAT APPLY TO MEDICAL PAYMENTS

1. **We** do not pay for medical expenses for **bodily injury** to an **insured.**

2. **We** do not pay for medical expenses for **bodily injury** to:

   a. a person hired by or on behalf of any **insured** to do work for an **insured;** or
   b. a tenant of an **insured.**

3. **We** do not pay for medical expenses for **bodily injury** to a person injured on that part of the premises owned by or rented to **you** that the person normally occupies.

4. **We** do not pay for medical expenses for **bodily injury** to a person while taking part in athletic activities.

5. **We** do not pay for medical expenses for **bodily injury** included in the **Products/Completed Work Hazard.**

6. **We** do not pay for medical expenses for **bodily injury** to a person if benefits are provided or required to be provided under any workers' compensation, nonoccupational disability, occupational disease or like law.

## ADDITIONAL EXCLUSIONS THAT APPLY TO PERSONAL AND ADVERTISING INJURY LIABILITY

1. **We** do not pay for **personal** or **advertising injury** arising out of oral or written publication of material:

   a. if done by or at the direction of an **insured** who knew it was false; or
   b. whose first publication was prior to the policy period.

2. **We** do not pay for **personal** or **advertising injury** arising out of the willful violation of an ordinance statute or regulation by an **insured** or with the **insured's** consent.

3. **We** do not pay for **personal** or **advertising injury** which is assumed under a contract or an agreement. This exclusion does not apply to liability for damages that the **insured** would have in the absence of the contract or agreement.

4. **We** do not pay for **advertising injury** arising out of breach of contract, other than misappropriation of advertising ideas under an implied contract.

5. **We** do not pay for **advertising injury** arising out of the failure of goods, products or services to conform with advertised quality or performance.

6. **We** do not pay for **advertising injury** arising out of the wrong description of the price of goods, products or services.

7. **We** do not pay for **advertising injury** arising from an offense committed by an **insured** whose business is advertising, broadcasting, publishing or telecasting.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice -**

   a. In the case of an **occurrence,** or if an **insured** becomes aware of anything that indicates that there might be a claim under the Commercial Liability Coverage, the **insured** must promptly give notice to **us** or **our** agent.

   b. The notice to **us** must state:

      1) the **insured's** name;
      2) the policy number;
      3) the time, the place and the circumstances of the **occurrence;** and
      4) the names and addresses of all known potential claimants and witnesses.

2. **Volunteer Payments --** An **insured** must not make payments or assume obligations or other costs except at the **insured's** own cost. This does not apply to first aid to others at the time of **bodily injury.**

3. **Other Duties -**

   a. If a claim is made or suit is brought, the **insured** must:

      1) promptly send to **us** copies of all legal papers, demands and notices; and

**AP-100  Ed 1.0** -- 9 -- **AAIS**

Copyright MCMXC, American Association of Insurance Services

2) at **our** request, assist in:

   a) a settlement;
   b) the conduct of suits. This includes the attendance at trials or hearings;
   c) the enforcing of rights against all parties who may be liable to an **insured** for the injury or damage;
   d) the securing of and giving of evidence; and
   e) obtaining the attendance of all witnesses.

b. In the case of a medical payments loss:

   1) the injured person (or one acting on such person's behalf) must:

      a) give **us** written proof of claim (under oath if requested) as soon as practicable; and
      b) give **us** permission to get copies of the medical records.

   2) the injured person must submit to medical exams by doctors chosen by **us** when and as often as **we** may reasonably require.

## HOW MUCH WE PAY

1. The **limits** shown on the Declarations and subject to the following conditions, are the most **we** pay regardless of the number of:

   a. **insureds** under the Commercial Liability Coverage;
   b. persons or organizations who sustain injury or damage; or
   c. claims made or suits brought.

   The payment of a claim under Coverage M does not mean that **we** admit **we** are liable under other coverages.

2. The General Aggregate **Limit** is the most **we** will pay during a policy period for the sum of:

   a. all damages under Coverage L and Coverage P, except damages due to injury or damage included in the **Products/Completed Work Hazard;** and
   b. all medical expenses under Coverage M.

3. The Aggregate **Limit** shown for **Products/Completed Work Hazard** is the most **we** will pay during a policy period under Coverage N for damages due to injury or damage included under the **Products/Completed Work Hazard.**

4. The Each **Occurrence Limit,** subject to the General Aggregate **Limit** and the **Products/Completed Work Hazard Limit,** is the most **we** will pay for the total of:

   a. damages under Coverage L and N; and
   b. medical expenses under Coverage M;

   due to all **bodily injury** and **property damage** arising out of a single **occurrence.**

5. Subject to the Each **Occurrence Limit** and the General Aggregate **Limit, our limit** for **property damage** covered under Fire Legal Liability is $50,000 for each **occurrence** unless otherwise shown on the Declarations.

6. Subject to the General Aggregate and Each **Occurrence Limits,** the Medical Payment **Limit** is the most that **we** will pay under Coverage M for all medical expenses because of **bodily injury** sustained by any one person.

7. Subject to the General Aggregate **Limit,** the Each **Occurrence Limit** that applies to Coverage P is the most **we** will pay as damages for all **personal** and **advertising injury** arising out of a single **occurrence.**

The General Aggregate **Limit** and Aggregate **Limit** shown for **Products/Completed Work Hazard** apply separately to each consecutive 12-month period beginning with the inception date of the Commercial Liability Coverage shown on the Declarations. They also apply separately to any remaining policy period of less than 12 months, unless the Commercial Liability Coverage has been extended after it was written. In that case, the additional period will be considered part of the last preceding period for the purpose of determining **limits.**

Copyright MCMXC, American Association of Insurance Services

## CONDITIONS

1. **Bankruptcy --** Bankruptcy or insolvency of an **insured** does not relieve **us** of **our** obligations for Commercial Liability Coverage.

2. **Suit Against Us --** No suit may be brought against **us** unless:

   a. all the **terms** of the Commercial Liability Coverage have been complied with; and
   b. the amount of the **insured's** liability has been determined by:

      1) a final judgment against an **insured** as a result of a trial; or
      2) a written agreement by the **insured,** the claimant and **us.**

   No person has a right under the Commercial Liability Coverage to join **us** or implead **us** in actions that are brought to determine an **insured's** liability.

3. **Commercial Liability Coverage Premium --** If the premium is shown on the Declarations as a deposit premium, **we** will compute the final earned premium at the end of each audit period shown on the Declarations. If it is more than the deposit premium paid by **you, we** will bill **you** for the difference. If the final earned premium is less than the deposit premium paid by **you, we** will return the difference to **you.** You must maintain records of the information that is necessary for computing the premium. Copies of the records must be sent to **us** at the end of the audit period or when requested by **us.**

4. **Insurance Under More Than One Policy --** (Applies to all coverages except Coverage M -- Medical Payments.)

   a. Insurance under this Commercial Liability Coverage is primary except as provided under paragraph 4.c. below, or unless otherwise stated. The amount of **our** liability is not reduced because of other insurance which applies to the loss on other than a primary basis.
   b. If the other insurance is also primary, **we** will share in the loss as follows:

      1) If the other insurance provides for contribution by equal shares, **we** will pay equal amounts with other insurers until:

         a) the closest applicable **limit** under any one policy is reached; or

         b) the full amount of the loss is paid. If part of the loss remains unpaid, **we** will pay an equal share with the other insurers until the full amount of the loss is paid, or until **we** have paid **our limit** in full.

      2) If the other insurance does not provide for contribution by equal shares, **we** will pay no more than that proportion of the loss to which the applicable **limit** under this policy for such loss bears to the total applicable **limit** for all insurance against the loss.

   c. Insurance under the Commercial Liability Coverage is excess over any other insurance:

      1) if the other insurance, whether primary, excess, contingent or on any other basis, provides:

         a) fire, extended coverage, builders' risk, installation risk or similar coverage for **your work;** or

         b) fire insurance for premises rented to **you;** or

      2) if the other insurance applies to any loss arising out of the maintenance or use of aircraft, **autos** or watercraft which may be covered by this policy.

   d. When this insurance is excess over any other insurance:

      1) **we** will have no duty under Coverage L to defend any claim or suit that any other insurer has a duty to defend. If no other insurer defends, **we** will do so. However, **we** will be entitled to the **insured's** rights against all those other insurers.
      2) **we** will pay **our** share of the amount of loss, if any, that exceeds the sum of:

         a) the total amount that all such other insurance would pay for the loss in the absence of this insurance; and

         b) the total of all deductibles and self-insured amounts required by such other insurance.

         **We** will share the remaining loss with any other insurance that is not described in this excess insurance provision and was not brought specifically to apply in excess of the **limits** of insurance shown on the Declarations page of this Commercial Liability Coverage.

Copyright MCMXC, American Association of Insurance Services

5. **Separate Insureds --** Coverage provided under the Commercial Liability Coverage applies separately to each **insured** against whom claim is made or suit is brought. This does not affect the **limits** stated under How Much **We** Pay.

6. **Motor Vehicle Financial Responsibility Certification --** When Commercial Liability Coverage is certified as proof of financial responsibility for the future under the provisions of any motor vehicle financial responsibility law, the insurance provided for **bodily injury** liability or **property damage** liability will comply with the provisions of the law to the extent of the coverage and **limits** of insurance required by that law.

## NUCLEAR ENERGY LIABILITY EXCLUSION

This insurance does not apply:

1. under any liability coverage, to **bodily injury** or **property damage:**

   a. with respect to which an **insured** under the policy is also an **insured** under a Nuclear Energy Liability policy issued by Nuclear Energy Liability Insurance Association, Mutual Insurance Association, Mutual Atomic Energy Liability Underwriters, Nuclear Insurance Association of Canada or any of their successors, or would be an **insured** under any such policy but for its termination upon exhaustion of its **limit** of liability; or

   b. resulting from the **hazardous properties** of **nuclear material** and with respect to which:

      1) any person or organization is required to maintain financial protection pursuant to the Atomic Energy Act of 1954, or any law amendatory thereto; or

      2) the **insured** is, or had this policy not been issued would be, entitled to indemnity from the United States of America or any agency thereof, under any agreement entered into by the United States of America or any agency thereof, with any person or organization.

2. under any Medical Payments coverage, to expenses incurred with respect to **bodily injury** resulting from the **hazardous properties** of **nuclear material** and arising out of the operation of a **nuclear facility** by any person or organization.

3. under any liability coverage, to **bodily injury** or **property damage**, resulting from the **hazardous properties** of **nuclear material**, if:

   a. the **nuclear material:**

      1) is at any **nuclear facility** owned by, or operated by or on behalf of, an **insured;** or

      2) has been discharged or dispersed therefrom;

   b. the **nuclear material** is contained in **spent fuel** or **waste** at any time possessed, handled, used, stored, processed, transported or disposed of by or on behalf of an **insured;** or

   c. the **bodily injury** or **property damage** arises out of the furnishing by an **insured** of services, materials, parts or equipment in connection with the planning, construction, maintenance, operation or use of any **nuclear facility**, but if such facility is located within the United States of America, its territories or possessions or Canada, this exclusion (c.) applies only to **property damage** to such **nuclear facility** and property thereat.

## DEFINITIONS

The following definitions apply to the Nuclear Energy Liability Exclusion:

1. **Hazardous Properties --** These include radioactive, toxic or explosive properties.

2. **Nuclear Material --** This means **source material, special nuclear material** or **by-product material.**

3. **Source Material, Special Nuclear Material, By-product Material --** These have the meanings given them in the Atomic Energy Act of 1954, or in any law amendatory thereof.

4. **Spent Fuel --** This means any fuel element or fuel component solid or liquid, which has been used or exposed to radiation in a **nuclear reactor.**

5. **Waste --** This means any **waste** material:

   a. containing **by-product material** other than the tailings or **wastes** produced by the extraction or concentration of uranium or thorium from any ore processed primarily for its **source material** content; and

   b. resulting from the operation by any person or organization of any **nuclear facility** included under the first two paragraphs of the definition of **nuclear facility.**

**AP-100   Ed 1.0**                     -- 12 --                                          **AAIS**

Copyright MCMXC, American Association of Insurance Services

6. **Nuclear Facility --** This means:

   a. any **nuclear reactor.**

   b. any equipment or device designed or used for:

     1) separating the isotopes of uranium or plutonium;

     2) processing or utilizing **spent fuel;** or

     3) handling, processing or packaging **waste.**

   c. any equipment or device used for the processing, fabricating or alloying of **special nuclear material** if at any time the total amount of such material in the custody of the **insured** at the premises where such equipment or device is located consists of or contains more than 25 grams of plutonium or uranium-233 or any combination thereof, or more than 250 grams of uranium-235.

   d. any structure, basin, excavation, premises or place prepared or used for the storage or disposal of **waste,** and includes the site on which any of the foregoing is located, all operations conducted on such sites, and all premises used for such operations.

7. **Nuclear Reactor --** This means any apparatus designed or used:

   a. to sustain nuclear fission in a self-supporting chain reaction; or

   b. to contain a critical mass of fissionable material.

8. **Property Damage --** This includes all forms of radioactive contamination of property.

# COMMERCIAL PROPERTY COVERAGES

## ADDITIONAL DEFINITIONS

1. **Falling Objects --** This means **falling objects** but does not include loss or damage to personal property in the open or to the interior of buildings or personal property inside buildings unless the exterior of the roof or walls are first damaged by a **falling object.**

2. **Sinkhole Collapse --** This means the sudden settlement or collapse of earth supporting the covered property into subterranean voids created by the action of water on a limestone or similar rock formation. It does not include the value of the land or the cost of filling sinkholes.

3. **Specified Perils --** This means aircraft; civil commotion; explosion; **falling objects;** fire; hail; leakage from fire extinguishing equipment; lightning; riot; **sinkhole collapse;** smoke; sonic boom; vandalism; vehicles; **volcanic action; water damage;** weight of ice, snow, or sleet; and windstorm.

4. **Valuable Papers and Records --** This means abstracts, account books, bills, blue prints, card index systems, data processing media and programs, deeds, designs, drawings, evidences of debt, manuscripts, plans, specifications and other records.

5. **Volcanic Action --** This means airborne volcanic blast or airborne shock waves; ash, dust or particulate matter; or lava flow. It does not include the cost to remove ash, dust or particulate matter that does not cause direct physical loss to the covered property.

6. **Water Damage --** This means the accidental discharge or leakage of water or steam as a direct result of breaking or cracking of a part of the system or appliance containing the water or steam.

## PRINCIPAL COVERAGES

**We** provide insurance for the following coverages for which a specific **limit** or premium charge is shown on the Declarations. **We** insure against loss caused by the perils insured against, subject to all the policy **terms.**

### COVERAGE A -- BUILDINGS

**We** cover the building and structures described on the Declarations. This includes the following property located on the **described premises:**

1. additions;

2. fixtures, machinery and equipment which are a permanent part of the buildings and are used to provide building services;

3. outdoor fixtures;

4. personal property used for maintenance or service of the **described premises**, including air-conditioning equipment; fire extinguishing apparatus; floor coverings; and appliances for refrigerating, cooking, dish washing and laundering;

5. material, equipment and supplies intended for use in construction, alteration or repair of the buildings; and

6. buildings that are auxiliary to the buildings described on the Declarations.

## COVERAGE B -- BUSINESS PERSONAL PROPERTY

**We** cover **your** business personal property in the described buildings or in the open (or in vehicles) on or within 100 feet of the **described premises**. This includes:

1. **your** interest in personal property of others to the extent of **your** labor, material and services; and

2. **your** use interest in improvements to the described buildings. Improvement means fixtures, alterations, installations or additions to a building **you** do not own. These improvements must have been made or acquired at **your** expense, other than rent, and not be legally subject to removal by **you**.

## COVERAGE C -- LOSS OF INCOME

**We** provide the Earnings and Extra Expense Coverages shown below when **your** business is necessarily interrupted by loss or damage to real or personal property caused by a peril insured against during the policy period.

**We** will pay only the loss of earnings and extra expenses incurred within 12 consecutive months after the loss or damage to property. **We** will not pay more for loss of earnings and extra expense combined than the **limit** shown on the Declarations.

1. **Earnings**

   **We** cover **your** actual loss of net income, payroll expense, taxes, interest, rents, and other operating expenses normally earned by **your** business. Net income means profit or loss before income tax.

   **We** cover only such expenses as are necessary during this interruption of business. Consideration will be given to continuation of payroll and other expenses

to the extent necessary to resume **your** business with the same quality of service that existed before the loss.

**We** cover **your** loss for the time it should reasonably take to resume **your** business, but no longer than the time it should reasonably take to rebuild, repair or replace the covered property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

**You** must do all **you** can to reduce the loss. **We** do not cover any increase in loss due to **your** failure to use reasonable efforts to resume complete or partial business. This includes making use of other location and property to reduce the loss.

**We** will cover expenses in excess of normal that **you** necessarily incur to reduce the loss, but only to the extent that they reduce the loss under this coverage.

In determining a loss, **we** will consider the experience of **your** business before the loss and the probable experience, had no loss occurred.

2. **Extra Expenses**

   **We** cover the necessary extra expenses that **you** incur in order to continue as nearly as practical **your** normal business following damage by a peril insured against.

   **We** cover **your** extra expenses for the time it should reasonably take to resume **your** normal business, but no longer than the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage. The loss is not limited by the expiration date of the policy.

   **You** do all **you** can to resume **your** business and to reduce the loss. **We** do not cover any increase in loss due to your failure to use reasonable efforts to resume complete or partial business. This includes making use of other locations and property to reduce the loss.

   The salvage value of any property bought for temporary use shall be deducted from the extra expenses.

## COLLAPSE COVERAGE

**We** pay for loss or damage caused by or resulting from direct physical loss involving collapse of a building or any part of a building caused only by one or more of the following:

Copyright MCMXC, American Association of Insurance Services

1. **specified perils**;

2. hidden decay;

3. hidden insect or vermin damage;

4. weight of people or business personal property;

5. weight of rain that collects on a roof; or

6. the use of defective material or methods in construction, remodeling or renovation if the collapse occurs during the course of the construction, remodeling or renovation.

**We** will not pay for loss or damage to the following types of property, if otherwise covered in this Collapse Coverage part, under the above items 2. through 6. inclusive unless the loss or damage is a direct result of the collapse of a building:

outdoor radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring; outdoor awnings or canopies of fabric or slat construction or their supports; fences, outdoor signs; gutters and downspouts; yard fixtures; outdoor swimming pools; piers, wharves and docks; beach or diving platforms or appurtenances; retaining walls; foundations; walks, roadways and other paved surfaces.

Collapse does not include settling, cracking, shrinking, bulging or expanding.

This does not increase the **limit** of insurance.

## INCIDENTAL PROPERTY COVERAGES

**We** provide the following extensions of **your** Commercial Property Coverages.

Unless otherwise stated each incidental coverage:

a. applies for loss caused by a peril insured against;
b. applies only at the **described premises**; and
c. is an additional amount of insurance.

1. The following extensions of coverage apply to either Coverage A or Coverage B.

   a. **Antennas, Awnings, Canopies, Fences and Signs -- You** may apply an amount up to $1,000 to cover **your** outdoor:

      1) radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;

      2) awnings or canopies of fabric or slat construction or their supports;
      3) fences; or
      4) signs.

   b. **Debris Removal -- We** cover the cost to remove the debris of covered property that is caused by a peril insured against. This coverage does not include costs to:

      1) extract **pollutants** from land or water; or
      2) remove, restore or replace polluted land or water.

      **We** will not pay any more under this debris removal coverage than 25 percent of the amount **we** pay for the direct loss or damage. **We** will not pay more for loss to property and debris removal combined than the **limit** of insurance for the property.

      However, **we** will pay an additional amount of debris removal expense up to $5,000 when the debris removal expenses exceeds 25 percent of the amount **we** pay for direct loss or damage or when the loss to property and debris removal combined exceeds the **limit** of insurance for the property.

      **We** will not pay any expenses unless they are reported to **us** within 180 days of the direct physical loss or damage to covered property.

   c. **Fire Department Service Charges -- You** may apply an amount up to $1,000 to cover **your** liability, assumed by contract or agreement prior to the loss, for fire department service charges.

      This coverage is limited to charges incurred when the fire department is called to save or protect covered property from a peril insured against.

   d. **Removal -- We** cover loss to covered property while removed or being removed from the insured location for preservation from damage caused by a peril insured against. This coverage applies for up to 10 days, but does not extend past the expiration of the policy.

   e. **Repairs -- We** cover the cost of repairs that are reasonable and necessary to protect covered property from further damage after damage resulting from a peril insured against. **We** will not pay more for loss to property and repairs combined than the **limit** of insurance for the property.

Copyright MCMXC, American Association of Insurance Services

2. The following extensions of coverage applies only to Coverage A.

   a. **Newly Acquired Buildings -- You** may apply an amount up to 25 percent of the **limit** of insurance, but not exceeding $100,000, to cover **your** buildings or structures being built or that **you** acquire. This coverage is for up to 30 days after construction is started or **you** acquire the building, but not beyond the expiration of the policy. **We** only cover loss at such locations within the **basic territory**. Additional premium will be charged from the date construction is started or the date **you** acquire the building.

   b. **Trees, Shrubs and Plants -- You** may apply an amount up to $1,000 to cover outdoor trees, shrubs and plants. **We** only cover loss caused by aircraft, civil commotion, explosion, fire, lightning or riot. This coverage is limited to $250 on any one tree, shrub or plant, including debris removal.

3. The following extensions of coverage apply only to Coverage B:

   a. **Personal Property -- Acquired Locations -- You** may apply an amount up to 10 percent of the **limit** of insurance, but not exceeding $20,000, to property covered at locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   b. **Personal Property -- Off Premises -- You** may apply an amount up to $2,500, unless otherwise shown on the Declarations, to covered property while temporarily at locations within the **basic territory** that **you** do not own, control, rent or lease. Coverage applies while the property is in transit or at a job site.

   Covered property includes:

   1) portable tools and equipment, including spare parts and accessories; and/or
   2) materials, supplies, machinery and fixtures that are owned by **you**, or for which **you** are legally liable.

   c. **Personal Property of Others -- You** may apply an amount up to $2,500 to cover personal property of others in **your** care. This coverage is only for the benefit of the owners of the personal property.

   d. **Valuable Papers and Records -- You** may apply an amount up to $1,000 to cover the cost of research or other expenses necessary to reproduce, replace or restore **your** valuable papers and records.

4. The following extensions of coverage apply only to Coverage C:

   a. **Alterations and New Buildings -- We** extend **your** coverage to include loss caused by damage to additions, alterations and new buildings under construction at the **described premises** by a peril insured against. **We** cover **your** loss for the delay in using such additions, alterations and new buildings starting from the time business would have begun had no damage occurred. This does not increase the **limit** of insurance.

   b. **Interruption by Civil Authority -- We** extend **your** coverage to include loss while access to **your** premises is specifically denied by an order of a civil authority. This order must be a result of damage to property in the immediate vicinity and caused by a peril insured against. This extension is limited to two consecutive weeks. This does not increase the **limit** of insurance.

   c. **Newly Acquired Locations -- We** extend **your** coverage for an amount up to $100,000, to include loss caused by damage to locations that **you** acquire, other than at fairs or exhibitions. This coverage applies for up to 30 days after **you** acquire this location, but not beyond the expiration of the policy.

   **We** only cover loss at such locations within the **basic territory** and caused by a peril insured against. Additional premium will be charged from the date **you** acquire the locations. This is an additional amount of insurance.

   d. **Period of Loss Extension -- We** extend **your** coverage to cover loss for the time from the date the property that incurred the loss or damage is rebuilt, repaired or replaced, until the date **you** could reasonably resume **your** normal business, or the end of 30 consecutive days, whichever is earlier. This does not increase the **limit** of insurance.

## PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS

1. The following exclusions are applicable to Coverage A -- Buildings and Coverage B -- Business Personal Property. Limited coverage of some of these types of property is included in the Incidental Property Coverages.

   a. **Animals -- We** do not cover animals, including birds and fish.

   b. **Antennas, Awnings, Canopies, Fences and Signs -- We** do not cover outdoor:

**AP-100  Ed 1.0**                    **-- 16 --**                    **AAIS**

Copyright MCMXC, American Association of Insurance Services

1) radio, television, satellite, dish-type or other antennas and their masts, towers and lead-in wiring;
2) awnings or canopies of fabric or slat construction or their supports;
3) fences; or
4) signs.

c. **Boilers -- We** do not cover loss to hot water boilers or heaters, steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment, including bursting, cracking, exploding or rupturing. This exclusion does not apply to loss or damage caused by explosion of gas or fuel in the fire box, combustion chamber or flues; or loss or damage to hot water boilers or heaters caused by internal explosion.

d. **Contraband -- We** do not cover contraband or property in the course of illegal transportation or trade.

e. **Foundations, Retaining Walls, Piling, Piers, Wharves or Docks -- We** do not cover foundations which are below the lowest basement floor or below ground level if there is no basement; retaining walls that are not part of buildings; or pilings, piers, wharves or docks.

f. **Glass Breakage -- We** do not cover building glass breakage loss for more than $100 for any plate, pane, multiple plate insulating unit, heating pane, jalousie, louver or shutter, or more than $500 in any one occurrence. These **limits** do not apply to loss by **specified perils** other than vandalism.

g. **Land, Cost of Excavation, Grading or Filling, Paved Surfaces or Underground Pipes, Flues or Drains -- We** do not cover:

1) land, including land on which the property is located;
2) cost of excavations, grading or filling;
3) paved outdoor surfaces, including driveways, parking lots, roads and walks; or
4) underground pipes, flues and drains.

h. **Money, Securities or Lottery Tickets -- We** do not cover money, securities or lottery tickets.

i. **Personal Property of Others -- We** do not cover personal property owned by others.

j. **Property More Specifically Insured -- We** do not cover property which is more specifically insured in whole or in part by any other insurance. **We** do cover the amount in excess of the amount due from the more specific insurance.

k. **Trees, Shrubs and Plants -- We** do not cover trees, shrubs and plants, including lawns and growing crops.

l. **Valuable Papers and Records -- We** do not cover loss to valuable papers or records unless the loss is caused by a **specified peril**.

m. **Vehicles, Aircraft and Watercraft -- We** do not cover vehicles designed for use on public roads; aircraft; or watercraft, including motors, equipment and accessories while afloat.

n. **Water -- We** do not cover underground or surface water.

2. The following exclusions are applicable only to Coverage C -- Loss of Income.

a. **Delayed Rebuilding, Repairing or Replacement -- We** do not cover any loss beyond the time it should reasonably take to rebuild, repair or replace the property that has incurred the loss or damage.

b. **Electronic Equipment -- We** do not cover earnings loss caused by loss or damage to media, programs or records for electronic data processing or electronically controlled equipment beyond 60 consecutive days, or the time necessary to rebuild, repair or replace other damaged property, whichever is greater.

c. **Environmental Damage -- We** do not cover any increase in loss caused by any law, regulation or decree that regulates the prevention, control, repair, decontamination, clean-up or restoration of environmental damage.

d. **Fire Extinguishment -- We** do not cover expenses to put out a fire.

e. **Leases, Licenses, Contracts or Orders -- We** do not cover any increase in loss due to the suspension, lapse or cancellation of leases, licenses, contracts or orders.

**We** do cover such loss resulting directly from the interruption of **your** business, but not beyond the time the business could have been resumed.

f. **Property Damage -- We** do not cover the normal cost of repair, replacement or restoration of property.

g. **Records -- We** do not cover the cost of research or other extra expense necessary to replace records, including electronic data processing or electronically controlled equipment programs, data or media.

h. **Strikes, Protests and Other Interference -- We** do not cover any increases in loss due to interference by strikers or other persons at the described premises. This applies to interference with rebuilding, repairing or replacing property or with the resumption of **your** business.

**AP-100  Ed 1.0**                           **-- 17 --**                                          **AAIS**

Copyright MCMXC, American Association of Insurance Services

## PERILS INSURED AGAINST -- COVERAGES A AND B

**Coverage A -- Buildings and Coverage B -- Business Personal Property -- We** insure against risks of direct physical loss unless specifically excluded.

**The following exclusions apply to Coverages A and B:**

1. We do not pay for loss if one or more of the following exclusions apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded causes or events.

   a. **Civil Authority -- We** do not cover loss caused by order of any civil authority, including seizure, confiscation or destruction of property.

      **We** will cover loss resulting from acts of destruction by the civil authority to prevent the spread of fire, unless the fire is caused by a peril excluded under this policy.

   b. **Collapse -- We** do not cover loss or damage caused by or resulting from collapse. This exclusion does not apply to loss or damage caused by or resulting from collapse described in the Collapse Coverage section of the Commercial Property Coverages.

   c. **Defects, Errors and Omissions -- We** do not cover loss which results from one or more of the following;

      1) an act, error or omission (negligent or not) relating to:

         a) land use;
         b the design, specification, construction, workmanship, installation or maintenance of property;
         c) planning, zoning, development, siting, surveying, grading or compaction; or
         d) maintenance of property (including land, structures or improvements);

         whether on or off the premises;

      2) a defect, a weakness, the inadequacy, a fault or unsoundness in materials used in construction or repair, whether on or off the premises;
      3) the cost to make good an error in design; or
      4) a data processing error or omission in programming or giving improper instructions.

      In addition, **we** do not cover loss to Business Personal Property caused by deficiency or

defects in design, specification materials or workmanship, or caused by or resulting from latent or inherent defects.

   **We** will cover any resulting loss caused by a peril insured against unless the resulting loss itself is excluded.

   d. **Earth Movement or Volcanic Eruption -- We** do not cover loss caused by any earth movement (other than **sinkhole collapse**) or caused by eruption, explosion or effusion of a volcano. Earth movement includes, but is not limited to, earthquake; landslide; mudflow; mudslide; or sinking, rising or shifting of earth.

      **We** will cover direct loss by fire, explosion or **volcanic action** resulting from either earth movement or eruption, explosion or effusion of a volcano.

      All volcanic eruptions that occur within a 72-hour period shall be considered a single loss.

   e. **Nuclear Hazard -- We** do not cover loss caused by or resulting from a nuclear reaction, nuclear radiation or radioactive contamination (whether controlled or uncontrolled; whether caused by, contributed to or aggravated by a peril insured against and whether caused by natural, accidental or artificial means). Loss caused by nuclear hazard is not considered loss caused by fire, explosion or smoke. Direct loss by fire resulting from the nuclear hazard is covered.

   f. **Ordinance or Law -- We** do not cover loss or increased cost caused by the enforcement of an ordinance, law or decree that regulates the construction, use, repair or demolition of covered property.

   g. **Utility Failure -- We** do not cover loss caused by interruption of power or other utility services resulting from any cause if the interruption takes place away from the **described premises**. Interruption includes reduced voltage, low pressure or other interruptions of normal services.

      **We** will cover the direct loss by a peril insured against which occurs on the described premises as a result of any power interruption.

   h. **War -- We** do not cover loss caused by war. This means:

      1) declared war, undeclared war, civil war, insurrection, rebellion or revolution;
      2) a warlike act by a military force or by military personnel;

Copyright MCMXC, American Association of Insurance Services

3) the destruction, seizure or use of the property for a military purpose; or
4) the discharge of a nuclear weapon, even if it is accidental.

i. **Water -- We** do not cover loss caused by water. This means:

1) flood, surface water, waves, tidal water or the overflow of a body of water. This includes spray that results from these whether driven by wind or not;
2) water that backs up through a sewer or drain; and
3) water below the surface of the ground. This includes water that exerts pressure on or flows, seeps or leaks through or into a building, sidewalk, driveway, foundation, swimming pool or other structure.

If a fire, theft or explosion results, **we** do cover the loss caused by the fire, theft, or explosion, except for boiler explosion.

j. **Weather -- We** do not cover loss to personal property in the open caused by rain, snow, ice or sleet. **We** do not cover loss to the interior of buildings caused by rain, snow, sand or dust, unless entering through openings made by a **specified peril**.

2. **We** do not pay for loss or damage if one or more of the following exclusions apply to the loss.

a. **Animals -- We** do not cover loss caused by or resulting from animals, including birds, insects or vermin. **We** will cover any resulting loss caused by a **specified peril**.

b. **Criminal, Fraudulent or Dishonest Act -- We** do not cover loss caused by or resulting from criminal, fraudulent, dishonest or illegal act, alone or in collusion with another, by:

1) **you**;
2) others who have an interest in the property;
3) others to whom **you** entrust the property;
4) **your** partners, officers, directors, trustees, joint adventurers; or
5) the employees or agents of 1), 2), 3) or 4) above, whether or not they are at work.

c. **Deterioration -- We** do not cover loss caused by or resulting from deterioration including corrosion, decay, fungus, mildew, mold, rot or rust. **We** will cover any resulting loss caused by a **specified peril**.

d. **Disappearance -- We** do not cover unexplained or mysterious disappearance, or shortage discovered on taking inventory.

e. **Electrical Currents -- We** do not cover loss caused by or resulting from arcing or by electrical currents other than lightning. If a fire results, **we** will cover only the damage caused by fire.

f. **Explosion -- We** do not cover loss caused by or resulting from explosion of hot water boilers or heaters, steam boilers, steam turbines or steam engines that **you** own or lease or that are under **your** control. This exclusion does not apply to loss or damage caused by the explosion of gas or fuel in the firebox, combustion chamber or flues; or loss or damage to hot water boilers or heaters caused by internal explosion. If a fire results from this explosion, **we** do cover the loss caused by the fire.

g. **Freezing -- We** do not cover water damage caused by or resulting from freezing of plumbing, heating, airconditioning systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain heat in the building or to turn off the water and drain the equipment, if heat is not maintained.

**We** do not cover water damage caused by or resulting from freezing of fire protection systems or appliances during vacancy or unoccupancy. This exclusion does not apply during permitted vacancy or unoccupancy if **you** used reasonable care to maintain conditions necessary for the proper operation of the fire protection equipment.

h. **Increased Hazard -- We** do not cover loss occurring while the hazard has been materially increased by any means within **your** knowledge or control.

i. **Neglect -- We** do not cover loss caused by or resulting from **your** neglect to use all reasonable means to save covered property at and after the time of loss.

**We** do not cover loss or damage caused by or resulting from **your** neglect to use all reasonable means to save and preserve covered property when endangered by a peril insured against.

Copyright MCMXC, American Association of Insurance Services

j. **Pollutants -- We** do not cover loss caused by or resulting from release, discharge or dispersal of pollutants unless the release, discharge or dispersal is caused by a **specified peril. We** will cover any resulting loss caused by a **specified peril.**

k. **Protective Safeguards -- We** do not cover losses occurring while protective safeguards that **you** control are not in working condition. This exclusion applies only to protective safeguards shown on the Declarations and to the property, premises and perils affected. This lasts until the safeguards are back in order.

l. **Seepage -- We** do not cover loss caused by or resulting from continuous or repeated seepage or leakage from within a plumbing, heating or air-conditioning system or domestic appliance.

m. **Settling, Cracking, Shrinking, Bulging or Expanding -- We** do not cover loss caused by or resulting from settling, cracking, shrinking, bulging or expanding of pavements, footings, foundations, walls, ceilings or roofs. **We** will cover any resulting loss caused by a **specified peril.**

n. **Smog, Smoke, Vapor or Gas -- We** do not cover loss caused by or resulting from smog, smoke, vapor or gas from agricultural or industrial operations.

o. **Temperature/Humidity -- We** do not cover loss to personal property caused by or resulting from dampness, or changes in or extremes of temperature. **We** will cover any resulting loss caused by a **specified peril.**

p. **Theft of Property From Unattended Vehicles We** do not cover theft of property from unat-tended vehicles unless the loss results from forced entry of a securely locked compartment. There must be visible evidence of forcible entry.

q. **Vacancy/Unoccupancy -- We** do not cover loss occurring while the building has been vacant beyond 60 consecutive days.

**We** do not cover loss occurring while the building has been unoccupied for more than 60 consecutive days or for more than the usual or incidental unoccupancy period for the described premises, whichever is longer.

Unoccupied means that the customary activities or operations of the described occupancy are suspended, but personal property has not been removed. The building shall be considered vacant and not unoccupied when the occupants have moved leaving the building empty except for limited personal property.

r. **Voluntary Parting -- We** do not cover loss caused by or resulting from voluntary parting with title or possession of any property because of any fraudulent scheme, trick or false pretense.

s. **Wear/Breakdown -- We** do not cover loss caused by or resulting from wear and tear, mechanical breakdown, centrifugal force, marring or scratching. **We** will cover any resulting loss caused by a **specified peril.**

t. **Weight of a Load -- We** do not cover loss caused by or resulting from the weight of a load when it exceeds the designed capacity of a machine to lift, move or support the load from any position.

u. **Work or Operations -- We** do not cover loss to property caused by or resulting from actual work or operations. This includes altering, constructing, installing, manufacturing, processing, servicing or testing. **We** will cover any resulting loss caused by a **specified peril.**

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Notice --** In case of a loss, the **insured** must:

   a. give **us** or **our** agent prompt notice **(We** may request written notice.);
   b. give notice to the police when the act that causes the loss is a crime; and
   c. give notice to the credit card company if the loss involves a credit card.

2. **Protect Property -- You** must take all reasonable steps to protect covered property at and after an **insured** loss to avoid further loss. **We** pay for the costs. The **insured** must keep an accurate record of such costs. This does not increase **our limit.**

3. **Volunteer Payments -- You** must not, except at **your** own expense, voluntarily make any payments, assume any obligations, pay or offer any rewards, or incur any other expenses except as respects protecting property from further damage.

4. **Proof of Loss -- You** must send **us** a statement of loss (under oath, if requested) within 60 days after the loss. This must include the following information:

   a. the time, place and circumstances of the loss;
   b. other policies of insurance that may cover the loss;
   c. **your** interest and the interests of all others in the property involved, including all mortgages and liens;

Copyright MCMXC, American Association of Insurance Services

d. changes in title or occupancy of the covered property during the policy period;

e. detailed estimates for repair or replacement of covered property;

f. available plans and specifications of buildings or structures;

g. detailed estimates of any covered loss of income and expenses; and

h. an inventory of damaged and undamaged covered personal property showing in detail the quantity, description, cost, actual cash value and amount of the loss. **You** must attach to the inventory copies of all bills, receipts and related documents that substantiate the inventory. An inventory of undamaged personal property is not required if the total claim for a loss is less than $10,000 and less than five percent of the total **limit** of insurance.

5. **Examination --** Any **insured** must submit to examination under oath in matters connected with the loss as often as **we** reasonably request and give **us** sworn statements of the answers. If more than one person is examined, **we** have the right to examine and receive statements separately and not in the presence of the others.

6. **Records -- You** must produce records, including tax returns and bank microfilms of all cancelled checks, relating to value, loss and expense and permit copies and extracts to be made of them as often as **we** reasonably request.

7. **Damaged Property -- You** must exhibit the damaged property as often as **we** reasonably request.

8. **Abandonment of Property -- We** do not have to accept any abandonment of property.

## HOW MUCH WE PAY

1. **Actual Cash Value --** When replacement cost is not indicated on the Declarations for Property Coverage, the loss payment will be based upon the actual cash value at the time of the loss with a deduction for depreciation.

2. **Replacement Cost --** When replacement cost is indicated on the Declarations for Coverage A or Coverage B the valuation of property insured under that Coverage shall be the replacement cost without any deduction for depreciation.

   This replacement cost provision does not apply to carpeting, objects of art, rarity or antiquity, or property of others.

   The replacement cost is limited to the cost of repair or replacement with similar materials on the same site and used for the same purpose. The payment shall not exceed the amount you spend to repair or replace the damaged or destroyed property.

   Replacement cost valuation does not apply until the damaged or destroyed property is repaired or replaced. You may make a claim for actual cash value and later for the replacement cost if you notify us of your intent within 180 days after the loss.

3. **Rebuilding, Repairing or Replacing --** The valuation of losses is limited to the cost to rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable.

4. **Glass --** Glass will be valued at the cost of safety glazing material where required by code, ordinance or law.

5. **Merchandise Sold --** Merchandise that you have sold but not delivered will be valued at the selling price less all discounts and unincurred expenses.

6. **Valuable Papers and Records --** The valuation of valuable papers and records is the cost of blank materials.

7. **Tenant's Improvements --** Tenant's improvements losses will be valued at the basis applicable to Business Personal Property (actual cash value or replacement cost) if repaired or replaced at your expense within a reasonable time.

   Tenant's improvements losses are not covered if repaired or replaced at another's expense.

   Tenant's improvements losses will be valued at a portion of your original cost if not repaired or replaced within a reasonable time. This portion is the ratio between the time remaining on your lease and the time between the installation or acquisition of the improvements and the end of your lease. Any renewal options in your lease are to be considered in valuation of your loss.

   **Example:**

   Tenant's improvements installed at the beginning of a five year lease with a five year extension. The value of the damaged or

Copyright MCMXC, American Association of Insurance Services

destroyed property after three years is 70 percent of **your** original cost if not repaired or replaced.

8. **Pair or Set --** Loss to an article which is part of a pair or set will be a reasonable proportion of the value of the entire pair or set. The loss is not considered a total loss of the pair or set.

## PAYMENT OF LOSS OR CLAIM

1. **Our Options -- We** have the following options:

   a. pay the loss;
   b. rebuild, repair or replace with property of equivalent kind and quality, to the extent practicable, within a reasonable time;
   c. ake all or any part of the damaged property at the agreed or appraised value.

   **We** must give **you** notice of **our** intent to rebuild, repair or replace within 30 days after receipt of a duly executed proof of loss.

2. **Insurable Interest -- We** do not cover more than **your** insurable interest in any property.

3. **Your Losses -- We** will adjust all losses with **you.** Payment will be made to **you** unless another loss payee is named in the policy. An **insured** loss will be payable 30 days after a satisfactory proof of loss is received, and the amount of the loss has been established either by written agreement with **you** or the filing of an appraisal award with **us.**

4. **Property of Others --** Losses to property of others may be adjusted with **you. We** reserve the right to adjust with and pay to the owners. Payment to the owners satisfies **our** obligation to **you** for loss to this property. **We** may also choose to defend any suits arising from the owners.

5. **Deductible -- We** pay only that part of **your** loss over the deductible amount stated on the Declarations in any one **occurrence.**

6. **Limit of Insurance -- We** will not pay more than **our limit** of insurance for any loss.

7. **Automatic Increase --** The **limits** of insurance are increased when a percentage increase is shown on the Declarations. The increase shown is the annual percentage increase and applies proportionally from the date of the most recent **limit.** The increase applies only to the **limits** of insurance shown on the Declarations.

8. **Insurance Under More Than One Coverage --** If more than one coverage of this policy insures the

same loss, **we** pay no more than the actual claim, loss or damage sustained.

9. **Insurance Under More Than One Policy --** If there is any other insurance which applies to a loss, **we** pay only for the excess of the amount due from such other insurance, whether collectible or not.

10. **Benefit To Others --** Insurance under the Property Coverage shall not directly or indirectly benefit anyone having custody of **your** property.

11. **Appraisal --** If **you** and **we** do not agree on the amount of the loss or the actual cash value of covered property, either party may demand that these amounts be determined by appraisal.

    If either makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days of receipt of the written demand. The two appraisers will then select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court of record in the state where the property is located to select an umpire.

    The appraisers will then determine and state separately the amount of each loss.

    The appraisers will also determine the actual cash value of covered property items at the time of the loss, if requested. The appraisers will also determine any income or expense amounts, if requested.

    If the appraisers submit a written report of any agreement to **us,** the amount agreed upon will be the amount of the loss, value, income or expense. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. Written agreement so itemized and signed by any two of these three sets the amount of the loss, value, income or expense.

    Each appraiser will be paid by the party selecting that appraiser. Other expenses of the appraisal and the compensation of the umpire will be paid equally by **you** and **us.**

Copyright MCMXC, American Association of Insurance Services

## CONDITIONS

In addition to the policy terms which are contained in other sections of the Property Coverage, the following conditions apply.

1. **Control of Property --** The Property Coverage is not affected by any act or neglect beyond **your** control.

2. **Mortgage Provisions --** If a mortgagee (mortgage holder) is named in this policy, loss to buildings shall be paid to the mortgagee and **you** as interest appear. If more than one mortgagee is named, they shall be paid in order of precedence.

   The insurance for the mortgagee continues in effect even when **your** insurance may be void because of **your** acts, neglect, or failure to comply with the coverage terms. The insurance for the mortgagee does not continue in effect if the mortgagee is aware of changes in ownership or substantial increase in risk and does not notify **us**.

   **We** will also notify the mortgagee if **we** cancel the policy. The cancellation conditions apply to the mortgagee.

   **We** may request payment of the premium from the mortgagee, if **you** fail to pay the premium.

   If **we** pay the mortgagee for a loss where **your** insurance may be void, the mortgagee's right to collect that portion of the mortgage debt from **you** then belongs to **us**. This does not affect the mortgagee's right to collect the remainder of the mortgage debt from **you**. As an alternative, **we** may pay the mortgagee the remaining principal and accrued interest in return for a full assignment of the mortgagee's interest and any instruments given as security for the mortgage debt.

3. **Recoveries --** If **we** pay **you** for the loss under the Property Coverage and lost or damaged property is recovered, or payment is made by those responsible for the loss, the following provisions apply:

   a. You must notify us promptly if you recover property or receive payment.
   b. We must notify you promptly if we recover property, or receive payment.
   c. Any recovery expenses incurred by either are reimbursed first.
   d. You may keep the recovered property but you must refund to us the amount of the claim paid, or any lesser amount to which we agree.
   e. if the claim paid is less than the agreed loss due to a deductible or other limiting term of this policy any recovery will be pro rated between you and us based on our respective interest in the loss.

4. **Suit Against Us --** No suit to recover any loss may be brought against **us** unless:

   a. the terms of the Property Coverages have been fully complied with; and
   b. the suit is commenced within one year after the loss.

   If any applicable law makes this limitation invalid, then suit must begin within the shortest period permitted by the law.

5. **Waiver of Right of Recovery -- You** may waive **your** right of recovery in writing before a loss without voiding the coverage.

   **You** may waive **your** right of recovery in writing after a loss only to the following parties:

   a. someone insured by this policy;
   b. your tenant;
   c. a business firm owned or controlled by you; or
   d. a business firm which owns or controls your business.

Copyright MCMXC, American Association of Insurance Services

**AAIS**
**AP 0225 10 05**
**Page 1 of 1**

This endorsement changes the Commercial
Liability Coverage provided by this policy
**-- PLEASE READ THIS CAREFULLY --**

## ASBESTOS EXCLUSION

The Commercial Liability Coverage is amended as follows:

## EXCLUSIONS

1.  The following exclusions are added under Exclusions That Apply To Bodily Injury, Property Damage, Personal Injury, And/Or Advertising injury:

    "We" do not pay for:

    a.  "bodily injury" arising out of the actual, alleged, or threatened ingestion, inhalation, or absorption of asbestos, asbestos products, asbestos fibers, or asbestos dust;

    b.  "property damage" arising out of the actual, alleged, or threatened contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

    c.  any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust by any "insured" or any other person or organization.

2.  The following exclusions are added under Additional Exclusions That Apply Only To Personal Injury And/Or Advertising injury:

    "We" do not pay for:

    a.  "personal injury" or "advertising injury" arising out of the actual, alleged, or threatened ingestion of, inhalation of, absorption of, contact with, existence of, exposure to, or presence of asbestos, asbestos products, asbestos fibers, or asbestos dust; or

    b.  any loss, cost, or expense arising out of the testing for, monitoring, cleaning up, removing, containing, treating, detoxifying, neutralizing, or in any way responding to or assessing the effects of asbestos, asbestos products, asbestos fibers, or asbestos dust by any "insured" or any other person or organization.

**AP 0225 10 05**

Copyright, American Association of Insurance Services, Inc., 2005

AAIS

- PLEASE READ THIS CAREFULLY -

AP-336
Ed 1.0

# PREMIUM PAYMENTS

The premium for this policy is payable each year. Each annual premium is based on the rates or premiums which are in effect for us at that time. The forms and endorsements willbe those which are in effect for us at that time.

AP-336 Ed 1.0

AAIS

Copyright MCMXC, American Association of Insurance Services

AAIS
AP 0643 12 99
Page 1 of 2

This endorsement changes
the policy
- PLEASE READ THIS CAREFULLY-

## KNOWN INJURY OR DAMAGE AMENDMENTS

The Commercial Liability Coverage is amended as follows:

1. Under Definitions, the following definition is added:

   "Designated insured" means:

   a. "you" and "your" spouse, but only with respect to the conduct of a business of which "you" are the sole owner, if "you" are shown on the "declarations" as an individual;

   b. "you" and all "your" partners or members and their spouses, but only with respect to the conduct of "your" business, if "you" are shown on the "declarations" as a partnership or a joint venture;

   c. "you" and all "your" members and managers, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as a limited liability company; and

   d. "you" and all "your" executive officers and directors, but only while acting within the scope of their duties, if "you" are shown on the "declarations" as an organization (other than a partnership, joint venture, or limited liability company). It also includes "your" stockholders, but only for their liability as such; or

   e. any "employee" who is authorized to give or receive notice of an "occurrence" or a claim.

2. Under Principal Coverages, Coverage L and , if applicable, Coverage N are amended by the addition of the following:

This insurance applies only to:

   a. "Bodily injury" or "property damage" which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" that was known by a "designated insured" prior to the inception date of the policy period. If a "designated insured" knew, as stated under the Knowledge of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period, that "bodily injury" or "property damage" had occurred, any continuation of, resumption of, or change in such "bodily injury" or "property damage" will be deemed to have been known by the "designated insured" prior to the inception date of the policy period.

   b. "Bodily injury" or "property damage" that occurs during the policy period and which is not a continuation of, resumption of, or change in "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge of Bodily Injury or Property Damage Condition, to have occurred prior to the inception date of this policy period, will include any continuation of, resumption of, or change in such "bodily injury" or "property damage" after the end of this policy period.

3. Under Defense Coverage, the following is added:

   "We" have no duty to defend a suit or claim seeking "damages" because of "bodily injury" or "property damage" which was known by a "designated insured", as stated under the Knowledge

of Bodily Injury or Property Damage Condition, prior to the inception date of the policy period.

4.  Under Conditions, the following condition is added:

    **Knowledge of Bodily Injury or Property Damage** – Knowledge of "bodily injury" or "property damage" will be deemed to have occurred at the earliest of the following times:

    a.  when a suit, claim, or demand for "damages" alleging "bodily injury" or "property damage" is received by any "designated insured";

    b.  when any "designated insured" reports the "bodily injury" or "property damage" to "us" or any other insurer; or

    c.  when any "designated insured" becomes aware of anything that indicates that "bodily injury" or "property damage" may have occurred or is occurring.

---

**AP 0643 12 99**
Copyright, American Association of Insurance Services, 2000

# WORK PERFORMED EXCLUSION

## THIS ENDORSEMENT CHANGES THE COMMERCIAL LIABILITY COVERAGES PROVIDED BY THIS POLICY.

### — PLEASE READ THIS CAREFULLY—

Exclusion number 8 under the Additional Exclusions that apply to Property Damage Liability under the Commercial Liability Coverage Section of the policy is hereby deleted and replaced with the following:

8.   We do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Product Completed Work Hazard.** This exclusion applies even if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

ART 00 07

07/96

BUSINESSOWNERS
BP 02 01 01 10

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# MONTANA CHANGES

This endorsement modifies insurance provided under the following:

**BUSINESSOWNERS STANDARD OR SPECIAL PROPERTY COVERAGE FORM, BUSINESSOWNERS LIABILITY COVERAGE FORM, AND COMMON POLICY CONDITIONS FORM**

**A.** The following condition is added to the **COMMON POLICY CONDITIONS:**

**4. Conformity With Statutes**

**1.** The provisions of this policy conform to the minimum requirements of Montana law and control over any conflicting statutes of any state in which you reside on or after the effective date of this policy.

**2.** Any provision of this policy (including endorsements which modify the policy) that does not conform to the minimum requirements of a Montana statute is amended to conform to such statute.

**B. COMMON POLICY CONDITIONS** is amended as follows:

**1.** Paragraph **2.. Cancellation** is replaced by the following:

**2. Midterm Cancellation**

We may cancel this policy, based on the provisions below, by mailing or delivering written notice to the first Named Insured at least 10 days before the effective date of cancellation:

**a.** If this policy has been in effect for less than 60 days, except as provided in **c.** below, we may cancel for any reason.

**b.** If this policy has been in effect for 60 days or more, we may cancel this policy prior to the expiration of the agreed term or prior to one year from the effective date of the policy or renewal, whichever is less, only for one or more of the following reasons:

**(1)** Failure to pay premium when due;

**(2)** Material misrepresentation;

**(3)** Substantial change in the risk assumed, except to the extent that we should reasonably have foreseen the change or contemplated the risk in writing the contract;

**(4)** Substantial breaches of contractual duties, conditions or warranties;

**(5)** Determination by the Commissioner of Insurance that continuation of the policy would place us in violation of the Montana Insurance Code;

**(6)** Our financial impairment; or

**(7)** Such other reasons that are approved by the Commissioner of Insurance.

**c.** If this policy has been issued for a term longer than one year, and if either the premium is prepaid or an agreed term is guaranteed for additional premium consideration, we may cancel this policy only for one or more of the reasons stated in **b.** above.

**d. Anniversary Cancellation**

We may cancel any policy with a term of more than one year by mailing or delivering to the first Named Insured written notice of cancellation at least 45 days before the anniversary date of the policy. Such cancellation will be effective on the policy's anniversary date.

**2.** Paragraph **2.** of **Cancellation** is replaced by the following:

**5.** If this policy is cancelled, we will send the first Named Insured any premium refund due. If we cancel, the refund will be pro rata. If the first Named Insured cancels, the refund may be less than pro rata. The cancellation will be effective even if we have not made or offered a refund.

However, when a financed insurance policy is cancelled, we will send any refund due to the premium finance company on a pro rata basis.

© Insurance Services Office, Inc., 2009

**3. Misrepresentation , Concealment, Or Fraud** is replaced by the following:

**9. Concealment, Misrepresentation Or Fraud**

**1.** We will not pay for loss or damage in a case of:

   **a.** Concealment or misrepresentation of a material fact; or

   **b.** Fraud;

   committed by you or any other insured, whether before or after the loss and relating to coverage of the loss under this policy.

**2.** We will not pay for loss or damage in a case of:

   **a.** Concealment or misrepresentation of a material fact; or

   **b.** Fraud;

   committed by you or any other insured in the application for this policy.

**4.** The following paragraph is added:

**L. Nonrenewal**

**1.** If we elect not to renew this policy, we will mail or deliver to the first Named Insured shown in the Declarations and agent, if any, a notice of intention not to renew at least 45 days before the agreed expiration date.

**2.** We need not mail or deliver this notice if:

   **a.** You have purchased insurance elsewhere;

   **b.** You have accepted replacement coverage;

   **c.** You have requested or agreed to nonrenewal; or

   **d.** This policy is expressly designated as nonrenewable.

     © Insurance Services Office, Inc., 2009     BP 02 01 01 10     ☐

BUSINESSOWNERS
BP 05 01 07 02

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# CALCULATION OF PREMIUM

This endorsement modifies insurance provided under the following:

BUSINESSOWNERS COVERAGE FORM

The following is added:

The premium shown in the Declarations was computed based on rates in effect at the time the policy was issued. On each renewal, continuation, or anniversary of the effective date of this policy, we will compute the premium in accordance with our rates and rules then in effect.

 © ISO Properties, Inc.,  2001 □

**AAIS**
**CL 0605 01 08**
**Page 1 of 1**

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# CERTIFIED TERRORISM LOSS DISCLOSURE OF PREMIUM AND FEDERAL SHARE OF INSURED LOSSES

(The entries required to complete this endorsement will be shown
below, on the "declarations", or on the "schedule of coverages".)

## SCHEDULE

Certified Terrorism Loss Premium   $ _____

Additional information, if any, concerning terrorism premium:

1.  The portion of "your" premium that is attributed to coverage for "certified terrorism loss" is shown in the Schedule above.

2.  Coverage for "certified terrorism loss", to the extent that such coverage is provided by this policy or Coverage Part, will be partially reimbursed by the United States Government, Department of Treasury under a federal program. Under that program, the United States pays 85% of insured losses for "certified terrorism loss" that exceeds the statutorily established deductible that "we" retain. However, if aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act, as amended, exceed one hundred billion dollars in a Program Year (January 1 through December 31), the Treasury will not make payment for any portion of the amount of such losses that exceeds one hundred billion dollars.

    If the Secretary of the Treasury determines that the aggregate amount of "certified terrorism loss" has exceeded one hundred billion dollars in a Program Year (January 1 through December 31), and "we" have met "our" insurer deductible under the Terrorism Risk Insurance Act, as amended, "we" will not pay for any portion of "certified terrorism loss" that exceeds one hundred billion dollars. If the "certified terrorism loss" exceeds one hundred billion dollars in a Program Year (January 1 through December 31), losses up to one hundred billion dollars are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury under the Terrorism Risk Insurance Act, as amended.

**CL 0605 01 08**

Copyright, American Association of Insurance Services, Inc., 2008

AAIS
CL-144  Ed 1.0
Page 1 of 1

This endorsement changes
the policy
-- PLEASE READ THIS CAREFULLY --

# AMENDATORY ENDORSEMENT
## MONTANA

Under the Common Policy Conditions, the Cancellation condition is deleted and replaced by:

**Cancellation and Nonrenewal** -- "You" may cancel this policy by returning the policy to "us" or by giving "us" written notice and stating at what future date coverage is to stop.

"We" may cancel this policy, or one or more of its parts, by written notice sent to "you" at "your" last mailing address known to "us". If notice of cancellation is mailed, proof of mailing will be sufficient proof of notice.

During the first 60 days this policy is in effect, "we" may cancel for any reason. "We" will give "you" notice at least ten days before cancellation is effective.

After this policy has been in effect 60 days or more, or if it is a renewal of a policy issued by "us" effective immediately, "we" may cancel or not renew only at the anniversary date unless one or more of the following reasons apply:

a. nonpayment of premium;

b. material misrepresentation;

c. substantial change in the risk assumed, except to the extent that "we" should reasonably have foreseen the change or contemplated the risk in writing the policy;

d. substantial breaches of contractual duties, conditions, or warranties;

e. determination by the Commissioner of Insurance that continuation of the policy would place "us" in violation of the Montana Insurance Code;

f. "our" financial impairment; or

g. such other reasons that are approved by the Commissioner of Insurance.

If "we" cancel this policy for any of the reasons listed above after it has been in effect for 60 days or more, "we" will mail or deliver written notice of cancellation to "you" at least ten days before the cancellation is to take effect.

If "we" cancel this policy or coverage on any anniversary date, "we" will mail or deliver "our" notice of cancellation to "you" at least 30 days prior to the anniversary date on which cancellation is to be effective.

If "we" decide not to renew this policy, "we" will mail or deliver "our" notice of nonrenewal to "you" and "your" agent at least 30 days before the end of the policy period. This nonrenewal provision does not apply if "you" have insured elsewhere, have accepted replacement coverage, or have requested or agreed to nonrenewal.

"Your" return premium, if any, will be calculated according to "our" rules. It will be refunded to "you" with the cancellation notice or within a reasonable time.

Payment or tender of the unearned premium is not a condition of cancellation.

CL-144  Ed 1.0
Copyright MCMXCVI
American Association of Insurance Services

# POLICYHOLDER NOTICE

Meeting Notice:  Midwest Family Mutual Insurance Company is a "Mutual" form of insurance company.  As a Policyholder, you are a "Member" of the company and have the right to influence the business of the company. Each Policyholder "member" is entitled to one vote regarding any company business conducted at this Annual Meeting.

The Company's annual meeting is held at its Home Office located at 1711 Osceola Avenue, Chariton, Iowa at 10 a.m. on the third Monday in August each year.  Attendance and participation via video-teleconferencing service will also be made available at Midwest Family Mutual Insurance Company's Regional Office at 3033 Campus Drive, Plymouth, Minnesota.

**President**                                    **Secretary**

MFM 001 08-12

POLICY NUMBER:

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# EMPLOYMENT–RELATED PRACTICES EXCLUSION

The following exclusion is added:

This insurance does not apply to "bodily injury" or "personal injury" arising out of any:

   **a.** Refusal to employ;

   **b.** Termination of employment;

   **c.** Coercion, demotion, evaluation, reassignment, discipline, defamation, harassment, humiliation, discrimination or other employment-related practices, policies, acts or omissions; or

   **d.** Consequential "bodily injury" or "personal injury" as a result of a. through c. above.

This exclusion applies whether the insured may be held liable as an employer or in any other capacity and to any obligation to share damages with or to repay someone else who must pay damages because of the injury.

The exception to this exclusion is any limited EPLI coverage that may be provided under optional form EP 00 01.

**COMMERCIAL GENERAL LIABILITY**
**MFMAP003 03-09**

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# AMENDMENT – LIQUOR LIABILITY EXCLUSION

This endorsement modifies the insurance provided under the following:

CONTRACTORS SPECIAL POLICY FORM

This insurance does not apply to "bodily injury" or "property damage" for which any insured may be held liable by reason of:

a. Causing or contributing to the intoxication of any person;

b. The furnishing of alcoholic beverages to a person under the legal drinking age or under the influence of alcohol; or

c. Any statute, ordinance or regulation relating to the sale, gift, distribution or use of alcoholic beverages.

This exclusion applies only if you:

(1) Manufacture, sell or distribute alcoholic beverages;

(2) Serve or furnish alcoholic beverages for a charge whether or not such activity requires a license; or is for the purpose of financial gain or livelihood; or

(3) Serve or furnish alcoholic beverages without charge if a license is required for such activity.

This endorsement changes
the policy
**-- PLEASE READ THIS CAREFULLY --**

# NUCLEAR, BIOLOGICAL, AND CHEMICAL TERRORISM EXCLUSIONS

1. The word terrorism, when shown in this endorsement in quotation marks, has the following meaning:

   "Terrorism" means an act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State and the Attorney General of the United States, to be an act of terrorism pursuant to the federal Terrorism Risk Insurance Act. The criteria contained in the Terrorism Risk Insurance Act for a "certified act of terrorism" include the following:

   **1.** The act resulted in insured losses in excess of $5 million in the aggregate, attributable to all types of insurance subject to the Terrorism Risk Insurance Act; and

   **2.** The act is a violent act or an act that is dangerous to human life, property or infrastructure and is committed by an individual or individuals as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

2. The following exclusion is added under the Commercial Liability Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for injury or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such injury or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the injury or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

When this Terrorism Exclusion applies to an incident of "terrorism", there is no coverage under the Commercial Liability Coverages of the policy to which this endorsement applies.

3. The following exclusion is added under the Property Coverages:

   **TERRORISM EXCLUSION**

   "We" will not pay for loss or damage caused directly or indirectly by "terrorism", including action in hindering or defending against an actual or expected incident of "terrorism". Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss or damage.

This exclusion applies only when one or more of the following are attributed to an incident of "terrorism":

a. the "terrorism" is carried out by means of the dispersal or application of radioactive material, or through the use of a nuclear weapon or device that involves or produces a nuclear reaction, nuclear radiation, or radioactive contamination; or

b. radioactive material is released, and it appears that one purpose of the "terrorism" was to release such material; or

c. the "terrorism" is carried out by means of the dispersal or application of pathogenic or poisonous biological or chemical materials; or

d. pathogenic or poisonous biological or chemical materials are released, and it appears that one purpose of the "terrorism" was to release such materials.

4. When the Terrorism Exclusion set forth under item 3. of this endorsement applies due to an incident of "terrorism" described above under items 3.a. or 3.b., that Terrorism Exclusion supersedes the Nuclear Hazard Exclusion in the policy to which this endorsement applies.

5. The following provisions are added.

a. Neither the "terms" of this endorsement nor the "terms" of any other terrorism endorsement attached to the policy to which this endorsement applies provide coverage for any loss or damage that would otherwise be excluded by that policy under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

b. The absence of any other terrorism endorsement does not imply coverage for any loss or damage that would otherwise be excluded by the policy to which this endorsement applies under:

1) exclusions that address war, military action, or nuclear hazard; or
2) any other exclusion.

6. The Property and Liability Coverages are amended as follows:

**CAP ON CERTIFIED TERRORISM LOSSES**

The following limitation applies to coverage for any one or more "certified acts of terrorism" that are not excluded by the terms of the exclusion in Paragraphs **B.1.** and **C.1.** and to any loss or damage that is covered and to which the exception in Paragraph **B.2.** applies.

If aggregate insured losses attributable to terrorist acts certified under the Terrorism Risk Insurance Act exceed $100 billion in a Program Year (January 1 through December 31) and we have met our insurer deductible under the Terrorism Risk Insurance Act, we shall not be liable for the payment of any portion of the amount of such losses that exceeds $100 billion, and in such case insured losses up to that amount are subject to pro rata allocation in accordance with procedures established by the Secretary of the Treasury.

MFMAP-01 01 09          Includes copyrighted material of American Association of
Insurance Services with its permission. Modified from original
language.                                        **Page 2 of 2**

**Midwest Family Mutual Insurance Company**

# *Privacy Policy Notice*

To Our Customers:

Midwest Family Mutual values you as a customer and has always safeguarded the information that is collected in order to provide you with the best possible products and services.  Federal legislation, the Gramm-Leach-Bliley Financial Modernization Act of 1999, now requires that we formally advise of this.

You provide us with most of the information about you that we use in evaluating your application and servicing your insurance policy.  We may collect non-public personal information about you from any of the following sources:  Information from you on application or other forms or in other transactions with us; our agents; or information we receive from a consumer reporting agency.  Depending on the nature of your coverage, we may collect information about you from third parties, such as other persons proposed for coverage under your policy or the State Motor Vehicle Department concerning your driving record.

We do not disclose any non-public information about our customers or former customers to anyone, except as permitted by law.  In some cases this may mean information can be disclosed to third parties without your authorization.  This is only done within the law and with parties that facilitate the underwriting of risk, settlement of claims, reinsurance of these functions or to comply with regulatory requirements.  We do not release information for any marketing purpose.

We restrict access to information about you to employees or agents to allow them to provide you with products or to provide you benefits or services under them.  We maintain physical, electronic and procedural safeguards that comply with state and federal regulations to guard your non-public personal information.

You have the right to obtain access to certain items of information we have collected about you, and you have the further right to request correction of information if you feel it is inaccurate.

We would also be pleased to tell you about our policies and procedures for the privacy of your information.  For a copy of our privacy policy or to access your information, please contact us in one of the following ways:

Midwest Family Mutual Insurance Company
3033 Campus Drive STE 195E
Plymouth, MN   55441
Tel:  763-951-7000
Toll Free:  1-800-225-5636
Fax:  763-951-7092
Email:  www.midwestfamily.com

**PRIV NTC  07/01**

**MIDWEST FAMILY MUTUAL INSURANCE COMPANY, INC**
**AP 101 (01 00)**
**EQUIPMENT BREAKDOWN COVERAGE ENDORSEMENT**

THIS ENDORSEMENT CHANGES THE POLICY, PLEASE READ THIS CAREFULLY

*This endorsement modifies insurance provided under the Contractors Special Policy-Commercial Property Coverage Section, specifically form AP - 100 Ed. 1.0.*

## ADDITIONAL DEFINITIONS

1. **"Accident"** means direct physical loss as follows:
   a. mechanical breakdown or rupturing or bursting of moving parts of machinery caused by centrifugal force;
   b. loss caused by arcing or by electrical currents other than lightning;
   c. explosion of steam boilers, steam pipes, steam turbines or steam engines that "you" own or lease or that are operated under "your" control;
   d. loss to steam boilers, steam pipes, steam turbines or steam engines caused by any condition or occurrence within such equipment; or
   e. loss to hot water boilers or water heaters caused by any condition or occurrence within such equipment.
2. **"Computers"** mean:
   Covered property that is electronic computer or other data processing equipment, including "media" and peripherals used in conjunction with such equipment.
3. **"Covered equipment"**:
   a. means covered property built to operate under vacuum or pressure, other than weight of contents, or used for the generation, transmission or utilization of energy.
   b. does not mean:
      i. structure, foundation, cabinet, compartment or air supported structure or building;
      ii. insulating or refractory material;
      iii. sewer piping, any underground vessels or piping, or any piping forming a part of a sprinkler system;
      iv. water piping other than boiler feedwater piping, boiler condensate return piping or water piping forming a part of a refrigerating or air conditioning system;
      v. vehicle, dragline, excavation or construction equipment, or "mobile equipment"; or
      vi. equipment manufactured by you for sale.
4. **"Media"** means:
   All forms of electronic, magnetic and optical tapes and discs for use in any electronic computer or electronic data processing equipment.
5. **"One accident"** means:
   If an initial "accident" causes other "accidents", they will all be considered "one accident". All "accidents" that are the result of the same event will be considered "one accident".
6. **"Perishable Goods"** means personal property preserved and maintained under controlled conditions and susceptible to loss or damage if the controlled conditions change.
7. **"Hazardous Substances"** means any substance other than ammonia that has been declared to be hazardous to health by a governmental agency.

## ADDITIONAL COVERAGES

The following additional coverages also apply to loss caused by or resulting from an "accident". These coverages do not

1

provide additional amounts of insurance.

1. **Expediting Expenses**-- With respect to "your" damaged covered property, "we" pay, up to $100,000, the reasonable extra cost to:
   a. expedite permanent repairs or replacement; and
   b. make temporary repairs.

2. **"Hazardous Substances"**-- "We" pay for the additional cost to repair or replace covered property because of contamination by "hazardous substances". This includes the additional expenses to clean up or dispose of such property.
   Additional costs mean those beyond what would have been required had no "hazardous substances" been involved. The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

3. **Computer Equipment**-- "We" pay for direct damage to "computers" caused by arcing or electrical currents, other than lightning.
   The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

4. **Perishable Goods**--
   a. "We" pay, up to $100,000 for "your" loss of "perishable goods" due to spoilage.
   b. "We also pay for "your" loss of "perishable goods" due to contamination from the release of refrigerant, including but not limited to ammonia.
   c. "We" also pay any necessary expenses "you" incur to reduce the amount of loss under this coverage. "We" pay for such expenses to the extent that they do not exceed the amount of loss that otherwise would have been payable under this coverage.
   d. If "you" are unable to replace the "perishable goods" before its anticipated sale, the amount of "our" payment will be determined

on the basis of the sales price of the "perishable goods" at the time of the "accident", less discounts and expenses "you" otherwise would have had. Otherwise "our" payment will be determined in accordance with the How Much We Pay section.

5. **CFC Refrigerants**-- "We" pay for the additional cost to repair or replace covered property because of the use or presence of a refrigerant containing CFC (chlorofluorocarbon) substances. This means the additional expense to do the least expensive of the following:
   a. Repair the damaged property and replace any lost CFC refrigerant;
   b. Repair the damaged property, retrofit the system to accept a non-CFC refrigerant and charge the system with a non-CFC refrigerant; or
   c. Replace the system with one using a non-CFC refrigerant.
   Additional costs mean those beyond what would have been required had no CFC refrigerant been involved.
   The most we will pay for loss or damage under this coverage, including actual loss of Earnings and Extra Expenses incurred, is $100,000.

6. **Service Interruption**
   The insurance provided for loss of Income and Perishable Goods is extended to apply to loss caused by or resulting from an "accident" to equipment that is owned by a utility, landlord, or other supplier with whom "you" have a contract to provide "you" with any of the following services: electrical power, communications, waste disposal, air conditioning, refrigeration, heating, gas, air, water or steam.

**PERILS INSURED AGAINST**

1. "We" pay for loss caused by or resulting from an "accident" to "covered equipment".

2. Exclusions

a. Only as regards Equipment Breakdown Coverage, Perils Insured Against is amended as follows:
   i. Electrical Currents 2.e. and Explosion 2.f. do not apply;
   ii. **Animals--** exclusion 2.a. is deleted and replaced with the following:
   Animals-- "We" do not pay for loss caused by nesting or infestation, or discharge or release of waste products or secretions of animals, including birds, or insects. "We" do pay for any resulting "accident";
   iii. **Wear/Breakdown--** Exclusion 2.s. is deleted and replaced with the following:
   Wear and Tear-- "We" do not pay for loss caused by wear and tear. "We" do pay for any resulting loss caused by an "accident".

b. The following additional exclusions also apply to Equipment Breakdown Coverage:
   i. **Tests--** "We" also do not pay under this Coverage for loss or damage caused by any of the following tests:
   a hydrostatic, pneumatic or gas pressure test of any boiler or pressure vessel; or
   an insulation breakdown test of any type of electrical equipment;
   ii. **Perishable Goods--** With respect to Perishable Goods coverage, "we" also do not pay for loss or damage as a result of "your" failure to use all reasonable means to protect the "perishable goods" from damage following an "accident";
   iii. **Computer Equipment--** "We" also do not pay for loss or damage caused by or resulting from any defect, virus, loss of data or other situation within "software". But if loss or

damage from an "accident" results, "we" pay for that resulting loss or damage;
   iv. **Service Interruption--** With respect to Service Interruption coverage and Perishable Goods coverage, we will also not pay for loss or damage caused by or resulting from: fire; lightning; windstorm or hail; explosion (except for steam or centrifugal explosion); smoke; aircraft or vehicles; riot or civil commotion; vandalism; sprinkler leakage; falling objects; weight of snow, ice or sleet; freezing or collapse.
   v. **Contamination or Deterioration--** "We" do not pay for loss caused by contamination or deterioration including corrosion, decay, fungus, mildew, mold, rot, rust, or any quality, fault or weakness in covered property that causes it to damage or destroy itself. "We" do pay for any resulting "accident".

c. The following is added to Perils Insured Against, 1.i.1., Water: However, if electrical "covered equipment" requires drying out as a result of the above, "we" pay for the direct expenses of such drying out, subject to the applicable property damage "limit" and "deductible" shown in the Declarations.

**PROPERTY NOT COVERED OR SUBJECT TO LIMITATIONS**

Only as regards Equipment Breakdown Coverage, Paragraph 1.c., Boilers, under Property Not Covered Or Subject To Limitations, is deleted.

**HOW MUCH WE PAY**

1. **The most we will pay** for loss under this endorsement is the applicable

"limit" shown in the Declarations. Coverage provided under this endorsement does not provide an additional amount of insurance.

2. **Deductibles--** "We" will not pay for loss or damage resulting from any "one accident" until the amount of loss or damage exceeds the applicable deductible shown in the Declarations. "We" will then pay the amount of loss or damage in excess of the applicable deductible or deductibles, subject to the applicable "limit" shown in the Declarations.

## CONDITIONS

Only as regards Equipment Breakdown, the following are added to Conditions:

1. **Suspension--** When any "covered equipment" is discovered to be in, or exposed to a dangerous situation or condition, any representative of "ours" may immediately suspend the insurance coverage against loss from an "accident" to that equipment. "We" can do this by mailing or delivering a written notice of suspension to "your" address as shown in the Declarations, or at the address where the equipment is located. Once so suspended, "your" insurance can be reinstated only by written notice from "us". If "your" insurance is so suspended, "you" will get a pro rata premium refund. But the suspension is effective even if "we" have not yet offered or made a refund.

2. **Jurisdictional Inspections--**If any property that is "covered equipment" under the Equipment Breakdown Coverage requires inspection to comply with state or municipal boiler and pressure vessel regulations, **"we"** agree to perform such inspection on "your" behalf.

AAIS

> This endorsement changes the Commercial
> Liability Coverges provided by this policy
>
> - PLEASE READ THIS CAREFULLY-

AP-222
Ed 1.0

# PROPERTY DAMAGE LIABILITY DEDUCTIBLE

### SCHEDULE
( The information required below may be shown on a separate schedule or supplemental Declarations.)

Policy Number: _____ **See Declarations** _____

### DEDUCTIBLE

Deductible Amount

Property Damage Liability . . . . . . . . . . . . . . . (per occurrence )   $ _____

### APPLICATION OF ENDORSEMENT

(Enter here any limitations on the application of this endorsement.   If no limitation is entered,  the deductibles apply to all loss, however caused.)

---

The Commercial Liability Coverages section is amended as follows:

## HOW MUCH WE PAY

The following is added to the terms regarding "How Much We Pay":

Our obligation under Coverage L and N to pay damages on behalf of the insured applies only to the amount of damages in excess of any deductible amounts stated in the schedule above as applicable to such coverages.  The limit of liability shown in this policy as being applicable to each occurrence for such coverages shall be reduced by the amount of such deductible.  The limit of liability shown in this policy as aggregate, for such coverages shall not be reduced by the application of such deductible amounts.

The deductible amounts stated in the schedule apply as follows:

**Per Occurrence Basis** - If the deductible is on a per occurrence basis, the deductible amount applies

under the **Property Damage Liability** Coverage,  to all damages because of all **bodily injury** or **property damage** as the result of any one **occurrence**,  regardless of the number of persons or organizations who sustain damages because of that **occurrence**.

The terms of the policy, including those with respect to:

1. our rights and duties with respect to the defense of suits; and

2. the insured's duties in the event of an occurrence

apply irrespective of the application of the deductible amount.

We may pay any part or all of the deductible amount to affect settlement of any claim or suit and, upon notification of the action taken, you shall promptly reimburse us for such part of the deductible amount as has been paid by us.

---

AP-222 Ed 1.0

AAIS

Copyright MCMXC, American Association of Insurance Services

# CONTRACTORS ADVANTAGE ENDORSEMENT

Included in the Contractors Advantage Endorsement:

All Property subject to $250 Deductible
Miscellaneous Tools $2000.00 maximum $500 each tool
$5000 Accounts Receivable
$1000 Mobile Equipment
$2000 Contents at Principal Residence
$2000 Medical Payments
$2000 Computer Coverage
Contractual Liability to policy limit
Additional $50,000 Fire Legal Liability

# CONTRACTORS ADVANTAGE ENDORSEMENT

## PLEASE READ THIS ENTIRE ENDORSEMENT CAREFULLY

## AGREEMENT

1.  Return for **your** payment of the required premium, **we** provide the Inland Marine coverage described in this policy during the policy period subject to the:

    1.  Inland Marine General **Terms.**
    2.  Inland Marine coverage **Terms.**
    3.  Policy **terms** that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

### INLAND MARINE GENERAL TERMS

### DEFINITIONS

1.  The words **you** and **your** mean the person, persons or organization named on the declarations.

2.  The words **we, us** and **our** mean the company providing this insurance.

3.  **Insured** means **you.** With respect to covered property that is not used for **business,** the word **insured** also means:

    a.  **your** spouse;
    b.  **your** relatives if residents of **your** household;
    c.  persons under the age of 21 in **your** care or the care of **your** resident relatives; or **your** legal representative if **you** die while insured by this policy. (This person is an **insured** only for the covered property.)

4.  **Business** means a trade, profession or occupation whether full or part time. This includes:

    a.  the rental of property to others; and
    b.  farming.

5.  **Described premises** means that part of the building and grounds, which **you** occupy at the location shown.

6.  **Terms** means the conditions, definitions, exclusion, limitations and provisions used in this policy.

### PERILS EXCLUDED

**We** do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. **We** do not pay for a loss that results from:

1.  wear and tear to covered property.

2.  gradual deterioration of covered property.

3.  A fault or weakness that is intrinsic to the property, which causes it to break, spoil, become defective or destroy itself.

4.  Insects or vermin damage to covered property.

5.  delay, loss of market, loss of use, or **business** interruption.

6.  Obsolescence or depreciation of covered property.

7.  war. This means:

    a.  declared war, undeclared war, civil war, insurrection, rebellion or revolution;
    b.  a warlike act by a military force or by military personnel;
    c.  the destruction, seizure or use of the property for a military purpose; or
    d.  the discharge of a nuclear weapon even if it is accidental.

8.  civil authority. This means:

    a.  seizure or destruction under quarantine or customs regulations;
    b.  confiscation or destruction by order of a government or public authority; or
    c.  risks of contraband or illegal transportation or trade.

9.  nuclear hazard.  This means nuclear reaction, nuclear radiation or radioactive contamination:

    a.  whether controlled or uncontrolled; or
    b.  caused by, contributed to or aggravated by a peril covered by this policy.  A loss caused by nuclear hazard will not be considered to be a loss caused by fire, explosion or smoke.  If fire is covered by this policy, **we** do cover the loss caused by a fire that results from the nuclear hazard.

10.  other perils that are not covered.  These are listed for each coverage.

**We** do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1.  the act or decision of a person, group, organization or governmental body.  This includes the failure to act or decide.

2.  a fault, defect or error, negligent or not, in:

    a.  planning, zoning, surveying, siting, grading, compacting, land use, or development of property.
    b.  the design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property.  This includes the materials needed to construct, remodel or repair the property.
    c.  maintenance of property.

    These apply whether or not the property is covered by this policy.

3.  a condition of the weather.

4.  the collapse of a building or structure.

## WHAT MUST BE DONE IN CASE OF LOSS

1.  **Protect the Property.**  The **insured** must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2.  **Notice.**  The **insured** must promptly notify **us** or **our** agent, in writing if requested.

3.  **Notice to Police.**  The **insured** must promptly notify the police if the loss results from a violation of the law.

4.  **Proof of Loss.**  The **insured** must send **us** a statement of loss, under oath if requested, within 90 days after the loss occurs.  The following information must be included:

    a.  the date, time, place and details of the loss.
    b.  other insurance that may cover the loss.
    c.  **your** interest and the interest of all others in the property involved in the loss.  This includes all mortgages and liens.
    d.  changes in the title of the covered property during the policy period.
    e.  detailed estimates for the repair or replacement of the covered property.
    f.  an inventory of lost, damaged and all remaining covered property.  This must show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss.  Copies of all bills, receipts and related documents that substantiate the inventory must be attached.

5.  **Additional Duties.**  As often as **we** may reasonably request, an **insured** must:

    a.  submit to an examination under oath.
    b.  assist **us** in obtaining the attendance of employees for examination under oath.
    c.  exhibit damaged and undamaged property.
    d.  produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6.  **Cooperation.**  The **insured** must cooperate with **us** in performing all acts that are required by this Inland Marine coverage.

7.  **Volunteer Payments.**  The **insured** may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the **insured's** own expense.

8.  **Abandonment.**  The **insured** may not abandon the property to **us** without **our** written consent.

## HOW MUCH WE PAY

1.  **Actual Cash Value.**  Actual cash value includes a deduction for depreciation, however caused.

2.  **Valuation.**  Valuation is based on the actual cash value of the property at the time of loss

3.  **The Amount We Pay.**  The smallest of the amounts shown below is the most that **we** will pay for a loss:

   a.   the amount determined under "Valuation."
   b.   the cost to repair, replace or rebuild the property with material of like kind and quality.
   c.   the amount of **your** interest in the property.
   d.   the coverage amount shown.

This amount will be adjusted by the deductible amount coinsurance penalty or other limitation which; may apply.

4.   **Loss To Pairs Or Sets.**  If there is a loss to an item that is part of a pair or set, at **your** option **we** will pay the full actual cash value up to the coverage amount shown for the pair or set.  **You** will give **us** the remainder of the pair or set.  If **you** do not choose this option, **we** will pay only for a reasonable part of the actual cash value of the pair or set.

5.   **Loss To Parts.**  If there is a loss to a part of an item that consists of several parts, **we** will pay only for the loss to that part.  A loss to a part is not considered to be a loss to the whole item.

6.   **Insurance Under More Than One Policy.**  If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this Inland Marine coverage, **we** will pay for the loss only after the full amount from the other insurance has been paid.

7.   **Insurance Under More Than One Coverage.**  If more than, one coverage applies to the same loss **we** will pay no more than the actual amount of the loss.

8.   **Losses Paid By Others.**  **We** will not pay for that part of a loss that has been paid by someone else.

9.   **Restoring the Coverage Amount.**  The payment of the claim will not reduce the coverage amount.  If **we** pay a loss for items that are separately listed and the coverage amount that applies to these items is reduced at **your** request, **we** will return the unearned premium for these items to **you.**

## LOSS PAYMENT

1.   **Our Options.**  **We** may:

   a.   pay the loss in money; or
   b.   repair, replace or rebuild the property.  **We** must give the **insured** notice of **our** intent to do so within 30 days after **we** have received a satisfactory proof of loss.

We may take all or a part of the damaged property at the agreed or appraised value.  Property that **we** have paid for or replaced will become **our** property.

2.   **Your Property.**  **We** will adjust all losses with **you.**  Payment will be made to **you** unless a loss payee is named with respect to this Inland Marine coverage.

3.   **Property of Others.**  Loss to property of others may be adjusted with **you.**  **We** reserve the right to adjust the loss with the owner.  **Our** payment to the owner will satisfy **our** obligation to **you** for loss to this property.  At **our** option, without cost to **you**, **we** may choose to defend **you** from suits which; result from a covered loss to the property of others.

4.   **When We Pay.**  **We** will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1.   **Subrogation.**  If **we** pay for a loss, **we** may require the **insured** to assign to **us** the right of recovery against others.  **We** will not pay for a loss if the **insured** impairs this right to recover.  The **insured's** right to recover from others may be waived in writing before a loss occurs.

2.   **Loan Receipts.**  When **we** believe that a loss can be recovered from others:

   a.   **we** may make an advance payment to **you** in the form of a loan.
   b.   at **our** expense, **we** will be allowed to bring suit in the **insured's** name against those who are responsible for the loss.
   c.   the loan will be repaid from the amount recovered.

3.   **Recoveries.**  The **insured** must notify **us** or **we** must notify the **insured** promptly if either receives a recovery for a loss which; we have paid.  The costs that are incurred by either party in making the recovery are to be reimbursed first.  **We** are entitled to the surplus up to the amount that **we** have paid for the loss.  The **insured** may then keep any excess.

## DISAGREEMENTS

1.   **Appraisal.**  If **you** and **we** do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal.

If either party makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court in the state where the appraisal is pending to select an umpire

The appraisers will determine:

a. the amount of the loss;
b. the actual cash value of the property; and
c. the cost to repair or replace the property.

Each amount will be stated separately.

If the appraiser submit a written report of an agreement to **us,** the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by **you** and **us.**

2. **Suit Against Us.** No suit to recover for a loss may be brought against **us** unless:

a. all the **terms** of this Inland Marine coverage have been complied with; and
b. the suit is commenced within one year after the loss.

## OTHER POLICY CONDITIONS

1. **Conformity With Statutes.** The **terms** of this Inland Marine coverage in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2. **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), **we** may substitute or **we** may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3. **Liberalization.** If a revision of a form or endorsement which would broaden coverage without an additional premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4. **Misrepresentation, Concealment or Fraud.** This Inland Marine coverage is void if before or after a loss:

a. the **insured** has concealed or misrepresented:
(1) a material factor or circumstance that relates to this insurance or the subject thereof; or
(2) an **insured's** interest herein.

b. there has been fraud or false swearing by an **insured** with regard to a matter that relates to this insurance or the subject thereof.

5. **No Benefit To Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6. **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting **terms.** If it is cancelled, **you** must report the required amounts as of the cancellation date.

# CONTRACTUAL LIABILITY COVERAGE
### (Written or Oral Contracts or Agreements)

The Commercial Liability Coverage is amended as follows:

## DEFINITIONS

**Incidental contract** is extended to include any part of a written or oral contract or agreement relating to the conduct of **your** business under which **you** assume tort liability of another to pay damages because of **bodily injury** or **property damage.** Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

An **incidental contract** does not include that part of any contract or agreement:

1. that indemnifies an architect, engineer or surveyor for injury or damage arising out of:

   a. preparing, approving or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications; or
   b. giving directions or instructions, or failing to give them, if that is the primary cause of the injury or damage.

2. under which the **insured** , if an architect, engineer or surveyor assumes liability for injury or damages arising out of the **insured's** rendering or failing to render professional services, including those listed in 1.a. above, and supervisory, inspection or engineering services; or

3. that indemnifies any person or organization for damage by fire to premises rented or loaned to **you.**

## EXCLUSIONS THAT APPLY TO ALL COVERAGES

The following exception is added to exclusion 6., Exclusions That Apply To All Coverages.  This exclusion does not apply to liability assumed under any **incidental contract** for the ownership, maintenance or use of aircraft or watercraft.

# SCHEDULED PROPERTY COVERAGE
(This Inland Marine coverage is subject to the terms shown below.  The Inland Marine General Terms also apply.)

(The information required below may be shown on a separate schedule or supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy.  A coverage amount must be shown for each item.  This is the most that we will pay for a loss to that item.

| Described Item | Coverage Amount |
|---|---|
| 1. | $_____ |
| 2. | $_____ |
| 3. | FOR FURTHER DESCRIPTION, $_____ |
| 4. | LIMITS AND AMOUNTS SEE $_____ |
| 5. | DECLARATION PAGE. $_____ |
| 6. | $_____ |
| 7. | $_____ |
| 8. | $_____ |
| 9. | $_____ |
| 10. | $_____ |

### DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.

$_____

### COINSURANCE

**You** must maintain a minimum coverage amount for each described item.  This minimum coverage amount is the full actual cash value of the described item.  If the coverage amount at the time of loss is less than the minimum coverage amount, we will pay only a part of a loss.  Our part of the loss will be determined by dividing the coverage amount by the minimum coverage amount.  This percent will be applied to the final adjusted loss to determine the amount that we will pay.

## PROPERTY COVERED

We cover only those described items for which a coverage amount is shown.  We also will cover up to a total of $2000 of undescribed owned tools or undescribed employees tools at your request.

## PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded.  The loss must be due to an external cause.

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same as, or after the excluded peril.  We do not pay for a loss that results from:

1. a dishonest or illegal act, alone or in collusion with another, by:
   a. you;
   b. others who have an interest in the property;
   c. others to whom you entrust the property; or
   d. the employees or agents of a., b. or c., whether or not they are at work.

   We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2. swindling, fraud, trick or false pretense.

3. the acceptance of:
   a. counterfeit money or fraudulent post office or express money orders; or
   b. checks or promissory notes, which are not paid upon presentation.

4. mysterious disappearance.

5. any cause when the only proof that a loss occurred is an inventory shortage.

6. breakage of glass or similar fragile items.  We do cover breakage if it is caused by fire; lightning, windstorm, hail, earthquake, flood, smoke, explosion, aircraft, spacecraft, self-propelled missiles, and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of building.

7. a process to repair, adjust, service or maintain the covered property.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

8. mechanical breakdown or failure.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

9. Electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

There are other perils that are not covered.  These are listed above in the Inland Marine General Terms section.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada, or Puerto Rico.  This includes property that is in transit, except to or from Alaska, Hawaii or Puerto Rico.

# MINI/MICRO COMPUTER COVERAGE

(This Inland Marine coverage is subject to the terms shown below.  The Inland Marine General Terms also applies.)

(The information required below may be shown on a separate schedule or supplemental Declarations).

**Coverage A – Equipment**

**Coverage Amount**

1. For **equipment** on the **described premises** at:
   a.                                        $_____
   b.                                        $_____
   c.                                        $_____
   d.                                        $_____

2. For **equipment** in transit or otherwise away from the **described premises**:        $_____
   This coverage applies only to **your** legal liability.

**Coverage B – Media**

1. For **media** on the **described premises** at:
   a.                                        $_____
   b.                                        $_____
   c.                                        $_____
   d.                                        $_____

2. For **media** in transit or otherwise away from the **described premises**:        $_____
   This coverage applies only to **your** legal liability.

**Coverage C – Extra Expense**

1. For **extra expense** on the **described premises** at:
   a.                                        $_____
   b.                                        $_____
   c.                                        $_____
   d.                                        $_____

2. At each **described premises** the following percent of the coverage amounts
   shown above is the most that **we** will pay for each of the following parts of
   the **restoration period**.
   a.                                        $_____
   b.                                        $_____
   c.                                        $_____
   d.                                        $_____

## DEDUCTIBLE

The following deductible amounts will apply to each loss after all other adjustments have been made.
If a loss involves more than one coverage, the deductible for each coverage will apply.
1.   Coverage A – **Equipment**                    $_____
2.   Coverage B – **Media**                        $_____
3.   Coverage C – **Extra Expense**                $_____

## COINSURANCE

**You** must maintain a minimum coverage amount.  This minimum coverage amount is _____percent of the full
actual cash value of all covered property at all **described premises.**  If the coverage amount at the time of loss is less
than the minimum coverage amount, **we** will pay only a part of a loss.  **Our** part of the loss will be determined by dividing
the coverage amount by the minimum coverage amount.  This percent will be applied to the final adjusted loss to
determine the amount that **we** will pay.

If the property is covered for its replacement cost, the minimum coverage amount is the stated percent of its full
replacement cost.

This clause applies only to Coverage A.

## DEFINITIONS

In addition to the definitions in the Inland Marine General Terms, the following definitions will apply:
1.   **Data** is a fact; concept or instruction that is converted into a form that can be used in a **data** processing operation.  It
     includes programs.
2.   **Equipment** is a network of machine components that accepts information, processes it according to plan and
     produces a desired result.

3.   **Extra Expense** is the necessary additional expense that **you** incur following a loss to **equipment** or **media** caused by a covered peril, in order to continue, as nearly as possible, the normal operations of **your data** processing system.  This is the amount in excess of **your** normal operating expenses.

4.   **Media** is the material on which **data** is recorded, such as magnetic tapes, disk packs, drums, paper tapes, cards and programs.  This includes the **data** stored on the **media**.

5.   **Period of Restoration** is the time that it takes for **you** to resume normal **data** processing operations following a covered loss to the **equipment** or **media**.

## PROPERTY COVERED

Coverage A, B or C applies only if a coverage amount is shown.

**Coverage A – We** cover **your equipment.  We** also cover **equipment** that belongs to others and for which **you** are legally liable.

If **you** rent or lease **equipment** from others, **you** must file a copy of the agreement with **us.  We** cover only **your** legal liability for the **equipment** stated in the agreement unless a loss is caused by a peril that is excluded.  **You** and **we** may agree on broader coverage for leased **equipment.**

**Coverage B – We** cover **your media.  We** also cover **media** that belongs to others and for which **you** are legally liable.

If **you** rent or lease **media** from others, **you** must file a copy of the agreement with **us.  We** cover only **your** legal liability for the **media** stated in the agreement unless a loss is caused by a peril that is excluded.

**Coverage C –** In the event of a loss to **your equipment** or **media** caused by a peril covered by this form, **we** cover **your extra expense** loss for the **restoration period.**  This begins with the date of loss to the covered **equipment** or **media** and is not limited by the expiration date of this coverage.  **You** and **we** may agree on broader coverage for leased **media.**

**You** must do all that is reasonable to reduce a loss and to resume normal **data** processing operations as soon as possible.

## EXTENSIONS OF COVERAGE

The extensions of coverage do not increase the coverage amounts.

1.   **Newly Acquired Property – We** cover **equipment** and **media** acquired during the policy period for a period up to 30 days after it is acquired.  **You** must provide **us** with a complete description of each item within this 30-day period, and pay the additional premium.  **We** cover these items for their actual cash value.

     The most that **we** will pay for all such items will be the smaller of the following: 20 percent of the coverage amount shown for the type of property acquired, or $50,000.

     This coverage will end at the earliest of the following:

     a.   when the newly acquired items are reported to **us;**
     b.   the end of the 30-day period; or
     c.   the expiration date of the policy.

2.   **Removal –** Coverage A and B also apply while the covered property is removed from the **described premises** because it is endangered by a covered peril.  This applies while the property is moved to, stored in and returned from a safe place.  **You** must give **us** notice within 10 days after it is first moved.

## PROPERTY AND COVERAGES EXCLUDED

**We** do not cover:

1.   **equipment** or **media** that is sold on an installment plan once it leaves **your** custody.

2.   **equipment** or **media** that **you** rent to others.  **We** do cover this property while it is on a **described premises.**

3.   accounts, bills, deed, evidence of debt, valuable papers or records, manuscripts and other documents.  **We** do cover these items once they have been converted to **data** form.

4.   **media** that cannot be replaced.

5.   **Program** support documentation, flow charts, record formats or narrative descriptions.  **We** do cover this property if it has been converted to **data** form.

6.   **We** do not cover **extra expense** that results from the items listed above.

---

### PERILS COVERED

**We** cover direct physical loss to covered property unless the loss is caused by a peril that is excluded.  The loss must be due to an external cause.

---

### PERILS EXCLUDED

**We** do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act or produce the loss before, at the same time as, or after the excluded peril.

**Coverages A, B and C –** The following exclusions apply to Coverages A, B and C.  **We** do not pay for loss that results from:

1.   a dishonest or illegal act, alone or in collusion with another, by:

   a.   **you;**
   b.   others who have an interest in the property;
   c.   others to whom **you** entrust the property; or
   d.   the employees or agents of a., b. or c., whether or not they are at work.

**We** do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.   corrosion or rust.

3.   dampness of atmosphere.

4.   Extremes of temperature.

5.   A processing operation of the data processing system.

6.   A process to repair, adjust, service or maintain the **equipment** or **media**.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

7.   Mechanical or machinery breakdown or failure.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

8.   Electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

9.   Earth movement.  This includes:

   a.   earthquake;
   b.   sinkhole;
   c.   landslide or mudflow; and
   d.   the rising, sinking or shifting of the earth.

   If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only, caused by the earth movement, if the covered property is away from the **described premises.**

10.  volcanic activity.  This means the formation, eruption or effusion of a volcano.  It includes ash, cinders, dust, lava, steam and other products that result from volcanic activity.  The formation, eruption or effusion of a volcano is not an explosion.

   If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only caused by volcanic activity if the property is away from the **described premises.**

11.  water.  This means:

   a.   flood, surface, water, waves, tidal water or the overflow of a body of water.  This includes spray that results from these, whether driven by wind or not.
   b.   Water that backs up through a sewer or drain.
   c.   Water below the surface of the ground.  This includes water that exerts pressure on or flows, seeps or leaks into a building, sidewalk, foundation or other structure or through a door, window or other opening.

   If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.  **We** do cover loss to **equipment** and **media** only, caused by water, if the property is away from a **described premises.**

---

12. a fault, defect, error or omission in a plan, blueprint, design or specification.

13. a fault or defect in workmanship, installation or material.

14. A change in the electrical power supply to the equipment that occurs away from a **described premises.** This includes interruption, power surge, reduced voltage, low pressure, black- or brownouts and other interruptions of normal service.

**Coverages B and C –** The following additional exclusions apply to Coverages B and C. **We** do not pay for loss that results from:

1. electrical or magnetic injury, disturbance or erasure of electronic recordings. **We** do cover the loss caused by the fire or explosion.

2. breakdown or malfunction of the **equipment** while the **media** is being run through the system. If a fire or explosion results, **we** do cover the loss caused by the fire or explosion.

3. An error or omission in programming or giving improper instructions.

**Coverage C –** The following additional exclusions apply to Coverage C. **We** do not pay for loss that results from:

1. the enforcement of a code, ordinance or law that regulates the use, construction, repair or demolition of covered property or a building or structure.

2. the suspension, lapse or cancellation of a lease, license, contract or order.

3. Strike, riot or civil commotion.

There are other perils that are not covered. These are listed in the Inland Marine General Terms section of this endorsement. They apply to Coverages A, B and C.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the **equipment** or **media** is in the United States, Canada or Puerto Rico. This includes **equipment** or **media** that is in transit except to or from Alaska, Hawaii or Puerto Rico.

## AMOUNT WE PAY

This replaces the "Amount We Pay" provision in the Inland Marine General Terms section. The smallest of the amounts shown below is the most that **we** will pay for a loss:

1. **Equipment** and **Media –**

   a. the amount determined under "Valuation."
   b. the cost to repair, replace or rebuild the property with material of like kind and quality. For **media,** this includes the cost to reproduce the **media** if it is actually reproduced. If not reproduced, **we** will pay only the value of blank **media.**
   c. the coverage amounts shown.

2. **Extra Expense –**

   a. the percent shown for each part of the **restoration period.**
   b. the actual total **extra expense** that results from a covered loss.
   c. the coverage amounts shown.

## PREMISES PROTECTION

**You** must maintain in proper working order the protective devices that were in operation on the effective date of this coverage.

AAIS

**PLEASE READ THIS ENTIRE POLICY CAREFULLY**
**IT IS A LEGAL CONTRACT**

IM-100
(Ed. 6-84)

# AGREEMENT

In return for **your** payment of the required premium, **we** provide the Inland Marine coverage described in this policy during the policy period subject to the:

1. Inland Marine General **Terms.**
2. Inland Marine coverage **terms.**
3. policy **terms** that relate to cancellation, changes made to the policy, examination of books and records, inspections and surveys, and assignment or transfer of rights or duties.

## INLAND MARINE GENERAL TERMS

### DEFINITIONS

1. The words **you** and **your** mean the person, persons or organization named on the declarations.

2. The words **we**, **us** and **our** mean the company providing this insurance.

3. **Insured** means **you**. With respect to covered property that is not used for **business,** the word **insured** also means:

   a. **your** spouse;

   b. **your** relatives if residents of **your** household;

   c. persons under the age of 21 in **your** care or the care of **your** resident relatives; or

   d. **your** legal representative if **you** die while insured by this policy. (This person is an **insured** only for the covered property.)

4. **Business** means a trade, profession or occupation whether full or part time. This includes:

   a. the rental of property to others; and

   b. farming.

5. **Described premises** means that part of the building and grounds which **you** occupy at the location shown.

6. **Terms** means the conditions, definitions, exclusions, limitations and provisions used in this policy.

### PERILS EXCLUDED

**We** do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as or after the excluded peril. **We** do not pay for a loss that results from:

1. wear and tear to covered property.

2. gradual deterioration of covered property.

3. a fault or weakness that is intrinsic to the property which causes it to break, spoil, become defective or destroy itself.

4. insects or vermin damage to covered property.

5. delay, loss of market, loss of use, or **business** interruption.

6. obsolescence or depreciation of covered property.

7. war. This means:

   a. declared war, undeclared war, civil war, insurrection, rebellion or revolution;

   b. a warlike act by a military force or by military personnel;

   c. the destruction, seizure or use of the property for a military purpose; or

   d. the discharge of a nuclear weapon even if it is accidental.

8. civil authority. This means:

   a. seizure or destruction under quarantine or customs regulations;

   b. confiscation or destruction by order of a government or public authority; or

   c. risks of contraband or illegal transportation or trade.

9. nuclear hazard. This means nuclear reaction, nuclear radiation or radioactive contamination:

   a. whether controlled or uncontrolled; or

   b. caused by, contributed to or aggravated by a peril covered by this policy. A loss caused by nuclear hazard will not be considered to be a loss caused by fire, explosion or smoke. If fire is covered by this policy, we do cover the loss caused by a fire that results from the nuclear hazard.

10. other perils that are not covered. These are listed for each coverage.

**We** do not pay for such excluded loss even if the following contribute to, aggravate or cause the loss:

1. the act or decision of a person, group, organization or governmental body. This includes the failure to act or decide.

IM-100
AAIS

—1—

© Copyright 1984

2. a fault, defect or error, negligent or not, in:

   a. planning, zoning, surveying, siting, grading, compacting, land use, or development of property.

   b. the design, blueprint, specification, workmanship, construction, renovation, remodeling or repair of property. This includes the materials needed to construct, remodel or repair the property.

   c. maintenance of property.

   These apply whether or not the property is covered by this policy.

3. a condition of the weather.

4. the collapse of a building or structure.

## WHAT MUST BE DONE IN CASE OF LOSS

1. **Protect the Property.** The **insured** must take all reasonable steps to protect or recover the covered property after a loss has occurred.

2. **Notice.** The **insured** must promptly notify **us** or **our** agent, in writing if requested.

3. **Notice to Police.** The **insured** must promptly notify the police if the loss results from a violation of the law.

4. **Proof of Loss.** The **insured** must send **us** a statement of loss, under oath if requested, within 90 days after the loss occurs. The following information must be included:

   a. the date, time, place and details of the loss.

   b. other insurance that may cover the loss.

   c. **your** interest and the interest of all others in the property involved in the loss. This includes all mortgages and liens.

   d. changes in the title to the covered property during the policy period.

   e. detailed estimates for the repair or replacement of the covered property.

   f. an inventory of lost, damaged and all remaining covered property. This must show in detail the quantity, description, cost and actual cash value of the property and the amount of the loss. Copies of all bills, receipts and related documents that substantiate the inventory must be attached.

5. **Additional Duties.** As often as **we** may reasonably request, an **insured** must:

   a. submit to an examination under oath.

   b. assist **us** in obtaining the attendance of employees for examination under oath.

   c. exhibit damaged and undamaged property.

   d. produce all records that relate to value, loss and cost, and permit copies and abstracts to be made from them.

6. **Cooperation.** The **insured** must cooperate with **us** in performing all acts that are required by this Inland Marine coverage.

7. **Volunteer Payments.** The **insured** may not voluntarily make payments, assume obligations, pay or offer rewards or incur other expenses, except at the **insured's** own expense.

8. **Abandonment.** The **insured** may not abandon the property to **us** without **our** written consent.

## HOW MUCH WE PAY

1. **Actual Cash Value.** Actual cash value includes a deduction for depreciation, however caused.

2. **Valuation.** Valuation is based on the actual cash value of the property at the time of loss

3. **The Amount We Pay.** The smallest of the amounts shown below is the most that we willpay for a loss:

   a. the amount determined under "Valuation."

   b. the cost to repair, replace or rebuild the property with material of like kind and quality.

   c. the amount of **your** interest in the property.

   d. the coverage amount shown.

   This amount will be adjusted by the deductible amount, coinsurance penalty or other limitation which may apply.

4. **Loss To Pairs Or Sets.** If there is a loss to an item that is part of a pair or set, at **your** option we willpay the full actual cash value up to the coverage amount shown for the pair or set. **You** willgive **us** the remainder of the pair or set. If **you** do not choose this option, we willpay only for a reasonable part of the actual cash value of the pair or set.

5. **Loss To Parts.** If there is a loss to a part of an item that consists of several parts, we willpay only for the loss to that part. A loss to a part is not considered to be a loss to the whole item.

6. **Insurance Under More Than One Policy.** If there is other collectible insurance that applies to a covered loss, or would have applied in the absence of this Inland Marine coverage, we willpay for the loss only after the full amount from the other insurance has been paid.

7. **Insurance Under More Than One Coverage.** If more than one coverage applies to the same loss, we will pay no more than the actual amount of the loss.

8. **Losses Paid By Others.** We willnot pay for that part of a loss that has been paid by someone else.

9. **Restoring the Coverage Amount.** The payment of a claim will not reduce the coverage amount. If we pay a loss for

items that are separately listed and the coverage amount that applies to these items is reduced at your request, we will return the unearned premium for these items to you.

## LOSS PAYMENT

1. **Our Options.** We may:

   a. pay the loss in money ; or

   b. repair, replace or rebuild the property. We must give the **insured** notice of **our** intent to do so within 30 days after we have received a satisfactory proof of loss.

   We may take all or a part of the damaged property at the agreed or appraised value. Property that we have paid for or replaced will become **our** property.

2. **Your Property.** We will adjust all losses with **you**. Payment will be made to **you** unless a loss payee is named with respect to this Inland Marine coverage.

3. **Property of Others.** Loss to property of others may be adjusted with **you**. We reserve the right to adjust the loss with the owner. **Our** payment to the owner will satisfy **our** obligation to **you** for loss to this property. At **our** option, without cost to **you**, **we** may choose to defend **you** from suits which result from a covered loss to the property of others.

4. **When We Pay.** We will pay for a loss within 30 days after a satisfactory proof of loss is received and the amount of the loss has been agreed to in writing.

## CLAIMS AGAINST OTHERS

1. **Subrogation.** If **we** pay for a loss, **we** may require the **insured** to assign to **us** the right of recovery against others. We will not pay for a loss if the **insured** impairs this right to recover. The **insured's** right to recover from others may be waived in writing before a loss occurs.

2. **Loan Receipts.** When **we** believe that a loss can be recovered from others:

   a. we may make an advance payment to **you** in the form of a loan.

   b. at **our** expense, **we** will be allowed to bring suit in the **insured's** name against those who are responsible for the loss.

   c. the loan will be repaid from the amount recovered.

3. **Recoveries.** The **insured** must notify **us** or **we** must notify the **insured** promptly if either receives a recovery for a loss which **we** have paid. The costs that are incurred by either party in making the recovery are to be reimbursed first. We are entitled to the surplus up to the

amount that **we** have paid for the loss. The **insured** may then keep any excess.

## DISAGREEMENTS

2. **Appraisal.** If **you** and **we** do not agree on the amount of the loss, the actual cash value of the property or the cost to repair or replace the property, either party may demand that these amounts be determined by appraisal.

   If either party makes a written demand for appraisal, each will select a competent, independent appraiser and notify the other of the appraiser's identity within 20 days after the receipt of the written demand. The two appraisers will select a competent, impartial umpire. If the two appraisers are unable to agree upon an umpire within 15 days, **you** or **we** can ask a judge of a court in the state where the appraisal is pending to select an umpire

   The appraisers will determine:

   a. the amount of the loss:

   b. the actual cash value of the property; and

   c. the cost to repair or replace the property.

   Each amount will be stated separately.

   If the appraisers submit a written report of an agreement to **us**, the agreement will establish these amounts. If the appraisers fail to agree within a reasonable time, they will submit only their differences to the umpire. A written agreement by any two of these three will establish the amounts stated above.

   Each appraiser will be paid by the party selecting that appraiser. The compensation of the umpire and other expenses of the appraisal will be shared equally by **you** and **us**.

2. **Suit Against Us.** No suit to recover for a loss may be brought against **us** unless:

   a. all the terms of this Inland Marine coverage have been complied with; and

   b. the suit is commenced within one year after the loss.

## OTHER POLICY CONDITIONS

1. **Conformity With Statutes.** The terms of this Inland Marine coverage in conflict with statutes of the state where this policy is issued are changed to conform to those statutes.

2. **Continuous Policies.** If this policy is issued on a continuous basis (with no specific date of expiration), **we** may substitute or **we** may add at each anniversary date the forms and endorsements then authorized for use with this Inland Marine coverage.

3. **Liberalization.** If a revision of a form or endorsement which would broaden coverage without an additional

IM-100
AAIS

—3—

© Copyright 1984

premium is adopted during the policy period, or within 6 months before the Inland Marine coverage is effective, the broadened coverage will apply.

4. **Misrepresentation, Concealment or Fraud.** This Inland Marine coverage is void if before or after a loss:

   a. the **insured** has concealed or misrepresented:

      1) a material fact or circumstance that relates to this insurance or the subject thereof; or

      2) an **insured's** interest herein.

   b. there has been fraud or false swearing by an **insured** with regard to a matter that relates to this insurance or the subject thereof.

5. **No Benefit To Bailee.** This Inland Marine coverage will not benefit those who are paid to assume custody of the covered property.

6. **Reporting Terms Only.** This Inland Marine coverage may be subject to reporting **terms.** If it is cancelled, **you** must report the required amounts as of the cancellation date.

AAIS

IM-810
(Ed. 8-85)

This Inland Marine coverage is subject to the terms shown below
The Inland Marine General Terms also apply.

- PLEASE READ THIS CAREFULLY -

CONTRACTORS EQUIPMENT COVERAGE

(The information required below may be shown on a separate schedule of supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy. A coverage amount must be shown for each item. This is the most that we will pay for a loss to that item.

| Described Item | Manufacturer | Serial Number | Coverage Amount |
|---|---|---|---|
| 1. | | | $_____ |
| 2. | | | $_____ |
| 3. | | | $_____ |
| 4. | | | $_____ |
| 5. | FOR FURTHER DESCRIPTION LIMITS AND AMOUNTS SEE DECLARATION PAGE | | $_____ |
| 6. | | | $_____ |
| 7. | | | $_____ |
| 8. | | | $_____ |
| 9. | | | $_____ |
| 10. | | | $_____ |

DEDUCTIBLE

The following deductible amount will apply separately to each item involved in each loss after all other adjustments have been made.                    $_____

COINSURANCE

You must maintain a minimum coverage amount for each described item. This minimum coverage amount is the full actual cash value of the described item. If the coverage amount at the time of loss is less than the minimum coverage amount, we will pay only a part of a loss. Our part of the loss will be determined by dividing the coverage amount by the minimum coverage amount. This percentage will be applied to the final adjusted loss to determine the amount that we will pay.

CEG-20

## PROPERTY COVERED

We cover only those described items for which a coverage amount is shown. It is a condition that at the time this coverage is effective all described items are in sound condition.

## EXTENSION OF COVERAGE

We cover contractor's equipment acquired during the policy period for up to 30 days after each item is acquired. You must provide us with a complete description of each item within this 30-day period and pay the additional premium.

We cover these items for their actual cash value. The most that we will pay for all such items will be the smaller of the following:

1.      25% of the total coverage amount for all described items; or
2.      $50,000.

Coverage for each item acquired will end at the earliest of the following:

1.      when the newly acquired item is reported to us.
2.      the end of the reporting period shown above.
3.      the expiration date of this policy.

## PROPERTY EXCLUDED

We do not cover:
1.      property that is not in sound condition when this coverage is effective.
2.      property that you rent to others.
3.      property that is waterborne. We do cover property that is in transit on a regular ferry, lighter or carfloat.
4.      property that is underground, in caissons or underwater.
5.      property that is or will be a permanent part of a building or structure.
6.      plans, blueprints, designs or specifications.
7.      self-propelled vehicles that are designed for highway use.
8.      aircraft.
9.      watercraft.
10.     tires and tubes mounted on vehicles. We do cover tires and tubes mounted on covered vehicles, if
        a.      the loss is caused by fire, windstorm, theft or vandalism.
        b.      the loss is caused by a covered peril which also damages the vehicle.

## PERILS COVERED

1.      Except for booms that exceed 25 feet in length, we cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

2.      For booms that exceed 25 feet in length, we cover direct physical loss to this property caused only by fire; lightning; windstorm; hail; earthquake; flood; smoke; explosion; aircraft, spacecraft, self-propelled missiles and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike; riot; civil commotion; vandalism; theft; attempted theft; sprinkler leakage; collapse of buildings and the upset or overturn of the unit of which the boom is a part, or the collision of the unit with another object.

CEG-21

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded peril.  We do not pay for a loss that results from:

1.  a dishonest or illegal act, alone or in collusion with another, by:

    a.  you;
    b.  others who have an interest in the property;
    c.  others to whom you entrust the property; or
    d.  the employees or agents of a., b. or c., whether or not they are at work.

    We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2.  mysterious disappearance.

3.  any cause when the only proof that a loss occurred is an inventory shortage.

4.  dampness of atmosphere.

5.  extremes of temperature.

6.  corrosion or rust.

7.  pitting.

8.  mechanical breakdown or failure.  If a fire or explosion results, we do cover the loss cause by the fire or explosion.

9.  electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

10.  a process to repair, adjust, service or maintain the covered property.  If a fire or explosion results, we do cover the loss caused by the fire or explosion.

11.  the weight of a load when it exceeds the designed capacity of a machine to lift or support the load from any position.

There are other perils that are not covered.  These are listed in the Inland Marine General Terms.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada or Puerto Rico.  This includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

CEG-22

AAIS

This Inland Marine coverage is subject to the terms shown below.
The Inland Marine General Terms also apply.

IM-827
(Ed. 5-86)

- PLEASE READ THIS CAREFULLY -
# INSTALLATION COVERAGE
## REPORTING FORM

(The information required below may be shown on a separate schedule or supplemental Declarations.)

For each location or situation described below, the coverage amount shown is the most that we will pay for a loss.

**Coverage Amount**

1. For each jobsite location.                                    $ _____

2. For property in transit.                                      $ _____

3. For property at a temporary storage location.                 $ _____

4. For property at all jobsite locations.                        $ _____

### DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.                                 $ _____

### COINSURANCE

You must report to us the full actual cash value of all covered property at each jobsite where work is in progress. If the full actual cash value is not reported, we will pay only a part of a loss. Our part of the loss will be determined by dividing the amount shown in the last report received by the full actual cash value of the property on the date for which the report was made. This percent will be applied to the final adjusted loss to determine the amount that we will pay.

### DEFINITIONS

In addition to the definitions in the Inland Marine General Terms, the following definition applies:

**Temporary Storage Location** - This is a location where property that is to be a permanent part of a completed project is stored while waiting to be delivered to a jobsite where work is in progress or will begin in 30 days.

## PROPERTY COVERED

We cover all materials, supplies, equipment, machinery and fixtures that are owned by you, or for which you are legally liable, that are to be installed by you or at your direction while the property is:

1. on a covered jobsite.

2. in transit.

3. at a temporary storage location.

Coverage for this property begins when the property is at your risk which begins on or after the effective date of this coverage. This coverage will end at the earliest of the following:

4. when the owner or buyer accepts the property.

5. when building materials, equipment or supplies have been installed and have become a permanent part of a building or structure.

6. when a jobsite is abandoned with no intention to complete the installation work.

7. 30 days after installation work at a jobsite is completed.

8. after your interest in a jobsite ends.

9. on the expiration date of the policy, or when this policy is cancelled.

## WHAT IS NOT COVERED

We do not cover:

1. an existing building or structure to which an addition,

IM-827

—1—

© Copyright 1986 AAIS

alteration, improvement or repair is being made.

2. property stored at a permanent warehouse or storage yard that you own.

3. money. This means currency, coins, bank notes, money orders, traveler's checks, bullion and similar items.

4. securities. These are any negotiable or nonnegotiable agreements in writing that have value. They include revenue stamps, other stamps in current use, tokens and tickets.

5. accounts, bills, deeds or an evidence of debt.

6. a plan, blueprint, design or specification.

7. self-propelled vehicles that are designed for highway use.

8. aircraft.

9. watercraft.

10. all animals, including birds and fish.

11. trees, grass, sod, shrubbery or plants.

12. machinery, tools, equipment, supplies or similar property that do not become a permanent part of the installation at a covered jobsite. This includes contractors' equipment and other tools that belong to a contractor or subcontractor, but does not include scaffolds, construction forms or temporary structures.

## PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same time as, or after the excluded peril. We do not pay for a loss that results from:

1. a dishonest or illegal act, alone or in collusion with another, by:

   a. you;

   b. others who have an interest in the property;

   c. others to whom you entrust the property; or

   d. the employees or agents of a., b., or c., whether or not they are at work.

We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2. swindling, fraud, trick or false pretense.

3. the acceptance of:

   a. conterfeit money or fraudulent post office or express money orders; or

   b. checks or promissory notes that are not paid upon presentation.

4. mysterious disapperance.

5. any cause when the only proof that a loss occurred is an inventory shortage.

6. corrosion or rust.

7. rot or mold.

8. dampness of atmosphere.

9. expansion or contraction due to a change in temperature.

10. mechanical or electrical breakdown or failure. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

11. electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

12. testing. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

13. the weight of a load when it exceeds the designed capacity of a machine to lift, move or support the load from any position.

14. the cost to make good or replace faulty or defective materials or workmanship.

15. a fault, defect, deficiency, error or omission in a plan, blueprint, design or specification.

There are other perils that are not covered. These are listed in the Inland Marine General Terms.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada or Puerto Rico. This includes property that is in transit except to or from Alaska, Hawaii or Puerto Rico.

## VALUATION

This replaces the "Valuation" provision in the Inland Ma-

rine General Terms. The value of the property will be its actual cash value at the time of loss. This value includes:

1. labor charges.

2. transportation costs.

3. the cost of insurance.

4. taxes.

## REPORTING TERMS

1. **Reports -** You must send us a written report showing the total finished contract value of all covered property at each jobsite location where work is in progress as of the last business day of each month. This report is due within 30 days after the end of each month. You must report to us the total finished contract value of all covered property at each jobsite location, even if it exceeds the coverage amount shown. The report does not change the coverage amount.

2. The premium shown is only an estimate. The earned premium will be determined by multiplying the total amount reported to us each month by the monthly rate. The earned premium will be applied against the estimated premium. All earned premium that exceeds the estimated premium is due at the time the premium is adjusted. If the total earned premium for each twelve month period does not exceed the estimated premium, we will return the difference to you.

3. **Minimum Premium -** The minimum premium is not subject to a refund.

4. **Late Reports -** If a report is not received when due, we will not pay more for a loss than the amount shown on the last report received before the loss. If this is the first report due, we will not pay more than 90 percent of the loss that would otherwise have been paid.

IM-827                    —3—                    © Copyright 1986 AAIS

# INLAND MARINE

This Inland Marine coverage is subject to the terms shown below. The Inland Marine General Terms also apply. Please read this carefully.

## SCHEDULED PROPERTY COVERAGE

(The information required below may be shown on a separate schedule or supplemental Declarations).

Each item that is covered must be described below or on a schedule that is a part of this policy. A coverage amount must be shown for each item. This is the most that we will pay for a loss to that item.

| Described Item | Coverage Amount |
|---|---|
| 1. | $_____ |
| 2. | $_____ |
| 3. | $_____ |
| 4. | $_____ |
| 5. | $_____ |
| 6. | $_____ |
| 7. | $_____ |
| 8. | $_____ |
| 9. | $_____ |
| 10. | $_____ |

**FOR FURTHER DESCRIPTION, LIMITS AND AMOUNTS SEE DECLARATION PAGE.**

## DEDUCTIBLE

The following deductible amount will apply to each loss after all other adjustments have been made.                    $_____

## COINSURANCE

You must maintain a minimum coverage amount for each described item. This minimum coverage amount is the full actual cash value of the described item. If the coverage amount at the time of loss is less than the minimum coverage amount, we will pay only a part of a loss. Our part of the loss will be determined by dividing the coverage amount by the minimum coverage amount. This percent will be applied to the final adjusted loss to determine the amount that we will pay.

## PROPERTY COVERED

We cover only those described items for which a coverage amount is shown.

## PERILS COVERED

We cover direct physical loss to covered property unless the loss is caused by a peril that is excluded. The loss must be due to an external cause.

IM 901 (8-84)                                                        Page 1 of 2

## PERILS EXCLUDED

We do not pay for a loss if one or more of the following excluded perils apply to the loss, regardless of other causes or events that contribute to or aggravate the loss, whether such causes or events act to produce the loss before, at the same as, or after the excluded peril. We do not pay for a loss that results from:

1. a dishonest or illegal act, alone or in collusion with another, by:
   a. you;
   b. others who have an interest in the property;
   c. others to whom you entrust the property; or
   d. the employees or agents of a., b. or c., whether or not they are at work.

   We do cover loss caused by dishonest acts by carriers or other bailees for hire.

2. swindling, fraud, trick or false pretense.

3. the acceptance of:
   a. counterfeit money or fraudulent post office or express money orders; or
   b. checks or promissory notes which are not paid upon presentation.

4. mysterious disappearance.

5. any cause when the only proof that a loss occurred is an inventory shortage.

6. breakage of glass or similar fragile items. We do cover breakage if it is caused by fire; lightning, windstorm, hail, earthquake, flood, smoke, explosion, aircraft, spacecraft, self-propelled missiles, and objects that fall from these items; vehicles, including an accident to a transporting vehicle; strike, riot, civil commotion, vandalism, theft, attempted theft, sprinkler leakage or collapse of buildings.

7. a process to repair, adjust, service or maintain the covered property. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

8. mechanical breakdown or failure. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

9. electrical currents, other than those caused by lightning, that damage an electrical apparatus or its wiring. If a fire or explosion results, we do cover the loss caused by the fire or explosion.

There are other perils that are not covered. These are listed in the Inland Marine General Terms.

## TERRITORY WHERE COVERAGE APPLIES

Coverage applies only while the property is in the United States, Canada, or Puerto Rico. This includes property that is in transit, except to or from Alaska, Hawaii or Puerto Rico.

**THIS ENDORSEMENT CHANGES THE POLICY.  PLEASE READ IT CAREFULLY.**

# IDENTITY RECOVERY COVERAGE
### IDENTITY THEFT CASE MANAGEMENT SERVICE AND EXPENSE REIMBURSEMENT

The following is added as an Additional Coverage to the Property section:

**IDENTITY RECOVERY COVERAGE**

We will provide the Case Management Service and Expense Reimbursement Coverage indicated below if all of the following requirements are met:

1. There has been an "identity theft" involving the personal identity of an "identity recovery insured" under this policy; and

2. Such "identity theft" is first discovered by the "identity recovery insured" during the policy period for which this Identity Theft Expense coverage is applicable; and

3. Such "identity theft" is reported to us within 60 days after it is first discovered by the "identity recovery insured."

If all three of the requirements listed above have been met, then we will provide the following to the "identity recovery insured":

   **1. Case Management Service**

   Services of an "identity recovery case manager" as needed to respond to the "identity theft"; and

   **2. Expense Reimbursement**

   Reimbursement of necessary and reasonable "identity theft expenses" incurred as a direct result of the "identity theft."

This coverage is additional insurance.

**EXCLUSIONS**

The following additional exclusions apply to this coverage:

We do not cover:

1. "Identity theft  expenses" incurred to restore a professional or business identity.

2. "Identity theft expenses" incurred due to any fraudulent, dishonest or criminal act by an "identity recovery insured" or any person aiding or abetting an "identity recovery insured", or by any authorized representative of an "identity recovery insured", whether acting alone or in collusion with others.

3. Loss other than "identity theft expenses".

4. "Identity theft expenses" arising from any "identity theft" by or with the knowledge of any relative or former relative of the "identity recovery insured."

5. Loss arising from an "identity theft" that is first discovered by the "identity recovery insured" prior to the policy period or after the policy period, whether or not such "identity theft" began or continued during the policy period.

6. Loss arising from an "identity theft" that is not reported to us within 60 days after it is first discovered by the "identity recovery insured."

7. Loss arising from an "identity theft" that is not reported in writing to the police.

**LIMITS**

Case Management Service is available as needed for any one "identity theft" for up to 12 consecutive months from the inception of the service. Expenses we incur to provide Case Management Service do not reduce the amount of limit available for Expense Reimbursement coverage.

Expense Reimbursement coverage is subject to a limit of $25,000 annual aggregate per "identity recovery insured." Regardless of the number of claims, this limit is the most we will pay for the total of all loss or expense arising out of all "identity thefts" to any one "identity recovery insured" which are first discovered by the "identity recovery insured" during a 12-month period starting with the beginning of the present annual policy period. If an "identity theft" is first discovered in one policy period and continues into other policy periods, all loss and expense arising from such "identity theft" will be subject to the aggregate limit applicable to the policy period when the "identity theft" was first discovered.

Legal costs as provided under item d. of the definition of "identity theft expenses" are part of, and not in addition to, the Expense Reimbursement coverage limit.

**DEDUCTIBLE**

Case Management Service is not subject to a deductible.

Expense Reimbursement coverage is subject to an annual aggregate deductible per "identity recovery insured" of $500. Any one "identity recovery insured" shall be responsible for only one deductible under this Identity Recovery Coverage during any one policy period.

**CONDITIONS**

The following additional conditions apply to this coverage:

**A. Assistance and Claims**

   For assistance, the "identity recovery insured" should call the **Identity Recovery Help Line** at **1-888-772-1796**.

   The **Identity Recovery Help Line** can provide the "identity recovery insured" with:

   1. Information and advice for how to respond to a possible "identity theft"; and

   2. Instructions for how to submit a service request for Case Management Service and/or a claim form for Expense Reimbursement Coverage.

DRAFT – FOR DISCUSSION PURPOSES ONLY

The "identity recovery insured" must submit the applicable form to request Case Management Service or Expense Reimbursement Coverage.

As respects Expense Reimbursement Coverage, the "identity recovery insured" must send to us, within 60 days after our request, receipts, bills or other records that support his or her claim for "identity theft expenses."

**B. Computer Security**

It is the responsibility of each "identity recovery insured" to use and maintain his or her computer system security, including personal firewalls, anti-virus software and proper disposal of used hard drives.

**C. Services**

The following conditions apply as respects any services provided by us or our designees to any "identity recovery insured" under this endorsement:.

1. Our ability to provide helpful services in the event of an "identity theft" depends on the cooperation, permission and assistance of the "identity recovery insured."

2. We do not warrant or guarantee that our services will end or eliminate all problems associated with an "identity theft" or prevent future "identity thefts."

**DEFINITIONS**

With respect to the provisions of this endorsement only, the following definitions are added:

1. **"Identity Recovery Case Manager"** means one or more individuals assigned by us to assist an "identity recovery insured" with communications we deem necessary for re-establishing the integrity of the personal identity of the "identity recovery insured." This includes, with the permission and cooperation of the "identity recovery insured," written and telephone communications with law enforcement authorities, governmental agencies, credit agencies and individual creditors and businesses.

2. **"Identity Theft"** means the fraudulent use of the social security number or other method of identifying an "identity recovery insured." This includes fraudulently using the personal identity of an "identity recovery insured" to establish credit accounts, secure loans, enter into contracts or commit crimes.

   "Identity theft" does not include the fraudulent use of a business name, d/b/a or any other method of identifying a business activity.

   "Identity theft" does not include the unauthorized use of a valid credit card, credit account or bank account. However, "identity theft" does include the fraudulent alteration of account profile information, such as the address to which statements are sent.

3. **"Identity Theft Expenses"** means the following when they are reasonable and necessary expenses that are incurred in the United States or Canada as a direct result of an "identity theft":

   a. Costs for re-filing applications for loans, grants or other credit instruments that are rejected solely as a result of an "identity theft."

   b. Costs for notarizing affidavits or other similar documents, long distance telephone calls and postage solely as a result of your efforts to report an "identity theft" or amend or rectify records as to your true name or identity as a result of an "identity theft."

   c. Costs for up to six credit reports from established credit bureaus (with no more than two reports from

      any one credit bureau) dated within 12 months after your knowledge or discovery of an "identity theft."

   d. Fees and expenses for an attorney appointed by us for:

      (1) Defending any civil suit brought against an "identity recovery insured" by a creditor or collection agency or entity acting on behalf of a creditor for non-payment of goods or services or default on a loan as a result of an "identity theft"; and

      (2) Removing any civil judgment wrongfully entered against an "identity recovery insured" as a result of the "identity theft."

4. **"Identity Recovery Insured"** means the following:

   a. When the business insured under this policy is a sole proprietorship, the "identity recovery insured" is the individual person who is the sole proprietor of the insured business.

   b. When the business insured under this policy is a partnership, the "identity recovery insureds" are all partners listed on this policy as insureds.

   c. When the business insured under this policy is a corporation or other organization, the "identity recovery insureds" are all individuals having an ownership position of 20% or more of the insured business. However, if and only if there is no one who has such an ownership position, then the "identity recovery insured" shall be the chief executive of the insured entity.

   An "identity recovery insured" must always be an individual person. The business insured under this policy is not an "identity recovery insured."

All other provisions of this policy apply.

# EXHIBIT B

## Corell, Emilee

| | |
|---|---|
| **From:** | Ness, Jon |
| **Sent:** | Monday, April 13, 2020 2:39 PM |
| **To:** | claimsmail |
| **Subject:** | FW: Timothy King v. Oakland - Claim 00381349 |
| **Attachments:** | Complaint and Jury Demand.pdf; Answer.pdf; Acknowledgement and Waiver of Service - Oakland Improvement.pdf; Acknowlegement and Waiver of Service - Paul Oakland Jr..pdf |
| | |
| **Categories:** | Green Category |

Jon Ness, AIC
Casualty Adjuster
Midwest Family Mutual Insurance Company
P.O. Box 9425, Minneapolis, MN 55440-9425
jness@midwestfamily.com
P: 800-225-5636 ext. 7040
Fax: 763-951-7092



"We serve our Agents first to serve Policyholders best!"

**From:** Bryan Kautz <bkautz@rmkfirm.com>
**Sent:** Monday, April 13, 2020 2:26 PM
**To:** Ness, Jon <jness@midwestfamily.com>
**Subject:** RE: Timothy King v. Oakland - Claim 00381349

Jon:

I hope all is going well for you.  As you are aware, I represent Paul Oakland, Jr. and Oakland Improvements, Inc. in regard to a claim of construction defect being asserted against my clients.  Some time ago I submitted a tender of that claim to Midwest Family Mutual Insurance Company for defense and indemnification.  I received a coverage denial letter shortly thereafter.

However, recently, the claimant, Mr. Timothy King, filed a lawsuit against my clients, which I am attaching a copy hereto, as well as a copy of the Answer that I filed on behalf of my clients.  Again, on behalf of my clients, I am tendering the defense and indemnification of this matter to Midwest Family Mutual Insurance Company on behalf of my clients.  My clients have specifically requested that I continue to be retained to represent them in this lawsuit, based on my experience in construction litigation, as well as the fact that I handle insurance defense matters for many carriers throughout Montana.

I can also tell you that Acuity Insurance Company is involved at this time as it insured my client beginning in the year 2015.  Please get a hold of me once you have had a chance to review the lawsuit so that we can discuss this matter.  Thanks Jon!

Sincerely,

*Bryan M. Kautz*
Ritchie Manning Kautz PLLP
175 North 27th Street, Suite 1206
Billings, Montana 59101
(406) 545-0543
bkautz@rmkfirm.com



**Notice:** This electronic mail transmission may constitute a privileged attorney-client and confidential communication.  It is not intended for transmission to, or receipt by, any unauthorized persons.  If you have received this electronic mail transmission in error, please delete it from your system without copying it, and notify the sender by reply e-mail or by calling Ritchie Manning Kautz PLLP at 406.601.1400.

---

**From:** Ness, Jon <jness@midwestfamily.com>
**Sent:** Monday, January 13, 2020 12:56 PM
**To:** 'bkautz@rmkfirm.com' <bkautz@rmkfirm.com>
**Subject:** Timothy King v. Oakland - Claim 00381349
**Importance:** High

Mr. Kautz,

We are in receipt of the letter of representation that was sent to you regarding the above referenced matter.  We are the insurance carrier for Oakland during the period of 11/10/2013 to 11/10/2014.

Can you confirm when the certificate of occupancy was issued and when the first notice of damage was reported?  Also, since our police cancelled as of 11/10/14.  This matter will need to be reported to your client's current insurance carrier was well as any other carrier since 2014.

Jon

Jon Ness, AIC
Casualty Adjuster
Midwest Family Mutual Insurance Company
P.O. Box 9425, Minneapolis, MN 55440-9425
jness@midwestfamily.com
P:  800-225-5636 ext. 7040
Fax:  763-951-7092



**"We serve our Agents first to serve Policyholders best!"**

Confidentiality Notice:
This information is intended only for the use of the addressee and
may contain information that is privileged, confidential, and exempt
from disclosure under applicable law.   If you are not the intended
recipient, or the employee or agent responsible for delivering this
message to the intended recipient, you are hereby notified that any
dissemination, distribution or copying of the communication is
strictly prohibited.   If you have received this communication in
error, please notify us immediately by returning it to the sender
and deleting it from your computer system.

# EXHIBIT C

NO.

FILED

FEB 19 2020

HAZEL L. PARKER
CLERK OF DISTRICT COURT
DEPUTY

DODD LAW FIRM, P.C.
Matthew A. Dodd
PO Box 160669
Big Sky, MT 59716
406.414.7640
406.551.7601 fax
matt@doddlawfirmpc.com

## IN THE SIXTEENTH JUDICIAL DISTRICT COURT,
### COUNTY OF CUSTER,
### STATE OF MONTANA

| | |
|---|---|
| Timothy King, | Case No. DV 2020-24 |
| Plaintiff, | Judge MICHAEL B. HAYWORTH |
| vs. | |
| Paul Oakland, Jr. and Oakland Improvements, Inc., | Complaint and Demand for Jury Trial |
| Defendants. | |

Timothy King, by and through undersigned counsel, files this Complaint and Demand for Jury Trial against Paul Oakland, Jr. and Oakland Improvements, Inc. as follows:

## INTRODUCTION

1.     This is a case about a builder who promised a "turn-key" home but delivered a home needing extensive and expensive repairs.

2.     Because Defendants misled Mr. King, failed to properly construct the home, and failed to deliver the home in "turn-key" condition, Mr. King has been left with a defective home that will require significant repairs in order to be safe and habitable.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–1 of 9–

## PARTIES, JURISDICTION, AND VENUE

3.      Plaintiff, Tim King, is a resident of Custer County, Montana.

4.      Defendant, Paul Oakland, is a resident of Custer County, Montana.

5.      Defendant, Oakland Improvements, Inc., is domestic profit corporation with its primary place of business located in Custer County, Montana.

6.      The real property at issue in this matter is located in Custer County, Montana.

7.      This Court has personal jurisdiction over the parties to this action pursuant to rule 4(b) of the Montana Rules of Civil Procedure, as some of the claims for relief arise out of the ownership, use, or possession of any property, or of any interest therein, situated within Montana.

8.      This Court has subject matter jurisdiction pursuant over this actual pursuant to § 3-5-302, MCA.

9.      Venue is proper pursuant to §§ 25-2-121 – 123, MCA.

## FACTUAL BACKGROUND

10.      Defendants bought land and constructed homes on that land in the Southgate Meadows neighborhood in Miles City, Montana.

11.      As part of their business, Defendants acted as the builder-vendor of homes in the Southgate Meadows neighborhood.

12.      In the spring of 2014, Defendants discussed the sale of lot within Southgate Meadows with Mr. King.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–2 of 9–

13.     While Defendants were willing to sell Mr. King a lot, the sale was contingent upon Mr. King agreeing that Defendants would construct the home on the lot.

14.     Based on their eventual agreement, Defendants acted as the builder-vendor on Mr. King's purchase of a lot and home.

15.     The parties agreed that Mr. King would purchase the property and home construction was complete.

16.     The home was to be located at 322 Arrowhead Drive.

17.     The parties agreed that, at the conclusion of construction, Defendants would present Mr. King with a home in "'turn-key' condition."

18.     On April 15, 2015, Mr. King completed the purchase of the land and home at 322 Arrowhead Drive.

19.     In the Spring of 2018, Mr. King discovered that cracks were developing in the walls and soffits of the home.

20.     Many of the cracks originated from the corners of door casings, window cases, and wall joints.

21.     Those cracks have worsened to the point at which doors will not properly shut and locks have failed to work.

22.     Mr. King also discovered that portions of the concrete surrounding the home have begun to subside, settle, and/or crack.

23.     That subsidence / settlement has caused the siding of the home to buckle and crack.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–3 of 9–

24.     The subsidence / settlement has increased to the point that the sides of the home's foundation are inches higher than a reference point in the center of the home.

25.     The subsidence / settlement of the home has impacted the home's safety and habitability.

26.     In the Spring / Summer of 2018, Mr. King alerted Defendants of the home's defects.

27.     While Defendants came and inspected the home, they refused to take any action to correct the home's defects.

28.     On November 22, 2019, Mr. King, through counsel, sent Defendants notice of a construction defect claim pursuant to § 70-19-427(1), MCA.

29.     The parties attempted to settle this matter pursuant § 70-19-427, MCA.

30.     The parties were unable to settle this matter.

## CAUSES OF ACTION

### First Cause of Action –
### Breach of Contract

31.     Each and every allegation of the Complaint is incorporated herein by reference.

32.     The parties agreed that Defendants would construct and present Mr. King a home in "'turn-key' condition."

33.     Defendants breached their contract with Mr. King when they failed to construct and present a home in "'turn-key' condition."

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–4 of 9–

34.     Defendants constructed and presented a home with many defects arising from faulty work, skills, and/or material that affect the home's value, safety, and habitability.

35.     Defendants have failed to remedy the home's defects caused by Defendants' faulty work, skills, and/or material.

36.     As the direct and proximate result of Defendants' breach of contract, Mr. King has suffered property, financial, and other injuries.

### Second Cause of Action –
### Construction Defect Claim Pursuant to §§ 70-19-427 and -428, MCA

37.     Each and every allegation of the Complaint is incorporated herein by reference.

38.     The home presented to Mr. King contained a number of above-referenced construction defects.

39.     Mr. King sent Defendants notice of the above-referenced construction defects pursuant to § 70-19-427(1), MCA, on November 22, 2019.

40.     The parties followed the procedures set forth in § 70-19-427, MCA.

41.     Defendants failed to remedy the above-referenced construction defects.

42.     Mr. King is therefore free to bring this construction defect claim.

43.     As the direct and proximate result of Defendants' failure to properly construct the home, Mr. King is entitled to damages pursuant to § 70-19-428, MCA.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–5 of 9–

### Third Cause of Action –
### Breach of the Covenant of Good Faith and Fair Dealing

44.     Each and every allegation of the Complaint is incorporated herein by reference.

45.     Every contract in Montana carries with it the duty of good faith and fair dealing.

46.     Defendants breached the covenant of good faith and fair dealing when they intentionally and/or negligently misled Mr. King about the quality of Defendants' work.

47.     Defendants breached the covenant of good faith and fair dealing when they failed to construct the home in a workmanlike manner.

48.     Defendants breached the covenant of good faith and fair dealing when they failed to construct the home in accord with industry standards.

49.     As the direct and proximate result of Defendants' breach of the covenant of good faith and fair dealing, Mr. King has suffered property, financial, and other injuries.

### Fourth Cause of Action –
### Negligent Construction

50.     Each and every allegation of the Complaint is incorporated herein by reference.

51.     Defendants had a duty to construct the home with the reasonable degree of care, skill, and ability which is ordinarily employed by others in the same profession.

52.     Defendants breached their duty of care.

53.     As the direct and proximate result of Defendants' negligence, Mr. King has suffered property, financial, and other injuries.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–6 of 9–

<u>Fifth Cause of Action –</u>
<u>Breach of the Implied Warranty of Workmanlike Construction</u>

54.    Each and every allegation of the Complaint is incorporated herein by reference.

55.    Defendants had a common law duty to construct the home for Mr. King in a workmanlike manner.

56.    Defendants failed to construct the home in a workmanlike manner when it failed to construct a home free from defects.

57.    As the direct and proximate result of Defendants' failure to build the home in a workmanlike manner, Mr. King has suffered property, financial, and other injuries.

<u>Sixth Cause of Action –</u>
<u>Breach of the Implied Covenant of Habitability</u>

58.    Each and every allegation of the Complaint is incorporated herein by reference.

59.    Defendants acted as a builder-vendor of Mr. King's home.

60.    "The implied warranty of habitability places on the builder-vendor liability for defects in a structure which make it uninhabitable." *Degnan v. Executive Homes, Inc.*, 215 Mont. 162, 168, 696 P.2d 431 (1985).

61.    "The duty to present a buyer with a habitable house is a legal duty placed on the builder-vendor of that house." *Id.*

62.    Defendants breached their duties as a builder-vendor when they presented Mr. King with a house that is not safe or habitable.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–7 of 9–

63.     As the direct and proximate result of Defendants' failure to present Mr. King with a home that is safe and habitable, Mr. King has suffered property, financial, and other injuries.

**Seventh Cause of Action –**
**Negligent Misrepresentation**

64.     Each and every allegation of the Complaint is incorporated herein by reference.

65.     Defendants represented that they would construct and present a home in "'turn-key' condition."

66.     That representation was untrue.

67.     Defendants made the representation without any reasonable grounds for believing it to be true.

68.     The representation was made to induce Mr. King to rely on the representation and close on the home.

69.     Mr. King was unaware of the falsity of the representation, acted in reliance of the representation, and was justified in acting on the representation.

70.     As the direct and proximate result of Defendants' negligent misrepresentation, Mr. King has suffered property, financial, and other injuries.

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–8 of 9–

## PRAYER FOR RELIEF

Mr. King therefore requests the following relief:

    a.    Judgment in favor of Plaintiff on all counts;

    b.    For all Damages allowed by law for construction (§ 70-19-428, MCA);

    c.    For all Damages allowed by law for negligent construction;

    d.    For all Damages allowed by law for negligent misrepresentation;

    e.    An award of punitive damages against Defendants based on their fraudulent conduct as pled above;

    f.    An award of the costs of litigation and attorney fees, pursuant to statute, contract, and/or equitable principles;

    g.    An award of pre- and post-judgment interest;

    h.    Trial by twelve (12) person jury; and

    i.    Any other relief to which Plaintiff may be entitled at law or in equity.

Respectfully submitted this the 14th day of February, 2020.

DODD LAW FIRM, P.C.

_____

Matthew A. Dodd
*Attorney for Plaintiff*

*King v. Oakland, et al.*
Complaint and Demand for Jury Trial
–9 of 9–

# EXHIBIT D



**MIDWEST FAMILY GROUP**
**MIDWEST FAMILY MUTUAL INSURANCE COMPANY**
**MIDWEST FAMILY ADVANTAGE INSURANCE COMPANY**
Telephone • 763-951-7000
Fax • 763-951-7092
4401 Westown Parkway Suite 305, West Des Moines, IA 50266
Mailing Address:
P.O. Box 9425 • Minneapolis, MN 55440-9425
www.midwestfamily.com

April 27, 2020

Bryan M. Kautz
Ritchie Manning Kautz PLLP
175 N 27th St., Suite 1206
Billings, MT  59101

>       Re:   *King v. Oakland Improvements, Inc. and Paul Oakland, Jr.*
>             Our Claim No. 00381349

Dear Mr. Kautz:

Thank you for providing me with a copy of complaint filed by Timothy King against Oakland Improvements, Inc. and Paul Oakland, Jr. in the Sixteenth Judicial District, and your answer to the complaint.  I understand that you are currently defending Oakland Improvements, Inc. and Paul Oakland, Jr. ("the Oaklands").  You have tendered the defense of Mr. King's lawsuit under Midwest Family Mutual Insurance Company ("Midwest Family") policy number ACMT0560098291 ("Policy").  The named insureds under the Policy are Oakland Improvements, Inc. and Susan Sanderson.  The Policy has an effective date of 11/04/13 to 11/04/14.

Subject to the following Reservation of Rights and subject to all terms and conditions of the Policy, we agree to continue our investigation and defend the Oaklands.  Our investigation and handling of this claim should not be considered as a waiver, enlargement or change of any provisions of your insurance policy.

In your email, you state that the Oaklands wish to have you continue to represent them. Midwest Family will agree to pay your law firm to defend Mr. King's lawsuit as you requested, subject to this reservation of rights.  You will need to agree not to represent the Oaklands on issues where there is a conflict of interest with Midwest Family.  Otherwise, there could be issues preserving attorney client privilege in communications between you and Midwest Family.

You stated in your email that Acuity Insurance Company is now "involved.  Please provide me with contact information for the person from Acuity with whom you are communicating so I can discuss sharing the costs of defense with Acuity.

Should it ultimately be determined that the Policy does not cover Mr. King's lawsuit, Midwest Family reserves the right to recover all sums paid under the Policy in the defense of Mr. King's lawsuit.

## Background

Coverage under the Policy is determined by the allegations in the complaint.  Mr. King alleges that the Oaklands built a house for him in beginning in 2014.  Mr. King purchased the house in April of

2015.  Mr. King alleges that Defendants promised a "turn-key" house, but instead delivered a home that needed extensive and expensive repairs.  He alleges that he noticed damage to the house in 2018 when the house began settling and cracking.  The foundation has allegedly settled causing the siding to buckle.  The house is allegedly unsafe to live in.

The complaint seeks all damages recoverable for breach of contract, construction defects under § 70-19-428, breach of the implied covenant of good faith and fair dealing, negligent construction, breach of the implied warranty of workmanlike construction, breach of the covenant of habitability, negligent misrepresentation and requests punitive damages.

There are no specific allegations of bodily injury or emotional distress, although those damages could be recovered under the various tort claims.  Mr. King does state that he seeks "all damages" recoverable under those theories.

## Coverage Analysis

### The Named Insured

Paul Oakland, Jr., is not a named insured under the Policy.  The Policy states in relevant part:

**Insured** -- If shown on the Declarations as an "individual," **Insured** mean **you** and **your** spouse, but only with respect to the conduct of a business of which **you** are the sole owner.

If shown on the Declarations as a "partnership" or a "joint venture," **insured** means **you** and all **your** partners or members and their spouses, but only with respect to the conduct of the business.

If shown on the Declarations as an "organization" (other than a partnership or joint venture), **insured** means **you** and all **your** executive officers and directors, but only while acting within the scope of their duties.  It also insures your stockholders, but only for their liability as such.

**Insured** also includes:

a.  with respect to the operation, with **your** permission, of mobile equipment:

    1)  **your** employee in the course of employment.  This does not apply to a fellow employee injured in the course of employment; and

    2)  any other person.  This includes anyone legally liable for the conduct of such person but only:

        a)  for liability arising out of the operation of the equipment; and
        b)  if there is no other insurance covering the liability available to them.

No one is an **insured** for **property damage** to property owned by, rented to, in the charge of, or occupied by **you**, or an employee of anyone who is an **insured** under paragraph a.

b.  **your** employees, for acts within the scope of their employment by **you** (this does not include your executive officers).  None of these employees are insured for:

    1)  injury to **you** or to a fellow employee;

    2)  **property damage** to property owned by, rented to, or loaned to employees, or any of **your** partners or members and their spouses (if **you** are joint venture or a partnership.)

c.  any organization (other than a joint venture or partnership) newly acquired or formed by **you**, and in which you have a majority interest.

Such an organization is not an **insured**:

>   1)  if there is other similar insurance available to it; or

>   2)  after 90 days immediately following that acquisition or formation; or

>   3)  for **bodily injury** or **property damage** that occurred prior to the acquisition or formation.

No person or organization is an **insured** with respect to the conduct of a current or past partnership or joint venture that is not shown on the Delcarations as an **insured**.

AP-100 p. 3.

The complaint does not include any allegations regarding Mr. Oakland's relationship to Oakland Improvements, Inc., during the construction of the house.  If Mr. Oakland was not an officer or director of Oakland Improvements, Inc., or an employee of Oakland Improvements, Inc., working in the course of his employment, then he is not covered by the Policy, and Midwest Family has no duty to defend or indemnify Mr. Oakland.

If there was any property damage to the house sold to Mr. King while the house was owned by Oakland Improvements, Inc. or Paul Oakland, Jr., no one would be insured under the Policy for that property damage.

**The Coverage Agreements**

Based on the current allegations in the complaint, there are two coverages in the Contractors Special Policy form that potentially apply:

**Coverage L**

We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** to which this insurance applies.

The **bodily injury** or **property damage** must be caused by an **occurrence**.

This insurance only applies to **bodily injury** or **property damage** which occurs:

>   1. within the **coverage territory**; and

>   2.  during the policy period.

**Coverage N - - Products/Completed Work**

We pay all sums which an **insured** becomes legally obligated to pay as damages due to **bodily injury** or **property damage** arising out of the **Products/Completed Operations Hazard** to which this insurance applies.  The **bodily injury** or **property damage** must be caused by an **occurrence**.  This insurance only applies to **bodily injury** or **property damage** which occurs:

1. within the **coverage territory**; and

2. during the policy period.

Form AP-100 pp. 4-5.

There are no allegations that potentially fall under the other coverages in the Contractors Special Policy form or the Contractual Liability Coverage in the Contractors Advantage Endorsement.

**There was no property damage during the policy period**

Coverage L and Coverage N only apply to bodily injury or property damage that occurs during the policy period.

Property damage is defined by the Policy to include physical injury to or destruction of tangible property. Form AP-100 p. 4. A physical injury is a physical and material alteration resulting in a detriment. *Swank Enters. v. All Purposes Servs., Ltd.*, 336 Mont. 197, 154 P.3d 52, 56 (2007). A defect which creates a condition that increases the probability of later property damage is not property damage. *Truck Ins. Exch. v. O'Mailia*, 378 Mont. 231, 343 P.3d 1183, 1186 (2015).

Coverage is triggered by physical injury to property during the policy period. A physical injury can occur even though the injury is not diagnosable, compensable, or manifest during the policy period as long as it can be determined, even retroactively, that some injury did occur during the policy period. *Swank Enterprises, Inc. v. All Purpose Services, Ltd.*, *supra* at 56.

The complaint alleges that property damage first occurred in 2018, well after the Policy was terminated. There could not have been any bodily injury while the Policy was in effect. Bodily injury would have to occur after Mr. King purchased the house.

If there was no bodily injury or property damage during the policy period, then there is no coverage for any of the causes of action alleged in the complaint. The coverages state the Midwest Family will pay all sums which an insured becomes legally obligated to pay as damages due to bodily injury or property damage to which this insurance applies. All the causes of action arise out of property damage or bodily injury to which the insurance does **not** apply.

**There is no Coverage for Property Damage to the Insured's Property**

Additional Exclusion 1 states:

1. **We** do not pay for **property damage** to property owned by, occupied by or rented to an **insured**, except as provided by Coverage O.

AP-100 p. 8.

Coverage O, Fire Legal Liability, does not apply.

The house was owned by either Oakland Improvements, Inc. or Paul Oakland, Jr. while the Policy was in effect. Therefore, any damage that occurred to the house while the Policy was in effect would be excluded by Additional Exclusion 1.

**The Business Risk Exclusions**

There are numerous Montana cases that have applied the "business risk" exclusions. These exclusions exclude coverage for the costs of replacing or repairing the insured's faulty workmanship. *Northland Cas. Co. v. Mulroy,* 357 F.Supp. 3d 1045 (D. Mont. 2019).

The first business risk exclusion is Additional Exclusion 5:

**We** do not pay for **property damage** to that specific part of real property on which work is being performed by:

      a.  **you**; or

      b.  A contractor or subcontractor working on your behalf, if the **property damage** arises out of such work.  This exclusion does not apply to liability assumed under written sidetrack agreement.

AP-100 p. 8.

"Your work" means:

      a.  work or operations performed by **you** or on **your** behalf;

      b.  materials, parts and equipment **you** supply for such work and operations; and

      c.  written warranties or representations made at any time regarding quality, fitness, durability, or performance of any of the foregoing.

AP-100 p. 4.

This exclusion applies to damage that occurs while the insured's operations are ongoing. *Thomas v. Nautilus Ins. Co.*, 2011 WL 4369519 at *7.   Under this exclusion, there is no coverage for property damage to that specific part of <u>real</u> property on which work is being performed by the insured or any subcontractor. *Northland Cas. Co. v. Mulroy,* 3supra at 1050 .   A house is real property. *Id.*   There are no exceptions to this exclusion, and this exclusion applies to coverage provided by the Products/Completed Operations Hazard (PCOH) coverage. *Thomas v. Nautilus Ins. Co.*, *supra* at *8.

This exclusion excludes coverage for Mr. King's lawsuit.  The complaint alleges that the Oaklands negligently built the entire house.  The policy was terminated while operations were still being performed on the house.  Mr. King could not have suffered damage until he bought the house.  Any damage to the house while operations were ongoing would have been to property of the Oaklands and therefore excluded from coverage.

Additional Exclusion 6 states:

6.  **We** do not pay for **property damage** to that specific part of any property that must be restored, repaired or replaced because of faulty workmanship.  This exclusion does not apply to:

      a.  **property damage** covered under the **Products/Completed Operations Hazard;** or

      b.  liability assumed under written sidetrack agreement.

This exclusion also applies to damage that occurs while the insured's operations are ongoing. *Thomas v. Nautilus Ins. Co.*, 2011 WL 4369519 at *7.  This exclusion applies to any property, not just real

property.  It has an exception for property damage covered under the Products/Completed Operations Hazard (PCOH).

Exclusions do not grant coverage.  Therefore, as to real property, Additional Exclusion 5 is more specific and controls because the King lawsuit involves real property.  In addition, the Policy terminated while the Oaklands' operations were ongoing, so there could not have been any covered property damage while the Policy was in effect.  To the extent Mr. King alleges damage for personal property, this exclusion applies.

The exception to this exclusion for property damage covered under the PCOH does not apply. PCOH is defined as:

a.  **Products hazard** means **bodily injury** or **property damage** occurring away from premises **you** own or rent and arising out of **your product** after physical possession of it has been relinquished to others.

b.  **Completed work hazard** means **bodily injury** or **property damage** arising out of **your work**. It does not include work that has not been completed, or that has been abandoned.

**Your work** is deemed completed at the earliest of the following times:

1)  when all work specified in your contract has been done;

2)  when all work to be done at a job site has been completed if **your** contract includes work at more than one site; or

3)  when **your work** at a job site has been put to its intended use by someone other than another contractor or subcontractor working on the same job site.

AP-100 p. 4.

The definition of "your work" is set forth above.  The definition of "products" is:

**Products** means "good or **products** manufactured, sold, handled, distributed, or disposed of by you, others trading in your name, or a person or organization whose businesses or assets you have acquired.

**Products** includes:

a. warranties or representations made at any time with respect to the fitness, quality, durability, or performance of **your products**; and

b. containers (other than vehicles), materials, parts, or equipment furnished in connection with such goods or **products**.

**Products** does not include:

a.  Vending machines;

b.  property that is rented to or placed for the use of others, but sold; or

    c.  real property.

AP-100 p. 4.

A house is real property and therefore not a product. *Northland Cas. Co. v. Mulroy, supra at* 1050.

 The PCOH applies if the property damage occurs after the insured's operations are complete. Here, the Policy terminated before the Oaklands' operations were complete. Therefore, damages covered by the PCOH could not occur during the policy period.

 In addition, Additional Exclusion 8 limits coverage under the PCOH:

> **We** do not pay for **property damage** to work performed by **you** if the damage is caused by the work or a part of the work and included in the **Products/Completed Operations Hazard**. This exclusion does not apply if damage to the work or the part of the work out of which the damage arises is performed by a subcontractor on **your** behalf.

AP-100 p. 8.

 When these provisions are read together, there would only be coverage for property damage to work performed by the insured if the damage is caused by the work or the part of the work performed by a subcontractor and the damage occurred after the insured's operations were complete. *Thomas v. Nautilus Ins. Co., supra* at *8.

 The damages claimed by Mr. King are property damage to work performed by the Oaklands. Therefore, there would only be coverage if the work was done by a subcontractor. The complaint does not allege that subcontractors were involved in the construction of the house.

 To fall under the PCOH coverage, the damage would also have to arise after the Oaklands' subcontractor had completed operations. If the Policy expired before those operations were complete, any damages caused by the subcontractor could not have occurred while the policy was in effect.

**Breach of Contract is not Covered**

 The breach of contract claim is excluded by the business risk exclusions. The acts giving rise to the complaint determine coverage, not the complaint's legal theories or conclusory language. *Atlantic Casualty Ins. Co. v. Quinn*, 2019 WL 2550978 at * 6. Mr. King's breach of contract claim is based on defects in the construction of the house allegedly caused by faulty work, skills and/or material. Therefore, Additional Exclusions 5, 6 and 8 apply.

 In addition, a breach of contract is not an occurrence. *See, RQR Development, LLC v. Atlantic Cas. Ins. Co.*, 2014 WL 6997935, at *7. Allowing recoveries for breach of contract would turn a CGL policy into a professional liability policy or performance bond. *Id., citing Burlington Ins. Co. v. Oceanic Design & Construction, Inc.*, 383 F.3d 940, 949 (9th Cir. 2004).

**The Statutory Construction Defect Claim is not Covered by the Policy**

 This claim is not covered. Again, coverage is based on the underlying conduct, not the legal theory plead. The statutory construction defect claim is merely an allegation of faulty workmanship. *Atlantic Casualty Ins. Co. v. Quinn, supra* at * 6. Therefore, coverage for this claim is excluded under Additional Exclusions 5, 6 and 8.

**Breach of the Implied Covenant of Good Faith and Fair Dealing**

Mr. King alleged that the Oaklands failed to construct the house in a workmanlike manner and failed to construct in accordance with industry standards. These allegations are also merely an allegation of faulty workmanship and therefore fall within the Additional Exclusions 5, 6 and 8.

The bad faith claim is also based on the allegation that the Defendants intentionally or negligently mispresented the quality of their work. As will be discussed below, representations are not an occurrence, and therefore not covered as stand-alone tort. Under *Atlantic Casualty Ins. Co. v. Quinn,* they would not be covered as a basis for a breach of the implied covenant of good faith, either.

**Negligent Construction is not Covered by the Policy**

This claim alleges negligent construction of the house and therefore falls within exclusions 5, 6 and 8.

**Breach of the Implied Warranty of Workmanlike Construction is not Covered by the Policy**

The conduct underlying this theory is negligent construction of the house, which excluded from coverage by exclusions 5, 6 and 8.

**Breach of the Implied Covenant of Habitability is not Covered by the Policy**

The analysis for this claim is the same as for the breach of the implied warranty of workmanlike construction. The underlying conduct is the construction of a house with defects that is allegedly not fit to live in. Exclusions 5, 6 and 8.

**Negligent Misrepresentation is not Covered by the Policy**

The Policy only covers property damage or bodily injury that is caused by an occurrence. An occurrence is an "accident." AP-100 p. 4. Mr. King alleges that a representation that the Oaklands "would construct and present a home in a turnkey condition" was made to induce him to close on the home. Such conduct would not be an accident. Making a representation is not an "accident." *RQR Development v. Atlantic Cas. Ins., supra* at *8.

**Punitive Damages are not Covered by the Policy**

Under § 33-15-317 MCA, insurance coverage does not extend to punitive or exemplary damages unless expressly included by the contract of insurance. The Policy does not expressly cover punitive damages.

**Other Insurance**

You stated in your email that there may be coverage under a policy issued by Acuity. Depending on the coverage provided by the Acuity policy, Midwest Family may excess or may only be obligated to pay only a pro rata share of the defense costs or any settlement, verdict or judgment. AP-100 p. 11.

### Summary

For the reasons stated, Midwest Family does not believe the Policy covers Mr. King's lawsuit against the Oaklands. Because it is possible that this policy of insurance may not apply to this loss, and

because it is not yet known if the Oaklands' exposure exceeds the $1,000,000 policy limits, they may want to consult with their personal counsel.

If the Oaklands have any other policies of insurance which may apply to this claim, or which cover an amount in excess of that covered by policies of insurance with Midwest Family, you should please report Mr. King's lawsuit to that insurance company, or companies, at once to avoid possible waiver of that coverage and so that the Oaklands comply with the "Other Insurance" clause of its policy and with its obligation to cooperate with us.

The coverage defenses raised in this letter are based on the information currently available, and not intended to be exhaustive. Midwest Family reserves the right to modify its coverage decision as additional information becomes available.

Should you have any questions regarding our position as outlined in this letter, please contact us.

Sincerely,

Jon Ness, AIC
Casualty Adjuster
800-225-5636 ext. 7040
jness@midwestfamily.com

CC: Leavitt Great West Insurance



DODD LAW FIRM, P.C.
Matthew A. Dodd
3825 Valley Commons Dr.
Suite 2
Bozeman, MT 59718
406.577.2391
406.551.7601 fax
matt@doddlawfirmpc.com



E-MAILED
4-21-2021

## IN THE SIXTEENTH JUDICIAL DISTRICT COURT,
### COUNTY OF CUSTER,
### STATE OF MONTANA

| | |
|---|---|
| **Midwest Family Mutual Insurance Company,**<br><br>Plaintiff,<br>vs.<br><br>**Oakland Improvements, Inc., Paul Oakland, Jr., and Timothy King,**<br><br>Defendants. | Case No. DV-21-23<br><br>Judge<br><br><br>**Answer of Defendant, Timothy King** |

Timothy King, by and through undersigned counsel, files this Answer to the Complaint for Declaratory Action filed by Plaintiff, as follows:

### THE PARTIES

1. Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 1 and therefore denies the same.

2. Admit.

3. Admit.

4. Admit.





## JURISDICTION

5.    Admit.

6.    Admit.

## VENUE

7.    Admit.

## GENERAL ALLEGATIONS

8.    Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 8 and therefore denies the same.

9.    Admit.

10.    Admit.

11.    Admit.

12.    Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 12 and therefore denies the same.

13.    Admit.

14.    Admit.

## CLAIM FOR RELIEF (DELCARATORY JUDGMENT)

15.    Admit.

16.    Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 16 and therefore denies the same.

17.    Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 17 and therefore denies the same.

18.     Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 18 and therefore denies the same.

19.     Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 19 and therefore denies the same.

20.     Defendant responds that the document speaks for itself.

21.     Defendant responds that the document speaks for itself.

22.     Defendant lacks sufficient knowledge and information to form a belief regarding the statement in paragraph 22 and therefore denies the same.

23.     Deny.

24.     Deny.

25.     Defendant responds that the document speaks for itself.

26.     Deny.

27.     Defendant responds that the document speaks for itself.

28.     Defendant responds that the document speaks for itself.

29.     Deny.

30.     Defendant responds that the document speaks for itself and otherwise denies the allegations of paragraph 30.

31.     Deny.

32.     Deny.

33.     Defendant responds that the document speaks for itself.

34.     Deny.

35.     Deny.

36. Deny.

37. Deny.

38. Deny.

39. Deny.

40. Deny.

41. Deny.

42. Deny.

## PRAYER FOR RELIEF

Mr. King therefore requests the following relief:

a.   That the Court find that Plaintiff does have a duty to defend and indemnify Paul Oakland, Jr., and Oakland Improvements, Inc., for the allegations of the Underlying Complaint;

b.   That Defendant, Timothy King, is awarded the costs of litigation and attorney fees, pursuant to statute, contract, and/or equitable principles;

c.   That Defendant, Timothy King, is awarded any other relief to which he may be entitled at law or in equity; and

d.   That Defendant, Timothy King, is entitled to a jury trial on this matter.

Respectfully submitted this the 21st day of April, 2022.

DODD LAW FIRM, P.C.

Matthew A. Dodd
*Attorney for Defendant, Timothy King*

CERTIFICATE OF SERVICE

The undersigned does hereby certify that a true and correct copy of the

foregoing document was served on the below, this 21st day of April, 2021:

VIA USPS FIRST CLASS MAIL AND E-MAIL

Jon T. Dyre
CROWLEY FLECK, PLLP
500 Transwestem Plaza II
P. O. Box 2529
Billings, MT 59103-2529
Telephone: (406) 252-3441
Facsimile: (406) 252-5292
jdyre@crowleyfleck.com

Bryan Kautz
Ritchie Manning Kautz PLLP
175 North 27th Street, Suite 1206
Billings, Montana 59101
bkautz@rmkfirm.com

Elizabeth Lund
1 West Main Street
Bozeman, Montana 59715
lund@berglawfirm.com

Ysabella Roberts